MM C 555

1  LAWRENCE GEORGE HASH  P-00376
2  CTF – NORTH FACILITY
3  P.O.BOX 705, RB-235L
4  SOLEDAD, CA 93960-0705
5  PLAINTIFF, PROPRIA PERSONA

ORIGINAL

E-filing

FILED

AUG  4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7
8        UNITED STATES DISTRICT COURT
9      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11  LAWRENCE GEORGE HASH
12            PLAINTIFF,     CV  08  3729  (PR)
13        V.                                    MMC
14  MATTHEW CATE, SECRETARY OF CALIF DEPT       COMPLAINT FOR DECLARATORY
15  OF CORRECTIONS AND REHABILITATION; M.       AND PRELIMINARY INJUNCTIVE
16  S. EVANS, WARDEN, SALINAS VALLEY STATE      RELIEF; AND FOR DAMAGES.
17  PRISON; L.E. SCRIBNER, CHIEF DEPUTY
18  WARDEN (S.V.S.P); D. TRAVERS CORRECTIONAL    DEMAND FOR JURY TRIAL
19  ADMINISTRATOR (S.V.S.P); A. HEDGPATH
20  CORRECTIONAL ADMINISTRATOR (S.V.S.P); C.
21  NOLE, CORRECTIONAL ADMINISTRATOR (SVSP);
22  J. ALLISON, CORRECTIONAL ADINISTRATOR
23  (S.V.S.P); CHARLES DUDLEY LEE, HEALTH CARE
24  MANAGER (S.V.SP); GUS ZAVALA, CAPTAIN
25  (S.V.S.P); P. MANDEVILLE, CAPTAIN (S.V.S.P);
26  G.D. LEWIS, CAPTAIN, (S.V.SP); A. TUCKER
27  CAPTAIN, (S.V.SP); J.G. ARCEO, CAPTAIN
28  APPEALS EXAMINER (C.D.C.R)

I.

1. C. Hall, Captain, Appeals Examiner (CDCR)
2. Jack Batchelor, Captain Appeal Examiner
3. (C.D.C.R); V. O'Shaughnessy, Captain
4. Appeals Examiner (CDCR); N. Grannis,
5. Chief of Inmate Appeals (C.D.C.R); John
6. Marschal, Warden, Calif Men's Colony
7. G. Ponders Captain (S.V.S.P); R. Meyers
8. Health Care Manager, Calif Men's
9. Colony; T. Variz, Appeals Coordinator,
10. (S.V.S.P.); S. Gomez, Appeals Coordinator
11. (S.V.S.P); D.M. Mantel Lieutenant (S.V.S.P);
12. C. Blackstone, Lieutenant (S.V.S.P); J. D.
13. Bennett, Lieutenant (S.V.S.P); S. Plaza,
14. Lieutenant (S.V.S.P); G. Biaggini (S.V.S.P)
15. Lieutenant; M. Ross, Lieutenant (S.V.S.P)
16. J. Hughes, Lieutenant (S.V.S.P); N.
17. Walker, Lieutenant (S.V.S.P); F. Winn,
18. Correctional Counselor II (S.V.S.P); A.
19. Williams, Correctional Counselor II,
20. (S.V.S.P); B. Castorena, Correctional
21. Counselor II (S.V.S.P); A. Melero,
22. Sergeant, (S.V.S.P); R.A. Kessler,
23. Sergeant (S.V.S.P); J. Ippolito,
24. Sergeant (S.V.S.P); L. Washington
25. Sergeant (S.V.S.P); L. Wright
26. Sergeant (S.V.S.P); R. Burgh, Correctional
27. Counselor II (S.V.S.P); Fredrico Ramirez,
28. Correctional Officer (S.V.S.P) —7

M. Rosa, Correctional Officer (S.V.S.P);
T. Stevens, Correctional Officer (S.V.S.P);
S. Thacker, Correctional Officer (S.V.S.P);
Gant, Correctional Officer (S.V.S.P);
J. Burke, Correctional Officer (S.V.S.P);
J. Hicks, Correctional Officer (S.V.S.P);
Smith, Correctional Officer (S.U.S.P);
Watson, Correctional Officer (S.V.S.P);
Diaz, Correctional Officer (S.V.S.P);
Yonouce, Correctional Officer (S.V.S.P);
Montana, Correctional Officer (S.V.S.P);
Salao, Correctional Officer (S.V.S.P);
D. Sellers, Correctional Officer (S.V.S.P);
Pratti, Correctional Officer (S.V.S.P);
D. Perez, Correctional Officer (S.V.S.P);
C. Sickelton Correctional Officer (S.V.S.P);
T. Mays, Correctional Officer (S.V.S.P);
Burnes, Correctional Officer (S.V.S.P);
Carolina Kates, (AGPA) Medical Appeals
Coordinator (S.V.S.P); Kathleen Wall, R.N.
Correctional Health Services Admin II;
Dr. Robert Bowman, Medical Doctor (S.V.S.P);
Dr. Pistone Medical Doctor (S.V.S.P);
Dr. Kumar, Medical Doctor (S.V.S.P);
Deips, Registered Nurse (S.V.S.P);
J. Krossa, Registered Nurse (S.V.S.P);
Dr. Smilovitz, Medical Doctor, Calif
Men's Colony.

2.

1  DR. ARAYA, MEDICAL DOCTOR, CALIFORNIA
2  MEN's COLONY; DR. FAECHER, MEDICAL
3  DOCTOR, CALIFORNIA MEN's COLONY; DR.
4  PERRY, MEDICAL DOCTOR, CALIFORNIA
5  MEN's COLONY; DR. GRIFFIN, MEDICAL
6  DOCTOR, CALIFORNIA MEN's COLONY;
7  DR. AMY LADD, MEDICAL DOCTOR,
8  STANFORD HOSPITAL AND CLINICS; DR.
9  VINCENT R. HENTZ, MEDICAL DOCTOR,
10 STANFORD HOSPITAL AND CLINICS; DEAN
11 D. FLIPPO DISTRICT ATTORNEY MONTEREY
12 COUNTY; JUDY BECK, DISTRICT ATTORNEY,
13 MONTEREY COUNTY; MICHAEL BREEDEN,
14 DISTRICT ATTORNEY, MONTEREY COUNTY;
15 K.L. ALLEN APPEALS EXAMINER, (CDCR);
16 JOHN W. LUMAN III APPEALS COORDINATOR;
17 AND DOES (1) THRU (15); INDIVIDUALLY AND
18 THEIR OFFICIAL CAPACITIES,
         DEFENDANTS.

## I. INTRODUCTION

1.    THIS IS AN ACTION SEEKING DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS DAMAGES BROUGHT PURSUANT TO 42 U.S.C. SEC. 1983 AGAINST THE DEFENDANTS FOR VIOLATING A VARIETY OF PLAINTIFF HASH's CONSTITUTIONAL RIGHTS. THOSE RIGHTS INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING; THE RIGHT TO BE FREE FROM EXESSIVE FORCE; THE RIGHT TO PERSONAL SAFETY; THE RIGHT TO BE FREE FROM DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS; THE RIGHT TO DUE PROCESS OF LAW; THE RIGHTS TO BE FREE FROM RETALIATION;

3.

AND THE RIGHT TO BE FREE FROM MALICIOUS PROSECUTION; AND THE
RIGHT TO HAVE ACCESS TO THE COURTS, AS THOSE RIGHTS ARE
SECURED BY THE 1ST, 5TH, 8TH AND 14TH AMENDMENTS TO THE U.S.
CONSTITUTION. HASH FURTHER SEEKS A PRELIMINARY INJUNCTION REQUIRING
THE CALIF DEPT OF CORRECTIONS AND REHABILITATION TO RETAIN HASH ON
SINGLE CELL STATUS AS HE CURRENTLY IS BASED ON THE FACTS OF THIS
COMPLAINT.

## II. JURISDICTION

2.   THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983
TO REDRESS THE DEPRIVATION, UNDER COLOR OF STATE LAW, OF RIGHTS
SECURED BY THE CONSTITUTION OF THE UNITED STATES. THE COURT HAS
JURISDICTION UNDER 28 U.S.C SECTION 1331 AND 1343 (a)(3).
PLAINTIFF HASH SEEKS DECLARATORY RELIEF PURSUANT TO 28 U.S.C.
SECTION 2201 AND 2202. HASH'S CLAIMS FOR INJUNCTIVE RELIEF
ARE AUTHORIZED BY 28 U.S.C. SECTION 2283 AND 2284 AND RULE
65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

## III. VENUE

3.   THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF CALIFORNIA IS AN APPROPRIATE VENUE UNDER 28 U.S.C SECTION
1391 (b)(2) BECAUSE A SUBSTANTIAL PORTION OF THE EVENTS GIVING
RISE TO THE CLAIMS ALLEGED IN THIS COMPLAINT OCCURRED IN MONTEREY
COUNTY, CALIFORNIA.

4.

## IV. PLAINTIFF

4.   PLAINTIFF LAWRENCE GEORGE HASH is and was at all times mentioned herein a prisoner of the State of California in the custody of the California Department of Corrections and Rehabilitation. HASH is currently confined in the Correctional Training Facility (C.T.F.) in Soledad, California.

## V.  DEFENDANTS

5.   DEFENDANT MATTHEW CATE is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). He is legally responsible for the overall operation of the Department and each institution under it's jurisdiction, including the Correctional Training Facility ("C.T.F") where HASH is housed.

6.   DEFENDANT M.S. EVANS was the then Warden of Salinas Valley State Prison (S.V.S.P.). He was legally responsible for the operation of (S.V.S.P.), and for the welfare of all the inmates of that prison.

7.   DEFENDANT L.E. SCRIBNER was the then Chief Deputy Warden of (S.V.S.P.). He was legally responsible for the operation of (S.V.S.P.), and for the welfare of all the inmates of that prison.

8.   DEFENDANT D. TRAVERS was a Correctional Administrator at (S.V.S.P.). He was legally responsible for the operation of (S.V.S.P.), and for the welfare of all the inmates of that prison.

9.  DEFENDANT A. HEDGPATH WAS A CORRECTIONAL ADMINISTRATOR AT (SVSP). HE WAS LEGALLY RESPONSIBLE FOR THE OPERATION OF (S.V.S.P) AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON.

10.  DEFENDANT C. NOLE WAS A CORRECTIONAL ADMINISTRATOR AT (S.V.S.P). HE WAS LEGALLY RESPONSIBLE FOR THE OPERATION OF (S.V.S.P) AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON.

11.  DEFENDANT J. ALLISON WAS A CORRECTIONAL ADMINISTRATOR AT (S.V.S.P). HE WAS LEGALLY RESPONSIBLE FOR THE OPERATION OF (S.V.S.P) AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON.

12.  DEFENDANT CHARLES DUDLEY LEE IS THE HEALTH CARE MANAGER AT (SVSP). HE IS LEGALLY RESPONSIBLE FOR MAKING SURE THAT PROPER MEDICAL CARE AND TREATMENT IS PROVIDED TO ALL (S.V.S.P) INMATES AND THAT THEY RECEIVE THE SAME FROM ALL MEDICAL PROVIDERS WHOM (CDCR) HAS CONTRACTED WITH FOR SUCH PURPOSES.

13.  DEFENDANT GUS ZAVALA IS A CAPTAIN AT (S.V.S.P). HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT ZAVALA WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

14.  DEFENDANT P. MANDEVILLE, UPON INFORMATION AND BELIEF, WAS A CAPTAIN AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT MANDEVILLE WAS RESPONSIBLE FOR THE SUPERVISION OF HER SUBORDIN-ATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL

6.

INMATES UNDER HER CONTROL.

15.   DEFENDANT G.D. LEWIS, UPON INFORMATION AND BELIEF, WAS A CAPTAIN AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT LEWIS WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

16.   DEFENDANT A. TUCKER, UPON INFORMATION AND BELIEF, WAS A CAPTAIN AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT TUCKER WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

17.   DEFENDANT J. G. ARCEO, UPON INFORMATION AND BELIEF, WAS A CAPTAIN, DIRECTOR'S LEVEL APPEALS EXAMINER (CDCR). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT ARCEO WAS RESPONSIBLE FOR HASH'S SERIOUS MEDICAL NEEDS, AS REQUESTED ON ADMINISTRATIVE APPEAL.

18.   DEFENDANT C. HALL, UPON INFORMATION AND BELIEF, WAS A CAPTAIN, DIRECTOR'S LEVEL APPEALS EXAMINER (CDCR). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT HALL WAS RESPONSIBLE FOR HASH'S SERIOUS MEDICAL NEEDS, AS REQUESTED ON ADMINISTRATIVE APPEAL.

19.   DEFENDANT JACK BATCHELOR, UPON INFORMATION AND BELIEF, WAS A CAPTAIN, DIRECTOR'S LEVEL APPEALS EXAMINER (CDCR). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT BATHELOR WAS RESPONSIBLE FOR HASH'S SERIOUS MEDICAL NEEDS, AS REQUESTED ON ADMINISTRATIVE APPEAL.

7.

20. DEFENDANT V. O'SHAUGHNESSY, UPON INFORMATION AND BELIEF, WAS A CAPTAIN, DIRECTOR'S LEVEL APPEALS EXAMINER (CDCR). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT O'SHAUGHNESSY WAS RESPONSIBLE FOR HASH'S SERIOUS MEDICAL NEEDS, AS REQUESTED ON ADMINISTRATIVE APPEAL.

21. DEFENDANT N. GRANNIS, UPON INFORMATION AND BELIEF, IS THE CHIEF OF INMATE APPEALS (CDCR). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT GRANNIS WAS RESPONSIBLE FOR HASH'S SERIOUS MEDICAL OR OTHERWISE REQUESTED NEEDS, RELEVANT TO HASH'S ADMINISTRATIVE APPEALS.

22. DEFENDANT JOHN MARSCHAL, UPON INFORMATION AND BELIEF, IS THE WARDEN OF CALIFORNIA MEN'S COLONY STATE PRISON. HE IS RESPON-SIBLE FOR THE OPERATION OF (C.M.C), AND FOR THE WELFARE OF ALL THE INMATES IN THAT PRISON.

23. DEFENDANT G. PONDERS, UPON INFORMATION AND BELIEF, WAS A CAPTAIN AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT PONDERS WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

24. DEFENDANT R. MEYERS, UPON INFORMATION AND BELIEF, WAS THE HEALTH CARE MANAGER AT (CMC). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR MAKING SURE THAT THE PROPER MEDICAL CARE WAS PROVIDED TO ALL (CMC) INMATES AND THAT THEY RECEIVED THE SAME FROM ALL CONTRACTED MEDICAL PROVIDERS.

8.

25. DEFENDANT T. VARIZ, UPON INFORMATION AND BELIEF, WAS THE APPEALS COORDINATOR AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT VARIZ WAS RESPONSIBLE FOR PROCESSING HASH'S ADMINISTRATIVE APPEALS, IN WHICH HE REQUESTED EMERGENCY ASSISTANCE FOR SERIOUS MEDICAL NEEDS, THREATS OF IRREPARABLE HARM, AND VARIOUS OTHER NEEDS.

26. DEFENDANT S. GOMEZ, UPON INFORMATION AND BELIEF, WAS A APPEALS COORDINATOR AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT GOMEZ WAS RESPONSIBLE FOR PROCESSING HASH'S ADMINISTRATIVE APPEALS, IN WHICH HE REQUESTED EMERGENCY ASSISTANCE FOR SERIOUS MEDICAL NEEDS, THREATS OF IRREPARABLE HARM, AND VARIOUS OTHER NEEDS.

27. DEFENDANT D.M. MANTEL, UPON INFORMATION AND BELIEF, WAS A FACILITY "B" LIEUTENANT AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT MANTEL WAS RESPONSIBLE FOR THE SUPER-VISION OF HER SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HER CONTROL.

28. DEFENDANT C. BLACKSTONE, UPON INFORMATION AND BELIEF, WAS A FACILITY "B" LIEUTENANT AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT BLACKSTONE WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

29. DEFENDANT J.D. BENNETT, UPON INFORMATION AND BELIEF, WAS A FACILITY "D" LIEUTENANT AT (S.V.S.P.). AT ALL TIMES MENTIONED

9.

IN THIS COMPlAINT DEFENDANT BENNETT WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEl, AS WEll AS FOR THE SAFETY AND PROTECTION OF All INMATES UNDER HIS CONTROl.

30.  DEFENDANT S. PlAZA, UPON INFORMATION AND BElIEF, WAS A FACILITY "D" LIEUTENANT AT (S.V. SP). AT All TIMES MENTIONED IN THIS COMPlAINT DEFENDANT PlAZA WAS RESPONSIBLE FOR THE SUPERVISION OF HER SUBORDINATE PERSONNEl, AS WEll AS FOR THE SAFETY AND PROTECTION OF All INMATES UNDER HER CONTROl.

31.  DEFENDANT G. BIAGGINI, UPON INFORMATION AND BElIEF, WAS A FACILITY "D" LIEUTENANT AT (S.V.SP). AT All TIMES MENTIONED IN THIS COMPlAINT DEFENDANT BIAGGINI WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEl, AS WEll AS FOR THE SAFETY AND PROTECTION OF All INMATES UNDER HIS CONTROl.

32.  DEFENDANT M. ROSS, UPON INFORMATION AND BElIEF, WAS A FACILITY "B" LIEUTENANT AT (S.V.SP). AT All TIMES MENTIONED IN THIS COMPlAINT DEFENDANT ROSS WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEl, AS WEll AS FOR THE SAFETY AND PROTECTION OF All INMATES UNDER HIS CONTROl.

33.  DEFENDANT J. HUGHES, UPON INFORMATION AND BElIEF, WAS A FACILITY "D" LIEUTENANT AT (S.V.SP). AT All TIMES MENTIONED IN THIS COMPlAINT DEFENDANT HUGHES WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEl, AS WEll AS FOR THE SAFETY AND PROTECTION OF All INMATES UNDER HIS CONTROl.

10.

34. DEFENDANT N. WALKER, UPON INFORMATION AND BELIEF, WAS A FACILITY "D" LIEUTENANT AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT WALKER WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

35. DEFENDANT F. WINN, UPON INFORMATION AND BELIEF, WAS A CORRECTION-AL COUNSELOR II AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT WINN WAS RESPONSIBLE FOR HASH'S RIGHT TO DUE PROCESS OF LAW AND HIS SAFETY.

36. DEFENDANT A. WILLIAMS, UPON INFORMATION AND BELIEF, WAS A CORRECTIONAL COUNSELOR II AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT WILLIAMS WAS RESPONSIBLE FOR HASH'S RIGHT TO DUE PROCESS OF LAW AND FOR HIS SAFETY.

37. DEFENDANT B. CASTORENA, UPON INFORMATION AND BELIEF, WAS A CORRECTIONAL COUNSELOR AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT CASTORENA WAS RESPONSIBLE FOR HASH'S RIGHT TO DUE PROCESS OF LAW AND FOR HIS SAFETY.

38. DEFENDANT A. MELERO, UPON INFORMATION AND BELIEF, WAS A FACILITY "B" SERGEANT AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANT MELERO WAS RESPONSIBLE FOR HIS SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF ALL INMATES UNDER HIS CONTROL.

39. DEFENDANT R.A. KESSLER, UPON INFORMATION AND BELIEF, WAS A

11.

FACILITY "D" SERGEANT AT (S.V.S.P.). AT all TIMES MENTIONED IN THIS COMPLAINT DEFENDANT KESSLER WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF all INMATES UNDER HIS CONTROL.

40. DEFENDANT J. IPPOLITO, UPON INFORMATION AND BELIEF, WAS A FACILITY "D" SERGEANT AT (S.V.S.P). AT all TIMES MENTIONED IN THIS COMPLAINT DEFENDANT IPPOLITO WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF all INMATES UNDER HIS CONTROL.

41. DEFENDANT L. WASHINGTON, UPON INFORMATION AND BELIEF, WAS A FACILITY "D" SERGEANT AT (S.V.S.P). AT all TIMES MENTIONED IN THIS COMPLAINT DEFENDANT WASHINGTON WAS RESPONSIBLE FOR THE SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY AND PROTECTION OF all INMATES UNDER HIS CONTROL.

42. DEFENDANT L. WRIGHT, UPON INFORMATION AND BELIEF, WAS A FACILITY "D" SERGEANT AT (S.V.S.P). AT all TIMES MENTIONED IN THIS COMPLAINT DEFENDANT WRIGHT WAS RESPONSIBLE FOR HIS SUPERVISION OF HIS SUBORDINATE PERSONNEL, AS WELL AS FOR THE SAFETY, WELFARE, AND PROTECTION OF all INMATES UNDER HIS CONTROL.

43. DEFENDANT R. BURGH, UPON INFORMATION AND BELIEF, WAS A CORRECTIONAL COUNSELOR II AT (S.V.S.P). AT all TIMES MENTIONED IN THIS COMPLAINT DEFENDANT BURGH WAS RESPONSIBLE FOR HASH'S SAFETY AND FOR HIS CUSTODY.

12.

44. DEFENDANT FREDRICO RAMIREZ WAS A FACILITY "B" CORRECTIONAL OFFICER AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

45. DEFENDANT M. ROSA WAS A FACILITY "B" CORRECTIONAL OFFICER ASSIGNED TO B-3 CONTROL TOWER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

46. DEFENDANT T. STEVENS WAS A "B" FACILITY CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

47. DEFENDANT S. THACKER WAS A FACILITY "B" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

48. DEFENDANT GANT WAS A FACILITY "B" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER CONTROL.

49. DEFENDANT J. BURKE WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY OF ALL INMATES UNDER HIS CONTROL.

13.

50. DEFENDANT J. HICKS WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER CONTROL.

51. DEFENDANT SMITH WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

52. DEFENDANT WATSON WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

53. DEFENDANT DIAZ WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

54. DEFENDANT YONOUNCE WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

55. DEFENDANT MONTANA WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF

14.

All inmates under his control.

56. Defendant Salao was a correctional officer assigned to the internal security unit (I.S.U) at (S.V.S.P). At all times mentioned in this complaint he was legally responsible for Hash's lack of access to the courts and for the safety and welfare of all inmates under his control.

57. Defendant D. Sellers was a correctional officer assigned to receiving and release unit at (S.V.S.P). At all times mentioned in this complaint he was legally responsible for the safety and welfare of all inmates under his control.

58. Defendant Pratti was a facility "C" correctional officer at (S.V.S.P). At all times mentioned in this complaint he was legally responsible for the safety and welfare of all inmates under his control.

59. Defendant D. Perez was a facility "D" correctional officer at (S.V.S.P). At all times mentioned in this complaint he was legally responsible for the safety and welfare of all inmates under his control.

60. Defendant C. Sickelton was a facility "D" correctional officer at (S.V.S.P). At all times mentioned in this complaint he was legally responsible for the safety and welfare of all inmates under his control.

15.

61. DEFENDANT T. MAYS WAS A FACILITY "B" CORRECTIONAL OFFICER AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

62. DEFENDANT BURNES WAS A FACILITY "D" CORRECTIONAL OFFICER AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CONTROL.

63. DEFENDANT CAROLINA KATES WAS A MEDICAL APPEALS COORDINATOR AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER CONTROL.

64. DEFENDANT KATHLEEN WALL WAS A CORRECTIONAL HEALTH SERVICES ADMINISTRATOR II AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER CONTROL.

65. DEFENDANT ROBERT BOWMAN WAS A FACILITY "D" MEDICAL DOCTOR AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

66. DEFENDANT PISTONE WAS A FACILITY "D" MEDICAL DOCTOR AT (S.V.S.P.). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS CARE.

16.

67. DEFENDANT KUMAR WAS A FACILITY "C" MEDICAL DOCTOR AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER MEDICAL CARE.

68. DEFENDANT DEIPS (Sic) WAS A FACILITY "D" REGISTERED NURSE AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE FOR ALL INMATES UNDER HIS MEDICAL CARE.

69. DEFENDANT J. KROSSA WAS A FACILITY "D" REGISTERED NURSE AT (S.V.S.P). AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER MEDICAL CARE.

70. DEFENDANT SMILOVITZ WAS A MEDICAL DOCTOR AT CALIFORNIA MEN'S COLONY (C.M.C). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

71. DEFENDANT ARAYA WAS A MEDICAL DOCTOR AT CALIFORNIA MEN'S COLONY (C.M.C). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

72. DEFENDANT FAECHER WAS A MEDICAL DOCTOR AT CALIFORNIA MEN'S COLONY (C.M.C). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL

INMATES UNDER HIS MEDICAL CARE.

73. DEFENDANT PERRY WAS A MEDICAL DOCTOR AT CALIFORNIA MEN'S COLONY (CMC). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

74. DEFENDANT GRIFFIN WAS A MEDICAL DOCTOR AT CALIFORNIA MEN'S COLONY (CMC). AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

75. DEFENDANT AMY LADD WAS A MEDICAL DOCTOR AT STANFORD HOSPITAL. AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HER MEDICAL CARE.

76. DEFENDANT VINCENT R. HENTZ WAS A MEDICAL DOCTOR AT STANFORD HOSPITAL. AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR THE SAFETY AND WELFARE OF ALL INMATES UNDER HIS MEDICAL CARE.

77. DEFENDANT DEAN D. FLIPPO IS THE LEAD DISTRICT ATTORNEY FOR MONTEREY COUNTY, CALIF. AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR HASH'S MALICIOUS PROSECUTION IN THE MONTEREY COUNTY SUPERIOR COURT.

78. DEFENDANT JUDY BECK WAS A DISTRICT ATTORNEY WITH

18.

THE MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE. AT ALL TIMES MENTIONED IN THIS COMPLAINT SHE WAS LEGALLY RESPONSIBLE FOR HASH'S PROSECUTION IN THE MONTEREY COUNTY SUPERIOR COURT.

79. DEFENDANT MICHAEL BREEDEN WAS A DISTRICT ATTORNEY FOR THE MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE. AT ALL TIMES MENTIONED IN THIS COMPLAINT HE WAS LEGALLY RESPONSIBLE FOR HASH'S PROSECUTION IN THE MONTEREY COUNTY SUPERIOR COURT.

80. AT ALL TIMES MENTIONED IN THIS COMPLAINT, EACH INDIVIDUAL DEFENDANT WAS ACTING UNDER THE COLOR OF STATE LAW.

81. AT ALL TIMES MENTIONED IN THIS COMPLAINT, EACH INDIVIDUAL DEFENDANT WAS ACTING IN THEIR OFFICIAL CAPACITY AND IN THE SCOPE AND COURSE OF THEIR EMPLOYMENT.

82. AT ALL TIMES MENTIONED IN THIS COMPLAINT, EACH DEFENDANT IS SUED IN HIS OR HER INDIVIDUAL CAPACITY AND OFFICIAL CAPACITIES.

83. HASH IS IGNORANT OF THE TRUE NAMES AND CAPACITIES OF DEFENDANTS SUED HEREIN AS DOES (1) THROUGH (15), AND THEREFORE SUES THESE DEFENDANTS BY SUCH FICTITIOUS NAMES. HASH WILL SEEK LEAVE TO AMEND THIS COMPLAINT TO ADD THEIR TRUE NAMES AND CAPACITIES ONCE THEY HAVE BEEN ASCERTAINED. HASH IS INFORMED AND BELIEVES, AND ON THAT BASIS ALLEGES, THAT EACH OF THE DEFENDANTS. DOES (1) THROUGH (15) IS IN SOME MANNER RESPONSIBLE FOR THE ACTS ALLEGED IN THIS COMPLAINT.

19.

# VI.   FACTS

84.   ON SEPTEMBER 24, 2002, WHILE HASH WAS HOUSED AT (S.V.S.P.) A RIOT ERUPTED BETWEEN BLACK AND WHITE INMATES ON FACILITY "B" RECREATIONAL YARDS #1 AND #2, THEN SPREAD QUICKLY TO HOUSING FACILITIES B-1, B-2, B-3, B-4, AND B-5. THERE WERE NUMEROUS INJURIES SUSTAINED BY BOTH RACES, BUT FAR MORE INJURIES WERE SUSTAINED BY WHITE INMATES BECAUSE THEY WERE EXTREMELY OUT NUMBERED BY BLACK INMATES. THERE-AFTER, GUARDS SEARCHED AND DISCOVERED A LARGE NUMBER OF WEAPONS ON BOTH RECREATION YARDS AND INSIDE THE HOUSING FACILITIES. SEE, EX. "A", STATUS REPORT.

85.   HASH DID NOT PARTICIPATE IN THE RIOT BECAUSE IT WAS A SPONTAN-EOUS EVENT THAT ERUPTED ON IMPULSE AT A TIME WHEN HE WAS BEYOND THE PERIMETER WALLS OF FACILITY "B" ATTENDING HIS ASSIGNED VOCATIONAL CLASS. GUARDS QUICKLY SECURED ALL PRISONERS IN THE CLASS WITH NYLON HANDCUFFS AND KEPT THEM UNDER CLOSE WATCH.

86.   S.V.S.P IS MADE UP OF (4) SEPARATE PRISON YARDS. AT THAT TIME "A" YARD WAS A 270 DESIGN (S.N.Y) SENSITIVE NEEDS YARD. YARD "B" WAS 270 DESIGN GENERAL POPULATION YARD, WHILE YARD "C" WAS A 180 DESIGN YARD FOR HIGHER SECURITY PRISONERS WITH LONGER SENTENCES AND MORE DISRUPTIVE AND VIOLENT CASE FACTORS. YARD "D" IS DIVIDED INTO THIRDS, MEANING ONE THIRD IS EXACTLY THE SAME AS "C" YARD, WHILE THE REMAINDER OF "D" FACILITY IS SPLIT INTO SEPARATE BUILDINGS FOR (E.O.P) INMATES WITH MENTAL PROBLEMS AND SEPARATE BUILDING FOR ADMINISTRATIVE SEGREGATION,... A.K.A, "THE HOLE." OF THE (4) SEPARATE YARDS AT S.V.S.P, ITS "C" YARD THAT HAS LONG BEEN

NOTED AS BEING THE MOST VIOLENT AND **DANGEROUS** PRISON YARD IN THE STATE. AS SUCH, "C" YARD WAS KNOWN TO BE THE HUB OF MOST ALL OF THE PRISON POLITICS THAT DICTATED THE POLITICAL RULES THAT THE REST OF THE PRISONERS AT S.V.S.P WERE EXPECTED TO FOLLOW.

87. IN THE MONTHS THAT FOLLOWED THE SEPTEMBER 24, 2002 RIOT ON "B" YARD, WHITE PRISONERS FROM "C" YARD AND THE SIMILARLY SITUATED ONE THIRD PORTION OF "D" YARD PRISONERS JOINED FORCES AND BEGAN SENDING MESSAGES TO THE SHOT CALLERS ON "B" YARD SAYING IT WAS A MANDATORY ORDER THAT ALL WHITE PRISONERS ON "B" YARD WERE TO KICK OFF A SECOND MORE POWERFUL RIOT TO SEEK REVENGE AGAINST THE BLACK PRISONERS ON "B" YARD. ALTHOUGH WHITE PRISONERS ON "B" YARD DID INCITE A MELEE OR TWO AND SOME SPORADIC FIST FIGHTS WITH THE BLACK PRISONERS ON "B" YARD, THOSE EFFORTS WERE NOT ENOUGH TO RESOLVE THE POLITICAL FRICTION BETWEEN THE YARDS. AS A RESULT, THE APPOSING WHITE PRISONERS ON "C" AND "D" YARDS DEEMED ALL WHITE PRISONERS ON "B" YARD TO BE <u>NO GOOD</u>, DUE TO THEIR FAILURE TO OBEY MANDATORY ORDERS.

88. THE ONLY TIME WHITE PRISONERS FROM THESE SEPARATE YARDS EVER CAME IN CONTACT WITH EACH OTHER WAS IN AD/SEG, WHICH WAS ON "D" YARD. IT SOON BECAME VERY CLEAR THAT A WAR HAD ERUPTED WHEN WHITE PRISONERS FROM "C AND D" YARD STARTED SLASHING AND STABBING WHITE PRISONERS FROM "B" YARD WHEN THEY CAME IN CONTACT WITH THEM WHILE IN AD/SEG. THE WAR LASTED OVER (3) YEARS.

89. ON INFORMATION AND BELIEF, PRISON OFFICIALS AT S.V.S.P HAD BEEN TRACKING, LOGGING, AND INVESTIGATING ALL OF THE ATTACKS

21.

S.V.S.P OFFICIALS WERE PROVIDED WITH INTERDEPARTMENTAL MEMOS AND INVESTIGATION REPORTS FROM THEIR OWN (I.S.U) INSTITUTIONAL SECURITY UNIT THAT FULLY ALERTED THEM TO A ON GOING WAR SITUATION AND A CRUCIAL NEED TO SEPARATE "C" AND "D" YARD WHITE PRISONERS FROM "B" YARD WHITE PRISONERS. HOWEVER, THE DEFENDANTS ACTIONS WERE CRIMINALLY RECKLESS AND DELIBERATELY INDIFFERENT TO THE EXCESSIVE AND SUBSTANTIAL RISK TO THE SAFETY OF "B" YARD WHITE PRISONERS, THEREFORE THEY TOOK NO PRECAUTIONS TO SEPARATE THEM FROM WHITE PRISONERS FROM "C AND D" YARDS. IN SOME CIRCUMSTANCES GUARDS IN THE AD/SEG FACILITY WERE ACTUALLY USING THE ENEMY FACTOR AS A MEANS OF PUNISHMENT AND RETALI-ATION AGAINST WHITE PRISONERS THAT MISBEHAVED OR GOT ON A GUARD'S BAD SIDE. THIS WAS DONE BY MIXING "B" YARD WHITE PRISONERS WITH A WHITE PRISONER FROM EITHER "C" OR "D" YARD, WITH FULL KNOWLEDGE THAT THEY WERE ENEMIES AND WOULD VIOLENTLY ATTACK EACH OTHER.

90.   ON INFORMATION AND BELIEF, HASH WAS NOT SUBJECTED TO THESE PARTICULAR ENEMY DANGERS DURING THE YEARS 2002 AND 2003 BECAUSE HE WAS NOT HOUSED IN AD/SEG ON "D" YARD WHERE THE WAR WAS TAKING PLACE. IN THE YEAR OF 2004 HASH WAS STILL HOUSED ON "B" YARD WHERE HE HAD ALWAYS BEEN SINCE 1999. IN THE MONTH OF JUNE 2004 "B" FACILITY WAS ON LOCK DOWN STATUS WHEN AN EMERGENCY SITUATION ERUPTED BETWEEN TWO PRISONERS WHICH WERE CELLMATES IN CELL B-3-130. INMATE DIBBLE C.D.C # P-29878 HAD BECOME VIOLENT AND WAS BATTERING HIS CELLMATE INMATE PEACOCK C.D.C # J-21505. IN RESPONSE TO THIS EMERGENCY, FACILITY B-3 FLOOR OFFICER FREDRICO RAMIREZ RELIN-QUISHED HIS AUTHORITY AND RESPONSIBILITY BY RELEASING TWO (M.A.C)

22.

1  MEN'S ADVISORY REPRESENTATIVES FROM THEIR CELLS. AS (M.A.C) REPRE-
2  SENTATIVES, OFFICER RAMIREZ INSTRUCTED INMATE BENGAR  AND
3  INMATE BARNES TO PUT A STOP TO ANY FURTHER BATTERING OF INMATE
4  PEACOCK BY INMATE DIBBLE. INMATES BENGAR AND BARNES WERE
5  FURTHER INSTRUCTED BY OFFICER RAMIREZ TO GO FROM CELL TO CELL
6  ASKING OTHER WHITE PRISONERS IF THEY WOULD ACCEPT INMATE
7  DIBBLE AS A CELLMATE. WHEN INMATES BENGAR AND BARNES APPROACH-
8  ED HASH IN CELL B-3-246, HASH ADAMANTLY REFUSED TO ACCEPT
9  INMATE DIBBLE AS A CELLMATE BECAUSE HASH BELIEVED HE WAS  NOT
10 COMPATIBLE TO LIVE WITH INMATE DIBBLE AND BECAUSE INMATE DIBBLE
11 HAD A LONG AND WELL KNOWN HISTORY OF FIGHTING WITH HIS PREVIOUS
12 CELLMATES AND HASH FELT INMATE DIBBLE WOULD FIGHT WITH HIM AS
13 WELL. DESPITE HASH'S REFUSAL TO ACCEPT INMATE DIBBLE AS A CELL-
14 MATE OFFICER RAMIREZ ALLOWED INMATES BENGAR AND BARNES TO
15 PROCEED ON TO THE FACILITY "B" PROGRAM OFFICE WHERE THEY WERE
16 ABLE TO PERSUADE CAPTAIN GUS ZAVALA, LIEUTENANT D.M. MANTEL,
17 AND LIEUTENANT C. BLACKSTONE TO BYPASS THE ESTABLISHED PROCEDURAL
18 REQUIREMENTS FOR CELL MOVES SO THAT INMATE DIBBLE COULD  BE
19 IMMEDIATELY SEPARATED FROM HIS PREVIOUS CELLMATE AND REASSIGNED
20 TO LIVE WITH HASH IN CELL B-3-246. AS SUCH, THE ABOVE NAMED DEFEN-
21 DANTS VIOLATED OPERATIONAL PROCEDURE 42.5, WHICH REQUIRED THAT (CDC
22 FORM 1882-A/AND FORM 1882-B) BE COMPLETED AS TO INTERVIEWING
23 EACH INMATE TO DETERMINE IF THEY WERE COMPATIBLE TO LIVE TOGEATHER
24 IN THE SAME CELL. BOTH INMATES WERE REQUIRED TO CONSENT  TO
25 LIVE TOGEATHER BY SIGNING THE DOUBLE CELLING REVIEW FORM
26 AND THE FORM WAS SUPPOSE TO OF BEEN FORWARDED TO ONE OF THE
27 LIEUTENANTS FOR APPROVAL. S.V.S.P WARDEN  M.S. EVANS WAS
28 GROSSLY NEGLIGENT FOR FAILING TO SUPERVISE THE ABOVE DEFENDANTS

23.

1  EACH OF THE ABOVE NAMED DEFENDANTS WERE AWARE OF THE
2  DOUBLE CEILING REVIEW REQUIREMENTS AND EACH DEFENDANT IS
3  PERSONALLY RESPONSIBLE FOR VIOLATING HASH'S RIGHT TO LIVE WITH A
4  COMPATIBLE CELLMATE. SEE, EX. "B", DECLARATION OF JOHN BENGAR.

5

6  91.  ON OR ABOUT JULY 14, 2004, AFTER HASH AND INMATE DIBBLE
7  WERE FORCED TO LIVE TOGEATHER IN CELL B-3-246, INMATE DIBBLE
8  BATTERED HASH CAUSING HIM SERIOUS AND APPARENT PHYSICAL
9  INJURIES. UPON INFORMATION AND BELIEF, INMATE BENGAR OBSERVED
10 HASH'S INJURIES AND IMMEDIATELY INFORMED OFFICER RAMIREZ OF
11 HASH'S INJURIES AND EXPRESSED A DIRE NEED TO HAVE HASH AND
12 INMATE DIBBLE SEPARATED FROM EACH OTHER TO PREVENT FURTHER
13 INJURIES. IN RESPONSE, OFFICER RAMIREZ ACKNOWLEDGED THAT
14 HE HAD ALREADY OBSERVED HASH'S INJURIES, BUT REFUSED TO
15 SEPARATE HASH AND INMATE DIBBLE UNLESS THE FIGHTING CONTINUED.
16 ADDITIONALLY, OFFICERS M. ROSA, T. STEVENS, S. THACKER, AND OFFICER
17 GANT ALL OBSERVED HASH'S SERIOUS INJURIES, BUT WERE DELIBERATELY
18 INDIFFERENT TO HASH'S REPEATED REQUEST FOR MEDICAL CARE AND
19 DID NOTHING TO ASSIST HASH. SEE, SUPRA EX. "B", DECLARATION OF BENGAR.

20

21 92.  ON JULY 17, 2004, ON INFORMATION AND BELIEF, INMATE BEN-
22 GAR INFORMED OFFICER RAMIREZ THAT INMATE DIBBLE HAD BATTERED
23 HASH AGAIN. WHEN OFFICER RAMIREZ FAILED TO TAKE ANY CORRECTIVE
24 ACTION INMATE BENGAR SIGNALED TOWER CONTROL OFFICER M. ROSA
25 AND ADVISED HIM OF THE EMERGENCY SITUATION, BUT OFFICER
26 ROSA REFUSED TO TAKE ANY CORRECTIVE ACTION UNTIL OFFICER RAMIREZ
27 INSTRUCTED HIM TO REMOTELY OPEN THE CELL DOOR TO INMATE HASH'S CELL
28 TO RELEASE HASH FROM HIS CELL. SEE, SUPRA EX. "B", DECLARATION.

24.

93.   On the same day of July 17, 2004, shortly after being released from cell #B-3-246 a fight ensued between inmate Dibble and Hash. Both inmate Dibble and Hash were pepper sprayed by officer Ramirez, which fully incapacitated inmate Dibble and Hash. However, as Hash attempted to remove himself from inmate Dibble officer Ramirez struck Hash with his state issued PR-24 side handle medal baton. The impact of the baton strike knocked Hash forward and directly on top of inmate Dibble, and as Hash made a second attempt to separate himself from inmate Dibble he was struck again and again until he laid motionless on the floor. See, Ex. "C", RVR violation report.

94.   On information and belief, Hash alleges that officer Ramirez falsified his RVR violation report by making it look as if there was a need for excessive force even though inmate Dibble and Hash had stopped fighting after being pepper sprayed and Hash was attempting to separate himself from inmate Dibble so that he could prone out on the floor. Hash alleges that officer Ramirez knew that he struck him in the lower back with his medal baton, but intentionally falsified his RVR violation report to make it indicate that he struck Hash on the left side of his buttocks with him medal baton. In support of this allegation Hash points to officer Ramirez's (RVR) violation report compared to Hash's medical report of injuries (CDC form 7219) by L.V.N S. Serrato, which shows Hash did not suffer any redness or bruising to the left side of his bottock, but clearly did suffer a swallon, bruised, and discolored area on the lower lumbar region of his back. The conflict between these two reports is significant. See, Ex. "C" and "D", reports.

25.

95. ON INFORMATION AND BELIEF, OFFICER F. RAMIREZ WAS REQUIRED BY C.D.C TO PASS INITIAL P.O.S.T TRAINING (PER PENAL CODE SEC. 832)AND OBTAIN ANNUAL RECERTIFICATION IN THE USE OF A PR-24 SIDE HANDLE BATON. AS SUCH, OFFICER RAMIREZ WAS TRAINED AND INFORMED THAT WHEN USING A SIDE HANDLE BATON HE WAS NEVER SUPPOSE TO TARGET AN INMATES HEAD, NECK, AND THE SPINAL COLUMN BECAUSE THOSE AREAS COULD BE FATAL, OR RESULT IN A SERIOUS DISABILITY OR A PERMANENT PHYSICAL IMPAIRMENT. BY LAW OFFICER RAMIREZ WAS REQUIRED TO DOCUMENT HIS USE OF HIS PR-24 SIDE HANDLE BATON SO THAT THE DOCUMENTATION COULD BE REVIEWED BY HIS IMMEDIATE SUPERVISOR FOR HIS CONCLUSIONS THEN FORWARDED UP THE CHAIN OF COMMAND TO A INSTI-TUTIONAL HEAD FOR APPROVAL OR FOLLOW-UP ACTION. THE DOE DEFENDANTS WHOM HASH IS NOT PRESENTLY AWARE OF FAILED THEIR DUTY TO PERFORM THESE FUNCTIONS.

96. ON JULY 20, 2004 AFTER REPEATED REQUEST AND BEING FORCED TO WAIT (3) DAYS TO RECEIVE A HEALTH CARE SERVICES REQUEST (CDC FORM 7362) HASH SUBMITTED THE FORM REQUESTING EMERGENCY MEDICAL TREATMENT FOR SEVERE INJURIES AND EXTREME PAIN COMING FROM HIS HEAD, CHEST, AND BACK, WITH VOMITING AND DIZZINESS. AFTER BEING DENIED EMER-GENCY MEDICAL TREATMENT FOR (9) DAYS HASH SUBMITTED A 2ND HEALTH CARE SERVICES FORM REPEATING HIS REQUEST FOR EMERGENCY MEDICAL TREATMENT FOR HIS INJURIES (AND BY THAT TIME) CEREBRAL HEAD SEIZURES AS WELL AS BLOOD IN HIS URINE AND STOOLS. THE FOLLOWING DAY ON THE 26TH HASH WAS FINALLY EXAMINED BY DEFENDANT DR. PISTONE, WHOM WAS " DELIBERATELY INDIFFERENT " TO HASH'S REPEATED REQUEST FOR AN (MRI) EXAMINATION TO DETERMINE THE CAUSE OF HIS HEAD AND BACK PAIN. SEE, EX."E", SICK CALL FORMS DATED 7-20-2004 AND 7-25-2004

26.

97. ON OR ABOUT JULY 22, 2004, UPON INFORMATION AND BELIEF, DESPITE THE BOILER PLATE LANGUAGE CONTAINED IN HASH'S (128 G I.C.C CHRONO) HASH WAS NOT GIVEN NOTICE OF HIS I.C.C HEARING AND BASED ON HASH'S REQUEST FOR EMERGENCY MEDICAL TREATMENT TWO DAYS PRIOR TO THE HEARING, HASH DID NOT TELL THE COMMITTEE HE WAS IN GOOD HEALTH AND WILLING TO PROCEED WITH THE HEARING. IN FACT, WHEN HASH WAS FORCED TO APPEAR BEFORE CAPTAIN P. MANDEVILLE AND THE OTHER DOE DEFENDANT MEMBERS OF THE I.C.C COMMITTEE HASH ARGUED THAT HE WAS BEING DENIED EMERGENCY MEDICAL TREAT- MENT, NOTICE OF THE HEARING, AND DENIED A "STAFF ASSISTANT," EVEN THOUGH HIS LOW EDUCATIONAL GRADE POINT LEVEL OF (2.9) ENTITLED HIM TO SUCH ASSISTANCE. DEFENDANT COMMITTEE MEMBERS WERE DELIBERATELY INDIFFERENT TO HASH'S POSITION, THEREFORE HE WAS NOT ABLE TO CONFIDENTIALLY DISCUSS CRUCIAL FACTS OF HIS CHARGE WITH A STAFF ASSISTANT WHOM COULD HAVE THEN PROVIDED HIM WITH ADVICE AND ASSISTANCE PREPATORY TO THE HEARING. WHEN HASH TOLD THE I.C.C COMMITTEE MEMBERS THAT HE WOULD'NT ACCEPT A CELLMATE THAT WAS AFFILLIATED WITH THE WAR BETWEEN "B" YARD WHITE INMATES VERSES WHITE INMATES FROM "C AND D" YARD, THE COMMITTEE LAUGHED AT HASH AND TOLD HIM HE DOES'NT MAKE THE RULES, THEY DO. DEFENDANT I.C.C COMMITTEE MEMBERS ACTIONS WERE WONTON, UNCALLED FOR, RECKLESS, AND DELIBERATELY INDIFFERENT TO HASH'S SAFETY AND A KNOWN RISK IF HASH WAS NOT HOUSED SEPARATELY FROM WHITE INMATES FROM "C AND D" YARD. ALTHOUGH THERE WAS A SLIM CATEGORY OF "B" YARD WHITE INMATES THAT HAD BEEN ACCEPTED BY WHITE INMATES FROM "C AND D" YARD, THAT SLIM CATEGORY EITHER PARTICIPATED IN THE 2002 BLACK/WHITE RIOT, OR IN SOME CASES THEY INTENTIONALLY COMMITTED VIOLATIONS IN ORDER TO BE PLACED IN AD/SEG WHERE THEY PURPOSELY CONTACTED

27.

WHITE INMATES FROM "C" OR "D" YARD TO BE "JUMPED IN." IN OTHER
WORDS, THEY'D SUBMIT TO A PHYSICAL BEATING TO REDEEM THEIR
REPUTATIONS. CONTRARY TO KNOWN RISK AND SAFETY CONCERNS, THE COM-
MITTEE APPROVED HASH FOR DOUBLE CELLING WITHOUT RESTRICTIONS AS TO
WHITE INMATES FROM "C AND D" YARD.

98.   ON JULY 23, 2004, ON INFORMATION AND BELIEF, OFFICER J. BURKE
BECAME ANGRY WITH HASH BECAUSE HASH COMPLAINED ABOUT NOT GETTING
A SHOWER AND THREATED TO 602 OFFICER BURKE, MEANING FILE A
GRIEVANCE APPEAL AGAINST OFFICER BURKE. IN RETALIATION, OFFICER
BURKE TOLD HASH HE WAS GOING TO MAKE AN EFFORT TO FIND HIM A
CELLMATE FROM "C" OR "D" YARD THAT COULD KICK HASH'S ASS. LATER THAT
DAY WHEN OFFICER BURKE INFORMED HASH THAT HE'D BE RECEIVING
A CELLMATE, HASH REFUSED TO ACCEPT ANY WHITE PRISONER THAT WAS
AFFILIATED WITH THE WAR SITUATION UNLESS HE WAS FROM "B" YARD.
THEREAFTER, OFFICER BURKE TOLD HASH HE'D BE RECEIVING A DISCIPLINARY
WRITE-UP FOR REFUSING A CELLMATE. SEE, EX. "F", RVR VIOLATION -PART- C.

99.   ON SEPTEMBER 27, 2004, WHILE HOUSED IN FACILITY "D" AD/SEG
HASH WAS ACCUSED AND CHARGED WITH AGGRAVATED BATTERY AGAINST
AD/SEG SERGEANT L. WASHINGTON. AFTER BEING ACCUSED AND CHARGED
BY SGT. WASHINGTON AND OFFICER J. HICKS, AS HASH WAS BEING
ESCORTED BACK TO CELL D-1-129 WHERE HE WAS ASSIGNED, HASH TOLD
SGT. WASHINGTON THAT HE INTENDED TO FILE A 602 GRIEVANCE IN
PROTEST OF THE ACCUSATION. SGT. WASHINGTON IMMEDIATELY RETALIATED
AGAINST HASH BY TELLING HASH'S ESCORTING OFFICERS WATSON AND SMITH
THAT HE JUST CHANGED HIS MIND AND INSTEAD OF PUTTING HASH BACK
IN HIS CELL, TO PUT HASH IN A HOLDING CAGE THEN TEAR HIS CELL UP AND

28.

STRIP HIS CELL DOWN. AFTER THE SEARCH WHEN HASH WAS ESCORTED BACK TO HIS CELL THE ONLY ITEMS OFFICERS SMITH AND WATSON LEFT IN HASH'S CELL WAS A SHEET, A TOOTH BRUSH AND A HALF USED BAR OF SOAP. DESPITE THE REGULATION REQUIRING OFFICERS SMITH AND WATSON TO PROVIDE HASH WITH A RECEIPT FOR ANY STATE OR PERSONAL PROPERTY REMOVED FROM HIS CELL, THEY FAILED TO DO SO. THEREAFTER HASH WAS CHARGED FOR AGGRAVATED BATTERY ON SGT. WASHINGTON. SEE, EX.' G ", RVR VIOLATION REPORT.

100. ON SEPTEMBER 30, 2004, UPON INFORMATION AND BELIEF, HASH SUBMITTED A (602 APPEAL) COMPLAINING THAT THE CONFISCATION OF HIS PROPERTY WAS UNLAWFUL BECAUSE HIS LEGAL PROPERTY INCLUDED CONFIDENTIAL AND PRIVILEGED ATTORNEY/CLIENT MATERIALS, AS WELL AS COURT DOCUMENTS, COURT MOTIONS, TRANSCRIPTS, AND PLEADINGS NEEDED TO PURSUE HIS ON GOING HABEAS CORPUS PROCEEDINGS. HASH FURTHER ALLEGED THAT THE CONFISCATION OF HIS ARTIFICIAL MEDICAL APPLIANCES (MEDICAL MATTRESS AND PILLOW) VIOLATED CCR 3350 (b)(1) AND CCR 3358 (a)(b), THEREFORE HASH REQUESTED THAT ALL OF HIS PROPERTY BE IMMEDIATELY RETURNED TO HIM. THE MEDICAL APPLIANCES IN QUESTION WERE ISSUED AT THE DIRECTION OF A LICENSED PHYSICIAN AND WERE CHARGED TO HASH'S PRISON TRUST ACCOUNT AND WERE THEREFORE HASH'S PERSONAL PROPERTY. ON APPEAL HASH RELIED UPON HIS ABILITY TO RECONSTRUCT HIS PROOF OF OWNERSHIP BY OBTAINING COPIES OF HIS PREVIOUS (C.D.C 1083 PROPERTY INVENTORY FORMS), BUT HASH RECEIVED NO RELIEF BECAUSE OFFICERS HICKS, SMITH, DIAZ, YONOUCE, AND MONTANA ALL WERE GROSSLY NEGLIGENT IN THEIR DUTY TO PROPERLY ITEMIZE HASH'S PROPERTY ON (C.D.C 1083 FORMS) AND OFFICERS SMITH AND WATSON REFUSED TO PROVIDE HIM A RECEIPT FOR THE PROPERTY THEY CONFISCATED FROM HIS CELL. SGT. L. WRIGHT AND CORRECTIONAL ADMINISTRATOR J. ALLISON DENIED HASH AT THE FIRST LEVEL OF HIS APPEAL AND DURING THE INVESTIGATION OF THE

29.

SECOND LEVEL OF REVIEW NEITHER OFFICER Salao OR LIEUTENANT J. D. BENNETT WERE WILLING TO RETURN HASH'S ORIGINAL LEGAL DOCUMENTS AND MATERIALS (OR A COPY OF THEM) AND THE APPEAL WAS DENIED BY CHIEF DEPUTY WARDEN L.E. SCRIBNER. AT THE FINAL DIRECTOR'S LEVEL THE APPEAL WAS DENIED BY CAPTAIN JACK BATCHELOR AND CHIEF OF INMATE APPEALS N. GRANNIS. SEE, EX. "H", APPEAL DATED 9-30-2004.

101. ON OCTOBER 1, 2004, HASH WAS DISCIPLINED FOR THE SEPTEMBER 27, AGGRAVATED BATTERY ALLEGATION WITHOUT DUE PROCESS OF LAW BY BEING PUT ON (MCS) MANAGEMENT CELL STATUS. HASH WAS LIMITED TO (1) SHEET, (1) PAIR OF BOXER SHORTS, (1) TOOTH BRUSH, (1) SPOON, AND (1) DAILY ISSUE OF TOILET PAPER, PURSUANT TO OPERATIONAL PROCEDURE # 29.5.25.1.13. HASH WAS SUFFERING FROM SERIOUS MEDICAL INJURIES TO HIS HEAD, CHEST, AND BACK. HASH HAD A PREVIOUSLY DETERMINED BARRETT'S GASTRO-ESOPHAGEAL DISEASE. FOR THESE REASONS A LICENSED PHYSICIAN ISSUED HASH A MEDICAL MATTRESS AND PILLOW. THE REMOVAL OF THESE MEDICAL APPLIANCES FROM HASH'S CELL, ALONG WITH ALL OF HIS LEGAL DOCUMENTS AND MATERIALS, VARIOUS MEDICAL PRESCRIPTIONS, AND BASIC HUMAN NEEDS SUCH AS TOOTH PASTE, SHAMPOO, DEODORANT, AND PERSONAL HYGIENE ITEMS, WAS ALL INTENDED AS PUNISHMENT. SGT. L. WASHINGTON AND LIEUTENANT G. BIAGGINI WERE SUPPOSE TO MONITOR THE (MCS) PUNISHMENT FOR (10) DAYS THEN REMOVE IT, BUT FAILED TO DO SO. ON INFORMATION AND BELIEF, OFFICER DIAZ INFORMED HASH HIS PUNISHMENT ON (MCS) WAS EXTENDED BEYOND THE STANDARD (10) DAYS BECAUSE HE "LIKE TO FILE 602 GRIEVANCES". EACH OF THE DEFENDANTS INVOLVED IN DEPRIVING HASH OF THE ABOVE PROPERTY ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS, HIS BASIC HUMAN NEEDS, AND THEIR OBDURACY AND WONTONNESS INFLICTED UNNECESSARY PAIN ON HASH.

30.

1 WAS ONCE AGAIN DENIED A "STAFF ASSISTANT" EVEN THOUGH HIS LOW
2 EDUCATIONAL GRADE POINT LEVEL OF (2.9) ENTITLED HIM TO SUCH ASSISTANCE.
3 AS SUCH, HASH WAS NOT ABLE TO CONFIDENTIALLY DISCUSS CRUCIAL FACTS
4 RELEVANT TO HIS NEED TO BE SEPARATED FROM ENEMY WHITE INMATES FROM
5 "C" AND "D" YARD, BECAUSE HE HAD NO STAFF ASSISTANT WHOM COULD HAVE
6 PROVIDED HIM WITH ADVICE AND ASSISTANCE PREPATORY TO THE HEARING.
7 WHEN HASH TRIED TO EXPLAIN WHY HE NEEDED TO BE HOUSED SEPARATELY
8 THE CHAIRPERSON L. SCRIBNER CUT HASH OFF BEFORE HE COULD EVEN
9 FULLY STATE HIS POSITION. HASH THEN TRIED TO SPEAK WITH CAPTAIN A.
10 TUCKER AND A. WILLIAMS WHOM REFUSED TO HEAR FROM HASH. DEFENDANT
11 I.C.C COMMITTEE MEMBERS ACTIONS WERE DELIBERATELY INDIFFERENT TO
12 HASH'S NEED TO BE HOUSED SEPARATELY FROM ENEMY WHITE INMATES FROM
13 "C" AND "D" YARD AND SUCH WANTON AND RECKLESS DISREGARD TO A
14 KNOWN RISK UNNECESSARILY SUBJECTED HASH TO POTENTIAL VIOLENCE.
15 HASH'S RIGHT TO DUE PROCESS OF LAW WAS CLEARLY VIOLATED BY THE MEMBERS
16 OF THE I.C.C COMMITTEE. SEE, EX. "J", 128 G I.C.C CHRONO DATED 11-4-2004.
17
18 104. ON NOVEMBER 29, 2004, HASH SUFFERED ACTUAL PROCEDURAL
19 INJURY AS A RESULT OF THE PREVIOUS SEPTEMBER 27, 2004 CELL
20 SEARCH, CONFISCATION, AND LOSS OF HIS LEGAL DOCUMENTS AND MATERIALS.
21 THE LOSS OF THOSE ITEMS CAUSED HASH TO BE UNABLE TO CONTINUE
22 ON WITH ADDITIONAL LEGAL PLEADINGS TO CHALLENGE HIS LIFE SENTENCE,
23 THEREFORE AS A PRO-PER PETITIONER HIS CASE IN THE 9TH CIRCUIT
24 COURT OF APPEAL CAME TO AN END ON AUGUST 31, 2004. LEFT WITH
25 ONLY (90) DAYS TO FILE HIS WRIT OF CERTIORARI IN THE U.S. SUPREME
26 COURT HASH WAS UNABLE TO RECONSTRUCT THE COURT DOCUMENTS THAT
27 WERE CONFISCATED PREVIOUSLY, THEREFORE HE MISSED HIS NOVEMBER 29,
28 2004 FILING DEADLINE AND HIS WRIT WAS NOT ACCEPTED. EX. "K", NOTICE SUPREME COURT

32.

105. ON OR ABOUT DECEMBER 7, 2004, (UPON INFORMATION AND BELIEF), OFFICER C. SICKELTON WAS ASSIGNED AS HASH'S INVESTIGATIVE EMPLOYEE FOR RVR VIOLATION # FD-04-09-0150 REGARDING HASH'S PREVIOUSLY ALLEGED AGGRAVATED BATTERY AGAINST SGT. WASHINGTON ON SEPTEMBER 27, 2004. WHEN OFFICER SICKLETON REFUSED TO INTERVIEW AND ASK ALL THE QUESTIONS OF WITNESSES THAT HASH REQUESTED, HASH INSISTED THAT SICKLETON DO SO, OR HASH WOULD FILE A (602 GRIEVANCE) AGAINST OFFICER SICKLETON. DURING THIS ARGUMENT TWO OTHER UNIDENTIFIED DOE DEFENDANT OFFICERS INTERVENED TO ADVISE HASH NOT TO ARGUE WITH OFFICER SICKLE-TON OR THEY MIGHT JUST DECIDE TO GIVE HASH A NEW CELLMATE FROM "C" YARD THAT THEY HAD IN A HOLDING CELL. WHEN HASH SAID NO TO THE HOUSING THREAT OFFICER SICKLETON TOLD THE DOE OFFICERS THAT THAT WAS EXACTLY WHAT HASH DESERVED AND THEN EXPLAINED TO THE OTHER OFFICERS THAT HASH'S DISCIPLINARY REPORT SAYS HE COMMITTED AN AGGRAVATED BATTERY AGAINST SGT. WASHINGTON IN FACILITY (D-1). OFFICER SICKLETON THEN TOLD HASH HE HAD NO CHOICE IN THE MATTER, HE AND THE OTHER DOE OFFICERS DECIDED TO PUT A WHITE INMATE FROM "C" YARD IN HASH'S CELL WHETHER HE WANTED HIM OR NOT. WITHOUT A CHOICE IN THE MATTER HASH WAS TOLD TO STEP TO THE BACK OF HIS ASSIGNED [CELL D-8-121] AND AS HASH'S CELL DOOR WAS REMOTELY OPENED THE DOE DEFENDANTS PUT A WHITE INMATE FROM "C" YARD INTO HASH'S CELL, WITHOUT HIS APPROVAL OR CONSENT. HOWEVER, HASH'S NEW CELLMATE DID NOT POSE A THREAT BECAUSE HE WAS A VICTIM THAT OTHER "C" YARD WHITE PRISONERS HAD SEVERELY INJURED AND BEATEN UP BECAUSE HE WAS "JEWISH" AND BECAUSE HE HAD MENTAL HEALTH PROBLEMS. A WEEK OR SO LATER HASH'S NEW CELLMATE WAS REHOUSED IN A MENTAL PATIENT FACILITY.

33.

Additionally, when Hash received Officer Sickelton's investigative Employee Report 95% of the witness questions that Hash had requested Officer Sickelton to ask his witnesses were never asked. Not only did Officer Sickelton conspire with the other Doe Defendants to house a white inmate from "C" yard with Hash, his retaliation carried into Hash's disciplinary matter and violated Hash's due process right to a fair hearing with evidentiary testimony from material witnesses. See, Ex. "G," RVR disciplinary finding and Sickelton's i.e. report.

106. On April 19, 2005, (upon information and belief) Officer T. Mays informed Hash that he'd heard from officers in Hash's housing unit that he was refusing to accept all cellmates, accept inmates that were from "B" yard. Officer Mays acknowledged that he knew all about the war between "B" yard white inmates verse white inmates from "C" and "D" yard, but did'nt care. Officer Mays told Hash that he percieved Hash's refusal to accept a cellmate as disrespect towards him personally. As a result, Officer Mays retaliated by issuing Hash a disciplinary write-up for refusing a cellmate. Officer Mays was deliberately indifferent to a known risk and acted with wanton and reckless disregard for Hash's safety. See, Ex. "L", RVR disciplinary report.

107. On or about April 25, 2005, after nearly nine months of criminal proceedings in the Monterey Superior Court, which involved several motions and pleadings prepared by Hash as a pro-per defendant, the Monterey County District Attorney's office dismissed Hash's previous July 17, 2004 battery charges involving

34.

1  His prior cellmate inmate Dibble. The charges against Hash were
2  dismissed at the first day of his trial based on insufficent
3  evidence. Hash now alleges that the entire prosecution was
4  based on Officer F. Ramirez's falsified RVR disciplinary report
5  (supra Ex."C"). As such, S.V.SP Liutenant M. Ross, Captain G. D.
6  Lewis, and Correctional administrator L.E. Scribner are liable
7  for their failure to adequately investigate and review the
8  charges against Hash prior to signing their approval of his
9  disciplinary findings, which were the result of a malicious prosecution.
10 Hash further alleges that Monterey County District attorneys Dean Flippo,
11 Judy Beck and Michael Breeden failed their duty to adequate investigate
12 and evaluate the evidence of Hash's battery charge and are therefore
13 liable for a malicious prosecution against Hash based on insufficent
14 evidence. Hash alleges that each of the defendants named in this
15 complaint that were involved in or supervised Hash's prosecution
16 and failed to adequately investigate or review Hash's charges,
17 including the reporting officer F. Ramirez and his immediate
18 supervisor Sergeant A. Melero, are liable for a malicious prosecution
19 against Hash. As a result, Hash's involuntary transfer from the
20 general prison population on July 17, 2004 to the grossly more onerous
21 conditions of maximum security in the prisons Ad/Seg facility
22 severely impaired Hash's ordinarially enjoyed liberty rights and
23 subjected him to substantial risk and the injuries soon to be
24 revealed in this complaint. (Stabbing incident on July 26, 2005).

25
26 108. On or about May 20, 2005, the very same July 17, 2004
27 battery charge involving Hash's previous cellmate inmate Dibble
28 was reheard by Lieutenant J.W. Luman because the charge was

35.

1 REVERSED ON HASH'S 602 ADMINISTRATIVE APPEAL, AND ALSO DISMISSED BY
2 THE MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE FOR INSUFFICENT EVIDENCE.
3 AS SUCH, SVSP LIEUTENANT LUMAN FOUND HASH NOT GUILTY OF BATTERING
4 INMATE DIBBLE BASED ON THE FINDINGS MADE BY THE MONTEREY COUNTY
5 DISTRICT ATTORNEY'S OFFICE , SEE, EX."M", HASH'S RVR AND JURY TRIAL FINDINGS.
6
7 109.  ON OR ABOUT MAY 31, 2005, OFFICER T. MAYS RETALIATED AGAINST
8 HASH A SECOND TIME BY TELLING HIM, INSTEAD OF A DISCIPLINARY WRITE-UP
9 HE HAD SOMETHING FAR WORSE IN MIND FOR HASH. OFFICER MAYS TOLD
10 HASH IF HE REFUSED A CELLMATE FROM "C" YARD HE'D CONVINCE SGT. KESSLER
11 TO TRANSFER HIM TO FACILITY (D-9) WHERE THE CELLS WERE SMALLER AND
12 THEY DID'NT HAVE ANY WINDOWS TO SEE OUT OF AND HASH WOULD HATE IT
13 BECAUSE THE LIVING CONDITIONS WERE MISERABLE AND ALL THE RULES IN
14 FACILITY (D-9) WERE REAL RESTRICTIVE. ALTHOUGH NOT ALL OF HASH'S
15 REFUSALS TO ACCEPT A CELLMATE THAT WAS A ENEMY FROM "C" OR "D" YARD
16 RESULTED IN DISCIPLINARY WRITE-UPS, SGT. KESSLER AND OFFICER MAYS
17 TOLD HASH HE'D BE FACING ALOT MORE WRITE-UPS IF HE REFUSED TO
18 MOVE TO FACILITY (D-9), SO HASH MADE THE MOVE BASED ON THE
19 THREAT OF MORE WRITE-UPS.
20
21 110.  ON OR ABOUT MAY 31, 2005 (UPON INFORMATION AND BELIEF) THE
22 SAME DAY THAT HASH WAS TRANSFERRED TO FACILITY (D-9) AD/SEG, AT
23 LIEUTENANT N. WALKER'S REQUEST HASH WAS SEEN BY DR. ROBERT BOWMAN
24 WHILE ATTENDING HASH'S DOCTOR VISIT LIEUTENANT WALKER IMPROPERLY
25 INTERFERED WITH HASH'S SERIOUS MEDICAL NEEDS BY CONVINCING DR.
26 BOWMAN TO DISCONTINUE SEVERAL OF HASH'S MEDICAL CHRONOS THAT WERE,
27 ACCORDING TO LIEUTENANT WALKER WERE NOT ALLOWED IN FACILITY (D-9) BECAUSE
28 THEY WERE TOO MUCH HASSLE FOR HIS OFFICERS TO DEAL WITH. HOWEVER,

36.

THE VERY SAME MEDICAL CHRONOS FOR (WAIST RESTRAINTS), (MEDICAL SHOWER), (SWEAT SHIRT OR THERMALS), AND FOR (LOWER TIER HOUSING) HAD PREVIOUSLY BEEN DETERMINED TO BE MEDICAL NECESSITIES AND APPROVED OF BY CHIEF MEDICAL OFFICER CHARLES D. LEE M.D. ON 11-4-2004; 1-21-2005; 3-10-2005; AND 5-13-2005. LIEUTENANT WALKER AND DR. BOWMAN'S ACTIONS WERE WITH DELIBERATE INDIFFERENCE AND A RECKLESS DISREGARD TO HASH'S SERIOUS MEDICAL NEEDS CAUSING HASH TO SUFFER UNNECESSARY PAIN AND AGONY. SEE, EX."N", MEDICAL CHRONOS.

III.    ON JUNE 17, 2005, HASH FILED A 602 ADMINISTRATIVE APPEAL CLAIMING HE HAD NOT HAD AN ANNUAL CLASSIFICATION POINT SCORE REVIEW FOR SEVERAL YEARS AND NEEDED ONE. HASH ALSO REQUESTED TO BE SEEN BY THE I.C.C COMMITTEE TO BE REMOVED FROM AD/SEG AND RETURNED TO THE PRISON'S GENERAL POPULATION. OFFICER B. CASTORENA CC II DENIED HASH'S REQUEST TO BE RETURNED TO THE GENERAL POPULATION AND NEGLIGENTLY AND INCORRECTLY CALCULATED HASH'S CLASSIFICATION POINT SCORE TO BE (57) POINTS. SEE, EX."O", HASH'S 602 APPEAL DATED 6-17-05.

112.    ALSO ON OR ABOUT JUNE 17, 2005, (ON INFORMATION AND BELIEF) AFTER MULTIBLE MEDICAL REQUEST HASH RECEIVED A (MRI) EXAMINATION TO DETERMINE THE CAUSE OF HIS EXTREME LOWER LUMBAR BACK PAIN. IT WAS DETERMINED THAT HASH HAD SUFFERED A HERNIATED DISC IN THE L-4 OR L-5 VERTEBRAL REGION OF HIS LOWER BACK, WHICH WAS THE VERY SAME LOCATION WHERE OFFICER F. RAMIREZ STRUCK HASH WITH A PR-24 SIDE HANDLE MEDAL BATON DURING THE PREVIOUS JULY 17, 2004 INCIDENT INVOLVING HASH AND HIS FORMER CELLMATE INMATE DIBBLE. ALTHOUGH OFFICER RAMIREZ'S REPORT FALSIFIED THIS INFORMATION LV.N  S. SERRATO'S REPORT IDENTIFIED THE EXACT LOCATION OF THIS INJURY. EX."C, D".

37.

113.   ON JUNE 27, 2005, (UPON INFORMATION AND BELIEF) HASH WAS DENIED AN AD/SEG PLACEMENT HEARING AND WAS RECOMMITTED TO AD/SEG WITHOUT DUE PROCESS OF LAW BASED ON A PENDING DISCIPLINARY HEARING ON THE PREVIOUSLY ALLEGED SEPTEMBER 27, 2004 AGGRAVATED BATTERY CHARGE ON SGT. L. WASHINGTON. ALTHOUGH ACTING CAPTAIN J.D. BENNETT AND LIEUTENANT N. WALKER WERE BOTH AWARE THAT WHITE INMATES FROM "B" YARD HAD BEEN SLASHED, STABBED, AND KILLED BY WHITE INMATES FROM "C" AND "D" YARD DUE TO POLITICAL CONFLICTS OVER THE SEPTEMBER 24, 2002 RIOT ON "B" YARD THEY FAILED TO SEPARATE HASH FROM THOSE ENEMY COMBATANTS WHEN ORDERING HASH RECOMMITTED TO AD/SEG. AS SUCH, THEIR ACTIONS WERE RECKLESS AND DELIBERATELY INDIFFERENT TO SUBSTANTIAL AND KNOWN RISK TO HASH'S SAFETY. SEE, EX. "P", HASH'S 114-D PLACEMENT ORDER IN AD/SEG.

114.   ON OR ABOUT JULY 1, 2005 (UPON INFORMATION AND BELIEF) HASH WAS TRANSFERRED FROM FACILITY (D-4) BACK ONCE AGAIN TO FACILITY (D-1) WHERE HASH HAD PREVIOUSLY BEEN MOVED FROM DUE TO ALLEGATIONS THAT HE COMMITTED THE PREVIOUS SEPTEMBER 27, 2004 AGGRAVATED BATTERY ON SGT. WASHINGTON. ALMOST IMMEDIATELY DOE DEFENDANT OFFICERS RECALLED THE ALLEGATION AND BEGAN RETALIATING BY THREATENING TO HOUSE HASH WITH AN ENEMY WHITE INMATE FROM "C" OR "D" YARD, KNOWING FULL WELL THAT HASH WOULD REFUSE SUCH HOUSING. NINE DAYS LATER WHEN SAID OFFICERS REFUSED TO STOP THE RETALIATION HASH PARTICIALLY COVERED HALF OF HIS CELL DOOR WINDOW WITH NEWSPAPER. BY ORDER OF SERGEANT J. IPPOLITO HASH WAS DISCIPLINED WITHOUT DUE PROCESS OF LAW AND WAS IMMEDIATELY REMOVED FROM HIS CELL SO THAT IT COULD BE STRIPPED DOWN TO A MATTRESS, (1) SHEET, (1) PAIR OF BOXER SHORTS, (1) SPOON, (1) TOOTH BRUSH, AND (1) DAILY ISSUE OF TOILET PAPER, PER O.P. #29.5.25.1.13. .

38.

ACTING CAPTAIN G. BIAGGINI AND SGT. J. IPPOLITO MONITORED HASH'S PLACEMENT ON (MCS) MANAGEMENT CELL STATUS FOR 10 DAYS, THEN DID AWAY WITH IT. BY DEPRIVING HASH OF HIS PRESCRIBED MEDICATIONS, MEDICAL PILLOW, SOAP, LEGAL MAIL AND MATERIALS THE DEFENDANTS ACTIONS WERE RECKLESS, UNNECESSARY, AND DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS. HIS BASIC HUMAN NEEDS, AND THEIR WANT-ONNESS INFLICTED UNNECESSY PAIN ON HASH. SEE, EX."Q", (MCS) NOTICE.

115.   ON JULY 19, 2005, HASH WAS REISSUED A MEDICAL CHRONO BY A LICENSED PHYSICIAN FOR ALL OF THE VERY SAME MEDICAL NECESS-ITIES THAT WERE PREVIOUSLY DISCONTINUED BY DR. BOWMAN ON MAY 31, 2005 AT THE REQUEST OF LIEUTENANT N. WALKER. AS A RESULT OF HASH'S BACK INJURY AND PHYSICAL LIMITATIONS HE SPECIFICALLY ASKED DOE DEFENDANT DOCTOR TO ISSUE HIM A MEDICAL CHRONO FOR SINGLE CELL STATUS DUE TO THE CONSTANT THREATS FROM OFFICERS THAT WERE AT-TEMPTING TO HOUSE HIM WITH AN ENEMY COMBATANT AT A TIME WHEN HE COULD NOT ADEQUATELY DEFEND HIMSELF. DOE DEFENDANT DOCTOR WAS DELIBERATELY INDIFFERENT TO HASH'S SAFETY AND DENIED THE REQUEST. SEE, EX. "R", MEDICAL CHRONO DATED JULY 19, 2005.

116.   ON JULY 21, 2005, (UPON INFORMATION AND BELIEF) HASH RECEIVED AN I.C.C PROGRAM REVIEW BY COMMITTEE MEMBERS D. TRAVERS CDW (A), CAPTAIN G. D. LEWIS, AND F. WINN CCII. CONTRARY TO THE BOILER PLATE LANGUAGE CONTAINED IN THE COMMITTEE'S FINDINGS HASH DID NOT RECEIVE A (72) HOUR NOTICE OF THE HEARING AND DID NOT STATE HE WAS IN GOOD HEALTH AND WAS WILLING TO PROCEED WITH THE HEARING. HASH'S LOW EDUCATIONAL GRADE POINT LEVEL OF (2.9) ENTITLED HIM TO A "STAFF ASSISTANT" YET THAT RIGHT WAS DENIED AND HASH WAS NOT ABLE TO DISCUSS CRUCIAL AND CONFIDENTIAL FACTS WITH

39.

A "STAFF ASSISTANT" WHOM COULD HAVE PROVIDE ADVICE AND ASSISTANCE PREPARTORY TO THE HEARING. TO OVER COME THIS DUE PROCESS VIOLATION HASH ATTEMPTED TO TELL THE COMMITTEE THAT HIS ANNUAL REVIEW HAD BEEN NEGLIGENTLY FORGOTTEN ABOUT WITHOUT A POINT SCORE REDUCTION AND BECAUSE HE WAS FOUND NOT GUILTY OF BATTERING HIS PREVIOUS CELLMATE ON JULY 17, 2004 HIS CLASSIFICATION POINT SCORE SHOULD HAVE BEEN RE-DUCED EVEN FURTHER ENTITLING HIM TO A TRANSFER TO A LOWER CUSTODY PRISON. IN DENYING HASH'S ARGUMENT THE COMMITTEE FOCUSED ON THE FACT THAT HASH STILL HAD A PENDING ALLEGATION OF AGGRAVATED BATTERY ON SGT. WASHINGTON. AFTER A SHORT MUFFLED PAUSE IN WHICH THE COMMITTEE MEMBERS DISCUSSED THE ISSUE AMONG THEMSELVES HASH WAS TOLD HE WAS GOING TO BE RELEASED FROM AD/SEG AND REASSIGNED TO "C" YARD WHERE HIS CHARGE OF AGGRAVATED BATTERY ON SGT. WASHINGTON WOULD BE HEARD AND DECIDED AT A DISCIPLINARY HEARING. RIGHT AWAY HASH PROTESTED CLAIMING HE WAS FROM "B" YARD AND ALL THE "B" YARD WHITE INMATES ARE AT WAR WITH ALL THE WHITE INMATES ON "C" YARD. HASH FURTHER ARGUED THAT HE WAS CLASSIFIED FOR A (270) DESIGN FACILITY AND "C" YARD WAS A (180) DESIGN FACILITY. THE COMMITTEE'S RESPONSE WAS, WELL MR. HASH YOU SHOULD'NT OF COMMITTED AN AGGRAVATED BATTERY ON ONE OF OUR SERGEANTS, SO WHETHER YOU LIKE IT OR NOT WERE REASSIGNING YOU TO "C" YARD. THE COMMITTEE WAS AWARE OF THE WAR BETWEEN "B" YARD WHITE INMATES AND WHITE INMATES ON "C" YARD, THEREFORE THEIR ACTIONS WERE WANTON, UNCALLED FOR, RETALITORY, RECKLESS, OBDURANT, AND DELIBERATELY INDIFFERENT TO A SUBSTANTIAL RISK TO HASH'S SAFETY. SEE, EX. "S", CDC 128 G CHRONO.

117.   ON JULY 21, 2005, SHORTLY AFTER THE I.C.C HEARING HASH WAS MOVED FROM HIS CELL TO A ONE MAN HOLDING CAGE WHERE HE WAS PAID A VISIT

40.

1  BY SGT. WASHINGTON, WHOM HARASSED HASH BY LAUGHING AND MAKING
2  COMMENTS ABOUT HOW HASH GOT WHAT HE DESERVED WHEN THE I.C.C.
3  COMMITTEE ASSIGNED HIM TO "C" YARD DUE TO THE PREVIOUS
4  SEPTEMBER 27, 2004 AGGRAVATED BATTERY ALLEGATION. WHEN
5  HASH THREATENED TO WRITE A GRIEVANCE APPEAL AGAINST SGT.
6  WASHINGTON HE RETALIATED BY HAVING HASH MOVED TO AN OUTSIDE
7  HOLDING CAGE WHERE HE WAS LEFT UNATTENDED FOR SEVERAL
8  HOURS. THEREAFTER, HASH WAS CUFFED, SHACKLED, AND ESCORTED TO
9  "C" YARD WHERE HE REFUSED TO BE HOUSED IN CELL C-3-206
10 BECAUSE IT WAS AN UPPER TIER CELL AND HASH'S MEDICAL CHRONO
11 SPECIFICALLY REQUIRED THAT HE BE HOUSED ON A BOTTOM FLOOR TIER.
12 WHEN THE TWO UNIDENTIFIED DOE OFFICERS THREATENED TO ISSUE
13 HASH A DISCIPLINARY WRITE-UP FOR REFUSING THE HOUSING ASSIGN-
14 MENT, HE ACCEPTED IT TO AVOID THE WRITE-UP. HASH TOLD HIS NEW
15 WHITE CELLMATE (INMATE SIDLEY) THAT HE WAS FROM "D" YARD, BUT
16 DELIBERATELY DID'NT DISCLOSE THE FACT THAT HE WAS ORIGINALLY
17 FROM "B" YARD SO THAT HE WOULD NOT BE PERCEIVED AS AN ENEMY.
18
19 118.  JUST ONE WEEK PRIOR TO JULY 21, 2005 WHEN HASH WAS
20 REASSIGNED TO "C" YARD, TWO OFFICERS ON "C" YARD HAD BEEN
21 STABBED AND SERIOUSLY INJURED BY WHITE INMATES, THEREFORE
22 THE ENTIRE PRISON WAS ON A STATE OF EMERGENCY AND "C" FACILITY
23 WAS ON LOCK-DOWN FOR AN INDEFINITE TIME PERIOD. ODDLY ENOUGH,
24 AFTER THE TWO OFFICERS WERE STABBED, STAFF FAILED TO
25 CONDUCT CELL SEARCHES FOR ADDITIONAL WEAPONS AND KNIVES.
26 SEE, EX. "T", PROGRAM STATUS REPORT/ASSAULT ON GUARDS, 7-14-2005.
27
28 119.  ON OR ABOUT JULY 22, 2005, (UPON INFORMATION AND BELIEF),

41.

1   HASH SUBMITTED A (C.D.C 602 APPEAL) REALLEGING THE VERY SAME CONCERNS
2   THAT HE HAD PREVIOUSLY EXPRESSED TO THE I.C.C COMMITTEE THE DAY BEFORE.
3   NOT ONLY DID HASH ASSERT THAT HE HAD BEEN IMPROPERLY HOUSED ON A
4   180 DESIGN YARD RATHER THAN A 270 DESIGN YARD AND THAT HE WAS
5   ENTITLED TO AN ANNUAL POINT SCORE REVIEW, HASH ALSO ALLEGED THAT
6   HE HAD A MEDICAL CHRONO REQUIRING HIM TO BE HOUSED ON A BOTTOM
7   FLOOR TIER RATHER THAN A UPPER TIER WHERE HE HAD BEEN ASSIGNED.
8   HOWEVER, THE MOST CRITICAL ISSUE PURSUED IN HASH'S 602 APPEAL WAS
9   HIS ASSERTION THAT "HIS LIFE WAS IN DANGER" ON "C" YARD DUE TO A
10  WAR BETWEEN "C" YARD WHITE INMATES AND "B" YARD WHITE INMATES. IN
11  SPITE OF HASH'S CLAIM THAT HIS LIFE WAS IN DANGER AND HE WAS
12  FACING A THREAT OF IRREPARABLE HARM, [C.C.R SEC. 3084.7(a)(1)] T. VARIZ
13  AND S. GOMEZ (S.V.S.P.) APPEALS COORDINATORS ACTIONS WERE WANTON,
14  UNCALLED FOR, RECKLESS, OBDURANT, AND DELIBERATELY INDIFFERENT
15  TO A SUBSTANTIAL RISK TO HASH'S SAFETY, THEREFORE THEY DISREGARDED
16  AND IGNORED THESE CLAIMS BY SCREENING OUT HASH'S APPEAL WITHOUT
17  INQUIRY INTO HASH'S SAFETY. SEE, EX."U", C.D.C 602 APPEAL DATED 7-22-05,
18  MEDICAL CHRONO DATED 7-19-05, CALIF STATE PRISONER'S HANDBOOK PAGE(98)
19  CRITERIA FOR 180 DESIGN PLACEMENT, I.C.C COMMITTEE 180 DESIGN DESIGNATION,
20  SUPRA, EX."S".
21
22  120. ON OR ABOUT JULY 26, 2005, (UPON INFORMATION AND BELIEF)
23  AFTER BEING INFORMED BY INMATE SIDLEY THAT HIS DAILY EPISODES OF
24  RAGE AND ANGER WERE THE RESULTS OF HIS ON GOING TESTOSTERONE
25  STEROID TREATMENT PRESCRIBED TO HIM BY THE FACILITY "C" DOE
26  DEFENDANT DOCTOR, SIDLEY BEGAN SLAMMING THINGS AROUND IN THE
27  CELL. APPARENTLY INMATE SIDLEY HAD BEEN A WEIGHT LIFTER AND BODY
28  BUILDER FOR SEVERAL YEARS AND DOE DEFENDANT DOCTOR WAS

42.

1  ENABLING HIM TO INCREASE HIS MUSCLE MASS BY IMPROPERLY PRE-
2  SCRIBING HIM TESTOSTERONE/STEROIDS. AFTER RECEIVING KITES,
3  MEANING WRITTEN MESSAGES FROM OTHER INMATES BY PULLING THEM
4  FROM CELL TO CELL WITH A FISH LINE, HE CONFRONTED HASH. APPARENTLY,
5  TWO DOE DEFENDANT OFFICERS HAD INTENTIONALLY MADE IT KNOWN
6  THAT HASH WAS AN ENEMY TO ALL WHITE INMATES ON "C" YARD THAT
7  WERE INVOLVED IN THE "YARD WARS" BECAUSE HASH WAS FROM "B" YARD.
8  ALLEGEDLY, ONE OF THE OFFICERS WAS A FEMALE OFFICER THAT PREVIOUSLY
9  WORKED IN THE CONTROL TOWER IN HASH'S HOUSING UNIT ON "B" YARD
10 AND DISLIKED HASH, AND THE SECOND OFFICER RECALLED HASH BEING
11 SENT TO AD/SEG AS A RESULT OF A FIGHT ON "B" FACILITY. WHILE
12 HASH SENSED WHAT HE BELIEVED TO BE A KNIFE BEING RETREIVED
13 BY WAY OF A FISHLINE FROM ANOTHER CELL, HASH WAS UNABLE TO DIS-
14 ARM SIDLEY BEFORE HE BURST INTO A TESTOSTERONE CHARGED STERIOD
15 RAGE AND STARTED STABBING HASH REPEATEDLY UNTIL HASH LOST
16 CONSCIOUS AND FELL TO THE FLOOR. ALTHOUGH HASH DOES NOT RECALL
17 ALL THE DETAILS OF HIS STABBING HE LATER LEARNED THAT HE WAS
18 TRANSPORTED TO THE PRISON'S INFIRMARY WHERE HE FLATLINED
19 TWICE AND WAS RESUSCITATED BACK TO LIFE. THEREAFTER, HASH
20 WAS AIRLIFTED BY HELICOPTER AND FLOWN TO THE EMERGENCY
21 TRAUMA CENTER AT STANFORD HOSPITAL. SEE, EX. "V", INCIDENT
22 REPORT, NARRATIVE ONLY.

23
24 121. ALSO ON JULY 26, 2005 (UPON INFORMATION AND BELIEF),
25 THE MAJORITY OF HASH'S THIRTY SOME STAB WOUNDS WERE SURGICALLY
26 TREATED AND SUTURED, BUT DUE TO THE DEPTH OF THE STAB WOUNDS
27 TO HASH'S LEFT FLANK AND CHEST AREA HIS LEFT LUNG HAD BEEN PUNC-
28 TURED. IN AN EFFORT TO DETERMINE THE EXTENT OF HASH'S INTESTINAL

43.

injuries he underwent exploratory laparotomy surgery to examine his internal organs for damage. See, Ex." W," a select few pages of over (250) pages of medical records.

122. On July 31, 2005 (upon information and belief) Hash met with Dr. Vincent R. Hentz, a world renowned and widely acclaimed hand surgeon that gave lectures to other medical professionals on how to perform hand and wrist surgeries. It was a Stanford Hospital custom and practice to have their doctors explain the procedures and nature of an intended surgery to a patient prior to signing a consent agreement for a surgery. After a long discussion of these issues with Dr. Hentz, and because of his extensive expertise and good reputation Hash felt confident by signing the consent agreement he had chosen the right doctor to perform the operation to reattach the tendons in his left wrist that had been severed during the Sidley stabbing incident. See, Ex." X", consent to operate.

123. On August 1, 2005 (upon information and belief) Hash was preped for surgery and reassured that Dr. Hentz would perform the surgery on Hash's wrist/forearm, but he did not do so. Instead, Dr. Amy Ladd, a doctor whom Hash had never seen or met performed the surgery on his left forearm/wrist with the assistance of unknown medical students. After Hash was preped for surgery he was anesthetized and rendered unconscious, therefore at no time did he consent to allow Dr. Ladd to perform his surgery, nor did he consent to allow medical students to participate in his surgery. See, Ex." Y ", Procedure checklist and operation report.

44.

124. ON AUGUST 2, 2005 (UPON INFORMATION AND BELIEF) HASH WAS DISCHARGED FROM STANFORD HOSPITAL WITHOUT SUTURING CLOSED AN INCISION IN HIS UPPER LEFT RIB CAGE WHERE A CHEST TUBE HAD PREVIOUSLY BEEN IMPLANTED. HASH'S DISCHARGE INCLUDED SPECIFIC FOLLOW UP INSTRUCTIONS DIRECTED TO S.V.S.P MEDICAL OFFICIALS THAT WERE UNDER THE DIRECTION OF CHIEF MEDICAL OFFICER CHARLES D. LEE. THOSE S.V.S.P MEDICAL OFFICIALS WERE INSTRUCTED TO RETURN HASH TO THE STANFORD HOSPITAL HAND CLINIC TWO WEEKS AFTER HIS DISCHARGE AND TO SCHEDULE HASH FOR A DENTAL EXAMINATION TO FIX SEVERAL OF HIS TEETH THAT HAD BEEN CHIPPED AND BROKEN DURING HIS JULY 26, 2005 STABBING INCIDENT. THE SAME FOLLOW-UP INSTRUCTIONS ALSO DIRECTED THAT, SHOULD HASH DEVELOP FLASHES OF LIGHT OR CURTAINS COMING DOWN OVER HIS EYES AS A RESULT OF A STAB WOUND OVER HIS LEFT EYE HE SHOULD BE EXAMINED BY AN OPHTHALMOLOGIST. SEE, EX. "Z", CHEST TUBE MEDICAL RECORDS AND FOLLOW-UP INSTRUCTIONS.

125. ALSO ON AUGUST 2, 2005 (UPON INFORMATION AND BELIEF) AFTER BEING RETURNED TO S.V.S.P, INSTEAD OF HOUSING HASH IN THE PRISON'S INFIRMARY, HE WAS HOUSED IN A SMALL TEMPORARY HOLDING CELL INTENDED FOR RECEIVING AND RELEASE INMATES. HASH WAS DEPRIVED OF A BED AND FORCED TO SLEEP ON A DIRTY UNSANITARY COLD CEMENT FLOOR FOR A DAY AND A NIGHT CAUSING HIM TO BECOME SERIOUSLY SICK AND ILL FOR TWO WEEKS. ADDITIONALLY, OFFICER D. SELLERS UNDER THE AUTHORITY OF LIEUTENANT S. PLAZA RECOMMITTED HASH TO AD/SEG IN VIOLATION OF HIS RIGHT TO A DUE PROCESS HEARING WHEREIN A DUELY ASSIGNED STAFF ASSISTANT COULD OF PRESENTED HASH'S URGENT NEED TO BE PUT ON SINGLE CELL STATUS TO THE I.C.C COMMITTEE. AS SUCH, HASH WAS ONCE AGAIN HOUSED ON "C" YARD WHERE HE WAS STILL APPROVED FOR DOUBLE CELLING AND SUBJECTED TO THE

45.

1  SUBSTANTIAL RISKS AND DANGERS THAT CAUSED A WHITE INMATE FROM "C"
2  YARD TO STAB HIM (30) SOME TIMES JUST ONE WEEK EARLIER. CLEARLY
3  THE DEFENDANTS ACTIONS WERE WANTON, RECKLESS, OBDURANT, AND DELIBERATELY
4  INDIFFERENT TO HASH'S SAFETY. SEE, EX. 1-A, HASH'S 114-D LOCK UP ORDER.
5
6  126.  ON AUGUST 11, 2005, (UPON INFORMATION AND BELIEF) HASH WAS
7  SEEN BY THE I.C.C COMMITTEE AND PUT ON SINGLE CELL STATUS, BUT
8  STILL RETAINED IN AD/SEG PENDING A (30) DAY INVESTIGATION INTO
9  HIS SAFETY CONCERNS. ALTHOUGH THE I.C.C COMMITTEE INDICATED HASH
10  WOULD BE RETURNED TO THE COMMITTEE ON AUGUST 25, 2005 FOR REVIEW
11  OF HIS HOUSING AND PROGRAMMING NEEDS, THEY FAILED TO DO SO.
12  CONTRARY TO THE COMMITTEE'S COMMENTS ON HASH'S 128 G CHRONO
13  HE DID NOT TELL THE COMMITTEE HE WAS IN GOOD HEALTH AND WILLING TO
14  PROCEED, NOR DID HE RECEIVE A (72) HOUR NOTICE OF THE HEARING, AND AT
15  THE CONCLUSION OF THE HEARING HASH WAS NOT INFORMED OF HIS APPEAL
16  RIGHTS AND DID NOT MAKE AN ACKNOWLEDGMENT OF HIS UNDERSTANDING OF
17  THE COMMITTEE'S ACTIONS. HASH'S DUE PROCESS OF LAW WAS VIOLATED BY
18  ASSIGNING HIM STAFF ASSISTANT OFFICER PRATTI WHOM WAS UNPREPARED
19  AND REFUSED TO INFORM THE I.C.C COMMITTEE THAT HASH'S CLASSIFICATION
20  POINT SCORE WAS INCORRECT AND IF CORRECTED HASH WOULD BE ENTITLED
21  TO A TRANSFER TO A LOWER LEVEL III PRISON. SEE, EX. 1-B, ICC 128G CHRONO
22
23  127.  ON OR ABOUT AUGUST 12, 2005 (UPON INFORMATION AND BELIEF),
24  HASH WAS EXAMINED BY DR. KUMAR AND HER ASSISTANT NINA, WHOM
25  ACKNOWLEDGED THAT, OF THE SEVERAL STITCHES THAT SHE REMOVED FROM
26  HASH'S STAB WOUNDS, THEY SHOULD HAVE BEEN REMOVED AT AN EARLIER
27  DATE. DR. KUMAR ALSO INFORMED HASH THAT SHE WOULD WRITE A REFERAL
28  TO A DENTIST TO REPAIR HASH'S TEETH THAT WERE CHIPPED AND BROKEN

DURING HIS JULY 26, 2005 STABBING INCIDENT, AND ALSO REFER HIM TO
AN ORTHOPEDIC SPECIALIST TO EVALUATE HIS STAB WOUND INJURIES,
AFTER HE HAD AN (MRI) EXAMINATION OF HIS INJURIES. HOWEVER,
OTHER THAN A DENTAL REFERAL, SHE FAILED TO MAKE THE OTHER REFERALS.

128. ON OR ABOUT AUGUST 15, 2005 HASH WAS TRANSFERRED FROM
"C" FACILITY TO "D" FACILITY WHERE HE WAS ONCE AGAIN IMPROPERLY
HOUSED ON AN UPPER TIER WITH A SINGLE MATTRESS THAT WAS MISSING
IT'S OUTER CANVASS COVERING AND WAS SOAKED WITH SOMEONE ELSES
BLOOD, HAIR, AND OTHER UNKNOWN HAZARDOUS WASTE.

129. ON AUGUST 17, 2005 (UPON INFORMATION AND BELIEF) HASH FILED
A 602 APPEAL BECAUSE THE FACILITY (D-8) FLOOR OFFICERS CLAIMED THEY
THEY WERE TOLD BY SGT. R.A. KESSLER TO IGNORE HASH'S REQUEST
FOR A BOTTOM TIER CELL AND TWO CLEAN MATTRESSES. WHEN HASH
SPOKE PERSONALLY TO SGT. KESSLER AND MADE THE SAME REQUEST, SGT.
KESSLER WAS DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS
AND REFUSED TO HONOR HASH'S MEDICAL CHRONOS TELLING HASH THAT
IF HE CONTINUED TO COMPLAINT, HE'D SEE TO IT THAT HASH WAS MOVED
TO FACILITY (D-9) WHERE LIVING CONDITIONS WERE MUCH WORSE AND
THEY TOO WOULD REFUSE TO HONOR HASH'S MEDICAL CHRONOS.
WHEN SGT. KESSLER RESPONDED TO HASH'S 602 APPEAL HE INDICATED
THAT HASH WAS GOING TO BE MOVED TO FACILITY (D-9) TO CURE THE
PROBLEM. HOWEVER, HASH WAS NOT MOVED, HE REMAINED IN THE SAME
(D-8) FACILITY IN THE SAME UPPER TIER ON THE SAME MATTRESS
SOAKED WITH THE SAME BLOOD, HAIR, AND UNKNOWN HAZARDOUS WASTE.
HASH CHOSE NOT TO ELEVATE HIS 602 APPEAL TO THE NEXT HIGHER
LEVEL FOR FEAR THAT HE'D BE MOVED TO FACILITY (D-9). EX. 1-C, CHRONO/APPEAL

47.

130. ON OR ABOUT AUGUST 17 - TO - AUGUST 29, 2005, (ON information AND BELIEF) HASH SPECIFICALLY REQUESTED THAT HIS POST - OPERATIVE LEFT WRIST INJURY AND CHEST TUBE HOLE IN HIS LEFT RIBCAGE BE EXAMINED BY A LICENSED DOCTOR RATHER THAN REGISTERED NURSE DEIPS (sic), BUT NURSE DEIPS REFUSED THE REQUEST. HASH REPEATEDLY MADE IT CLEAR TO R.N. DEIPS THAT THE SKIN ON HIS WRIST WAS GRAPHTING ITSELF ON TO THE TENDONS IN HIS WRIST AND IT WAS CRUCIAL THAT HE BE RETURNED TO THE STANFORD HOSPITAL HAND CLINIC TO HAVE SOME SORT OF CORRECTIVE SURGERY. ALTHOUGH R.N. DEIPS DID CHANGE HASH'S WRIST SPLINT AND MONITORED THE HEALING OF HASH'S LEFT WRIST AND CHEST TUBE HOLE IN HIS LEFT RIBCAGE, NO CORRECTIVE SURGERY PROCEDURES WERE PURSUED EVEN THOUGH HASH REQUESTED THEM. NURSE DEIPS WAS DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS AND RECKLESSLY DISREGARDED THE SUBSTANTIAL RISK THAT HASH MAY SUFFER PERMANENT DISABILITIES. IT WAS NOT UNTIL HASH CONTACTED SEVERAL OTHER PRISON MEDICAL OFFICIALS THAT HE WAS FINALLY SEEN BY AN OUTSIDE HAND SPECIALIST. HOWEVER, HASH WAS NOT RETURNED TO THE STANFORD HAND CLINIC AS S.V.S.P MEDICAL OFFICIALS HAD BEEN INSTRUCTED TO DO. INSTEAD, HASH WAS SEEN BY A LOCAL SALINAS HAND SURGEON WHOM REMOVED HASH'S WRIST SPLINT, SHOOK HIS HEAD AND SAID HASH'S WRIST SURGERY POSED A FUTURE LIABILITY THAT HE DID NOT WANT TO BECOME INVOLVED WITH AND THAT HASH SHOULD BE RETURNED IMMEDIATELY TO THE SURGEON THAT PERFORMED THE SURGERY. AS OF THE DATE OF THAT MEDICAL CONSULTATION ON AUGUST 26, 2005 (24) DAYS HAD ALREADY ELAPSED SINCE HASH HAD BEEN DISCHARGED FROM STANFORD HOSPITAL. SEE, SUPRA, EX. 1-D, HOSPITAL DISCHARGE AND FOLLOW-UP INSTRUCTIONS.

48.

131.  ON AUGUST 29, 2005 HASH SUBMITTED A C.D.C 602 APPEAL SPECIFICALLY REQUESTING THAT HIS APPEAL RECEIVE <u>EMERGENCY PROCESSING</u> BASED ON A DIRE NEED TO BE RETURNED TO THE STANFORD HAND CLINIC BEFORE THE HEALING PROCESS MADE IT TOO DIFFICULT TO CONSIDER CORRECTIVE SURGERY ON HASH'S LEFT WRIST. ON SEPTEMBER 22, 2005 DR. ROBERT BOWMAN AND J. KROSSA R.N. EXAMINED HASH'S STAB WOUNDS BY VIEWING THEM THROUGH THE FOOD TRAY SLOT IN HIS CELL DOOR. THE EXAMINATION WAS IMPROPER BECAUSE HASH'S CELL AND FOOD TRAY SLOT WAS AN UNSANITARY LOCATION TO BE EXAMINING OPEN WOUNDS AND HASH'S STAB WOUNDS WERE DISCUSSED WITHIN HEARING RANGES OF HASH'S NEIGHBORS JUST INCHES AWAY. REVIEWERS CAROLINA KATES AND KATHLEEN WALL AT THE FIRST LEVEL OF APPEAL WITH HEALTH CARE MANAGER CHARLES DUDLEY LEE AT THE SECOND LEVEL AND APPEALS EXAMINER CAPTAIN J.G. ARCEO ALONG WITH CHIEF OF APPEALS AT THE DIRECTOR'S LEVEL, N. GRANNIS, EACH OF THESE OFFICIALS WERE DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS AND RECKLESSLY DISREGARDED THE SUBSTANTIAL RISK THAT HASH MAY SUFFER PERMANENT DISABILITIES AND UNNECESSARILY LARGE SCARRING TO HIS BODY. SEE, EX. I-E , 602 APPEAL DATED 8-29-2005.

132.  ON OCTOBER 3, 2005, A TRIP TO THE STANFORD HAND CLINIC REVEALED STIFFNESS AND SWELLING TO HASH'S LEFT WRIST, ALONG WITH A DORSAL BUMP AND DECREASED FEELING OVER THE TOP OF HIS WRIST AREA AND A DECREASED RANGE OF MOTION TO HIS WRIST JOINT. THE STIFFNESS AND LOSS OF RANGE MOTION TO HIS WRIST WAS ATTRIBUTED TO A FAILURE TO PROVIDE HASH WITH HAND THERAPY AND A FAILURE TO RETURN HASH TO THE STANFORD HAND CLINIC FOR (62) DAYS. A SECOND OPERATION TO RELEASE SKIN THAT IMPROPERLY

49.

BONDED ON TO THE TENDONS IN HASH'S WRIST WAS NOT RECOMMENDED UNTIL HAND THERAPY WAS PURSUED. HASH'S CONSULTATION REPORT DIRECTED SVSP MEDICAL OFFICIALS TO ARRANGE HAND THERAPY FOR HASH WITH A FOLLOW UP APPOINTMENT REQUIRING HASH TO BE RETURNED TO THE STANFORD HAND CLINIC IN (3) MONTHS TIME. CHARLES DUDLEY LEE THE (S.V.S.P) HEALTH CARE MANAGER AND HIS SUBORDINATE HEALTH CARE PROVIDERS WERE DELIBERATELY INDIFFERENT TO HASH'S HAND THERAPY AND FAILED TO PROVIDE HASH WITH ANY HAND THERAPY. ADDITIONALLY, INSTEAD OF RETURNING HASH TO THE STANFORD HAND CLINIC WITHIN (3) MONTHS, COME OCTOBER OF 2008 IT WILL BE (3) YEARS AND STILL HASH HAS NOT BEEN RETURNED TO THE STANFORD HAND CLINIC. AS A RESULT, HASH'S LEFT WRIST AREA HAS BECOME DEAD TO THE TOUCH AND HE HAS SUFFERED A DECREASED RANGE OF MOTION IN HIS LEFT WRIST JOINT, LEAVING HIM WITH A PERMANENT DISABILITY TO HIM DOMINANT HAND. SEE, EX. I-F, STANFORD HAND CLINIC CONSULTATION DATED 10-3-2005.

133. ON OCTOBER 13, 2005 (UPON INFORMATION AND BELIEF) HASH WAS SEEN BY THE I.C.C. COMMITTEE. CONTRARY TO THE CONSISTANTLY INACCURATE BOILER PLATE LANGUAGE IN THE ICC CHRONO, HASH DID NOT RECEIVE A (72) HOUR NOTICE OF THE HEARING AND DID NOT STATE THAT HE WAS IN GOOD HEALTH AND WAS WILLING TO PROCEED. AFTER A LENGTHY REVIEW OF HASH'S JULY 26, 2005 STABBING INCIDENT THE ICC COMMITTEE MADE THE FOLLOWING COMMENTS ON HASH'S ICC CHRONO. "ICC IS CONVINCED THAT HASH WILL REMAIN A TARGET FOR ATTACK IF HE REMAINS AT A S.V.S.P G.P. FACILITY DUE TO THE INMATE POLITICS SURROUNDING WHITE INMATES WHO WERE ASSIGNED TO S.V.S.P FACILITY "B" AND DID NOT FOMENT RACIAL CONFLICT BETWEEN THE BLACK AND WHITE INMATES."

50.

THAT PARTICULAR ADMISSION FROM THE I.C.C COMMITTEE IS IN ESSENCE THE THRUST OF HASH'S "FAILURE TO PROTECT CLAIM". THE I.C.C ALSO REDUCED HASH'S CLASSIFICATION POINT SCORE, WHICH SHOULD HAVE BEEN DONE AT A MUCH EARLIER DATE. AS SUCH, THE I.C.C PUT HASH UP FOR TRANSFER TO CMC-EAST, A LOWER LEVEL III PRISON. HOWEVER, THE I.C.C ELECTED TO MAKE HASH ELIGIBLE FOR DOUBLE CELLING UPON HIS TRANSFER. SEE, EX. 1-G, CLASSIFICATION CHRONO DATED 10-13-2005.

134. IN THE MONTHS OF SEPTEMBER, OCTOBER, AND NOVEMBER OF 2005 HASH FILED SEVERAL 602 APPEALS REQUESTING COPIES OF (I.S.U) REPORTS AND PHOTOGRAPHS RELEVANT TO HASH'S JULY 26, 2005 STABBING INCIDENT. UNFORTUNATELY, OTHER THAN THE BASIC 837 INCIDENT REPORT C.D.C OFFICIALS HAVE REFUSED TO PROVIDE HASH WITH THE RECORDS AND PHOTO COPIES HE REQUESTED. SEE, EX. 1-H, MULTIBLE 602 APPEALS.

135. ON OR ABOUT NOVEMBER 16, 2005 HASH WAS TRANSFERRED FROM S.V.S.P TO (C.M.C) CALIFORNIA MEN'S COLONY IN SAN LUIS OBISPO, CA.

136. ON NOVEMBER 18, 2005 HASH WAS TRANSFERRED BACK TO S.V.S.P WHERE OFFICER BURNES, UNDER THE AUTHORITY OF LIEUTENANT J. HUGHES PLACED HASH BACK INTO THE S.V.S.P AD/SEG FACILITY PENDING THE COMPLETION OF HIS BACK SURGERY. BY RECOMMITTING HASH TO THE AD/SEG UNIT INSTEAD OF THE INFIRMARY WHERE HE SHOULD OF BEEN HOUSED IT VIOLATED HASH'S DUE PROCESS RIGHT TO A HEARING WITH THE ASSIGNMENT OF A STAFF ASSISTANT TO REPRESENT HIS POSITION. CAPTAIN J.W. MOSS AND CORRECTIONAL ADMINISTRATOR C. NOLE WERE BOTH IN POSITION TO PROVIDE HASH WITH THOSE RIGHTS BUT WERE DEL-IBERATELY INDIFFERENT AND FAILED TO DO SO. EX. 1-I, 114-D AD/SEG ORDER.

51.

137.   ON OR ABOUT NOVEMBER 21, 2005 HASH RECEIVED BACK SURGERY. (UPON INFORMATION AND BELIEF) THE SURGERY TO REPAIR HASH'S HERNIATED DISC WAS NEEDED AS A RESULT OF OFFICER F. RAMIREZ STRIKING HASH IN THE lower lumber REGION OF HIS BACK WITH HIS PR-24 SIDE HANDLE MEDAL BATON DURING THE July 17, 2004 FIGHT INCIDENT INVOLVING HASH'S FORMER CELLMATE INMATE DIBBLE. HASH WAS NOT allowed ADEQUATE RECOVERY TIME IN THE HOSPITAL AND WAS RETURNED TO S.V.S.P AD/SEG ON NOVEMBER 22, 2005.

138.   ON OR ABOUT NOVEMBER 29, 2005 HASH RESUBMITTED A PREVIOUS 602 APPEAL THAT HAD BEEN SCREENED OUT BY THE S.V.S.P APPEALS COORDINATOR. THAT PARTICULAR APPEAL HAD AN INTENDED PURPOSE OF GIVING AN ADVANCE NOTICE OF HASH'S INTENT TO FILE A FUTURE CIVIL RIGHTS COMPLAINT (THIS instant complaint) AGAINST S.V.S.P OFFICIALS AND OTHER STATE ACTORS NAMED AS BEING liABLE FOR HASH'S JUNE AND July 17, 2004 INCIDENTS, AS well AS HIS July 26, 2005 STABBING INCI-DENT AND VARIOUS OTHER DUE PROCESS AND MEDICAL CLAIMS. Also ON NOVEMBER 29, 2005 HASH SUBMITTED A 602 APPEAL CHALLENGING HIS NOVEMBER 18, 2005 PLACEMENT IN AD/SEG (FOR MEDICAL PURPOSES) WITH-OUT A DUE PROCESS HEARING. UNFORTUNATELY, THE (S.V.S.P APPEALS COORDINATOR) FAILED TO PROCESS OR RETURN EITHER OF THE ABOVE MENTIONED APPEALS, AND AFTER BEING IMPROPERLY RETAINED IN AD/SEG FOR NEARLY A MONTH, ON DECEMBER 16, 2005 HASH WAS TRANSFERRED BACK TO CMC IN SAN LUIS OBISPO, CA.

139.   UPON HASH'S RETURN TO CMC THE U.C.C CLASSIFICATION COM-MITTEE ELECTED TO CONTINUE HASH'S SINGLE CELL STATUS, WITH A REQUEST THAT HE BE EVALUATED FOR MENTAL HEALTH PROBLEMS.

52.

140.   ON OR ABOUT JANUARY 17, 2006 AFTER AN EXTENSIVE MENTAL HEALTH EVALUATION IT WAS DETERMINED THAT HASH WAS SUFFERING FROM (P.D.S) POST DRAMATIC STRESS AS A RESULT OF BEING STABBED (30) SOME TIMES BY HIS FORMER CELLMATE ON JULY 26, 2005. THEREAFTER, HASH WAS PLACED IN (CCCMS) CLINICAL CARE MANAGEMENT PROGRAM AND PRESCRIBED PSYCHOTROPIC MEDI-CATIONS TO TEAT HIS MENTAL HEALTH ILLNESS. EX.1-J, (CCCMS) PROGRAM.

141.   ON OCTOBER 13, 2006 HASH FILED A 602 APPEAL REQUESTING TO BE REASSIGNED TO A DIFFERENT PAIR OF DOCTORS BECAUSE HIS CURRENTLY ASSIGNED DOCTORS ARAYA AND SMILOVITZ WERE DELIBERATELY INDIFFERENT TO THEIR CARE OF HASH'S LEFT WRIST INJURY, SPINAL INJURY, HASH'S REQUEST FOR AN (MRI) TO DETERMINE THE CAUSE OF HIS NECK, SHOLDER, AND BACK PAIN. HASH'S 602 APPEAL CITES A VARIETY OF SERIOUS MEDICAL NEEDS, INCLUDING A PRESCRIPTION FOR SUNSCREEN WHICH WAS A NON-FORMULARY PRESCRIPTION THAT REQUIRED APPROVAL FROM A HEALTH CARE COMMITTEE. WHEN HASH INFORMED DR. ARAYA AND DR. SMILOVITZ THAT HE'D SENT THE HEALTH CARE COMMITTEE MEMBERS SEVERAL WRITTEN REQUEST TO EITHER APPROVE OR DENY THE PRE-SCRIPTION FOR SUNSCREEN, BUT THEY FAILED TO RESPOND, DR. ARAYA AND DR. SMILOVITZ REFUSED TO OFFER HASH ANY ASSISTANCE. AS A RESULT, HASH SUFFERED SERIOUS SUNBURNS WHILE AT C.M.C BECAUSE HASH VERY FAIR SKINNED AND PRONE TO SERIOUS SUNBURNS. DR. ARAYA, DR. SMILOVITZ, AND DOE DEFENDANT HEALTH CARE COM-MITTEE MEMBERS WERE DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS AND RECKLESSLY DISREGARDED THE SUBSTANTIAL RISK TO HASH'S HEALTH. SEE; EX. 1-K, 602 APPEAL DATED OCTOBER 13, 2006.

53.

142. On April 5, 2007 Hash filed a 602 appeal alleging that Dr. Faecher had refused to provide him with medical care and told Hash not to waste him time. Hash's appeal further alleged that that Dr. Perry was unreasonable slow to provide him with any medical care and refused to schedule Hash for an MRI examination without any other means of determining the cause of Hash's neck, sholder, and back pain. At the second level of Hash's appeal Health Care Manager R. Meyers denied Hash's request for an (MRI) examination on June 26, 2007. The same request was also denied on October 19, 2007 at the Director's level by Captain C. Hall and Chief of inmate appeals N. Grannis. Each of the Defendants involved in this appeal acted with deliberate indifference and a reckless disregard for Hash's serious medical needs. See, Ex.1-L, 602 appeal 4-05-07

143. On August 12, 2007 Hash filed a 602 appeal requesting to be examined by orthopedic specialist Dr. Griffin to determine whether an (MRI) examination was needed to reveal the cause of Hash's severe back pain associated with being struck by officer F. Ramirez's side handle medal baton on July 17, 2004, as well as Hash's July 26, 2005 stabbing incident. After several months Dr. Griffin did examine Hash, but only performed an electrical shock test to Hash's left leg and foot and never viewed or examined Hash's back, therefore Hash's back pain was not determined and continued on as it had before, due to Dr. Griffin's refusal to examine his back. On October 26, 2007 Health Care Manager R. Meyers M.D. was deliberately indifferent to Hash's request for a better pain medication and an MRI examination and denied them both. On February 27, 2008 the same request were again denied by

54.

1  APPEALS EXAMINERS V. O'SHAUGHNESSY AND N. GRANNIS, CHIEF
2  OF APPEALS FOR THE DIRECTOR'S APPEAL LEVEL WHOM WERE BOTH
3  DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS. EX.1-M, APPEAL.
4
5  144.  ON APRIL 7, 2008 HASH FINALLY RECEIVED AN (MRI) EXAMINATION
6  WHICH INDICATES HASH MAY BE SUFFERING FROM A COMBINATION OF
7  MODIC TYPE (1) ACTIVE DEGENERATION OF SPINAL VERTEBRAL BODIES,
8  AND TYPE (2) CRONIC DEGENERATION OF SPINAL VERTEBRAL BODIES. THE
9  REPORT NOTES A VARIETY OF ABNORMALITIES AND DEFECTS, INCLUDING
10 SEVERAL VERTEBRAL DISC THAT ARE DEHYDRATED AND DISC THAT CLEARLY
11 HAVE A INFLAMMATORY DISC DISEASE THAT MAY OR MAY NOT BE INFECTIOUS.
12 THE REPORT IS PROOF OF ALL THE ABNORMALITIES AND DEFECTS IN HASH'S
13 SPINE THAT, DUE TO ALL THE OTHER PHYISIANS DELIBERATE INDIFFERENCE
14 THEY FAILED TO DETECT BY WAY OF AN (MRI). SEE, EX.1-N, MRI REPORT.
15
16 145.  ON OR ABOUT SOMETIME IN APRIL OR MAY OF 2008, (UPON INFORMATION
17 AND BELIEF) HASH'S VISION IN HIS LEFT EYE HAD DECREASED SUBSTANTIALLY
18 AFTER SUFFERING A DEEP PUNCTURE STAB WOUND SLIGHTLY ABOVE HIS
19 LEFT EYE ON JULY 26, 2005. AFTER BEING EXAMINED BY AN OPHTHALMOLO-
20 GIST THE LOSS OF VISION IN HASH'S LEFT EYE WAS REGARDED AS
21 A FUNCTIONAL DEFECT THAT NEEDED TO BE SURGICALLY REPAIRED. HASH'S EYE
22 SURGERY HAS NOT YET BEEN ATTENDED TO AND IS CURRENTLY PENDING.
23 SEE, EX.1-O, EXAMINATION RECORDS OF HASH'S LEFT EYE.
24
25 146.  ON JUNE 29, 2008 HASH MADE TWO WRITTEN REQUEST OF
26 THE (S.U.S.P) WARDEN. HASH REQUESTED THAT THE (3) 602 APPEALS DESCRIBED
27 IN STATEMENT OF FACT #138 TO THIS COMPLAINT, BE RETURNED TO HIM.
28 HASH ALSO MADE A PUBLIC RECORDS ACT REQUEST ASKING THE (S.V.S.P)

55.

WARDEN TO PROVIDE HIM WITH VARIOUS REPORTS AND RECORDS
RELEVANT TO HIS JULY 26, 2005 STABBING INCIDENT AND OTHER
RECORDS RELEVANT TO THE SEPTEMBER 24, 2002 RIOT ON "B"
FACILITY AND THE INCIDENTS RELEVANT TO IT. SEE, EX.1-P, REQUEST
TO (S.V.S.P) WARDEN DATED JUNE 29, 2008.

## VI. EXHAUSTION OF LEGAL REMEDIES

147. HASH USED THE ADMINISTRATIVE GRIEVANCE PROCEDURE
AVAILABLE TO HIM TO TRY TO SOLVE THESE PROBLEMS. BY REFERENCE
HASH REALLEGES AND INCORPORATES PARAGRAPHS 100, 111, 119, 129, 131,
134, 141, 142, AND 143 AS EVIDENCE OF HIS MULTIBLE (CDC 602
APPEALS) WHEREIN HE PRESENTED THE FACTS RELATING TO THIS
COMPLAINT. THE RELIEF SOUGHT WAS DENIED.

## VII. FIRST CAUSE OF ACTION

Violation of HASH's EIGHTH AMENDMENT
RIGHT TO HAVE PERSONAL SAFETY

148. HASH REALLEGES AND INCORPORATES BY REFERENCE EACH ALLEGA-
TION OF PARAGRAPHS (1) THROUGH (147), INCLUSIVE, AS IF ALLEGED
HEREIN.

149. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
THE BELOW NAMED DEFENDANTS WERE IN A POSITION OF AUTHORITY
SUCH THAT THEY COULD HAVE ARRANGED, OR ORDERED TO BE ARRANGED
TO HAVE HASH HOUSED WITH A COMPATIBLE CELLMATE, BUT FAILED TO DO SO
PURSUANT TO OPERATIONAL PROCEDURE (42.5 CDC FORMS 1882-A ; AND 1882-B)

56.

1  THOSE DEFENDANTS ARE AS FOLLOWS. L.E SCRIBNER; D. TRAVERS;
2  A. HEDGPATH; GUS ZAVALA; P. MANDEVILLE; G.D. LEWIS; A. TUCKER;
3  G. PONDERS; T. VARIZ; S. GOMEZ; D.M. MANTEL; C. BLACKSTONE;
4  J.D. BENNETT; G. BIAGINNI; M. ROSS; F. WINN; A. WILLIAMS;
5  M. ROSS; N. WALKER; A. WILLIAMS; R. BURGH; FREDRICO RAMIREZ;
6  J. BURKE; D. PEREZ; T. MAYS; C. SICKELTON; J. HUGHES; AND
7  R.A. KESSLER. ADDITIONALLY, AS RESPONDEAT SUPERIORS, DEFENDANTS
8  MATTHEW CATES, M.S. EVANS, AND A. MELERO WERE GROSSLY NEGLI-
9  GENT IN MANAGING THEIR SUBORINATE PERSONNEL THAT WERE
10 ALLOWED TO DISREGARD OPERATIONAL PROCEDURE (42.5).

11

12 150.  BY THREATENING, AND, OR, ALLOWING HASH TO BE HOUSED WITH
13 EITHER A INCOMPATIBLE CELLMATE, AND, OR A KNOWN ENEMY, THE
14 ABOVE DEFENDANTS DENIED HASH HIS EIGHTH AMENDMENT RIGHT TO BE
15 FREE FROM CRUAL AND UNUSUAL PUNISHMENT IN THE FORM OF DE-
16 PRIVATION OF PERSONAL SAFETY, THUS DENYING A BASIC HUMAN
17 NEED GUARANTEED TO PRISONERS BY THE UNITED STATES CONSTITUTION.

18

19 151.  IN DOING AS ALLEGED HEREINABOVE, THOSE PARTICULAR DEFENDANTS
20 ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SAFETY, AND SUBJECTED
21 HIM TO UNNECESSARY AND WANTON INFLICTION OF PAIN, INCLUDING
22 PHYSICAL INJURY AND PSYCHOLOGICAL AND EMOTIONAL DISTRESS, IN
23 VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT.
24 SPECIFICALLY, THE ABOVE DEFENDANTS WERE DELIBERATELY INDIFFERENT
25 TO HASH'S RIGHT TO HAVE PERSONAL SAFETY WHEN THEY INTENTION-
26 ALLY, KNOWINGLY, AND MALICIOUSLY INFLICTED THE ABOVE HARM BY
27 THREATENING TO HOUSE HASH WITH A CELLMATE THAT POSED A SUBSTANTIAL
28 RISK TO HIS PERSONAL SAFETY, OR TOOK NO STEPS TO PREVENT IT.

57.

ON OR ABOUT JUNE OF 2004 HASH WAS HOUSED IN VIOLATION OF (S.V.S.P) OPERATIONAL PROCEDURE (42.5), WITH INMATE DIBBLE WHOM POSED A SUBSTANTIAL SAFETY RISK TO HASH. AS A RESULT, HASH SUFFERED PHYSICAL AND EMOTIONAL INJURIES WHEN HE WAS SEVERELY BATTERED IN A CELL FIGHT WITH INMATE DIBBLE. ON JULY 26, 2005, HASH WAS AGAIN HOUSED IN VIOLATION OF OPERA-TIONAL PROCEDURE (42.5) WITH A KNOWN ENEMY. AS A RESULT, HASH WAS STABBED APPROXIMATELY (30) TIMES BY HIS CELLMATE INMATE SIDLEY, CAUSING HASH TO BE FLOWN TO THE STANFORD HOSPITAL EMERGENCY TRAUMA CENTER WHERE HE UNDERWENT TWO SERIOUS OPERATIONS. EX. V, SPECIFICALLY, SEE PARAGRAPH (116) FOR LIABLE DEFENDANTS.

152. THESE PARTICULAR DEFENDANTS ACTED DESPICABLY, KNOWINGLY, WILFULLY, AND MALICIOUSLY, OR WITH RECKLESS OR CALLOUS DISREGARD FOR HASH'S FEDERALLY PROTECTED RIGHTS.

153. AS A DIRECT AND PROXIMATE RESULT OF THE DEFENDANTS ACTIONS HEREIN ALLEGED, HASH NOW SUFFERS, AND CONTINUES TO SUFFER FROM HIS PHYSICAL INJURIES AND DISABILITIES. HASH IS ENTITLED TO AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES FOR THE INJURIES AND DISABILITIES HE SUFFERED.

154. AS A FURTHER DIRECT AND PROXIMATE RESULT OF THE DEFENDANTS ACTIONS HEREIN ALLEGED, HASH NOW SUFFERS FROM SERIOUS MENTAL HEALTH PROBLEMS, AND CONTINUES TO SUFFER, SEVERE EMOTIONAL AND PSYCHOLOGICAL DISORDERS, INCLUDING BUT NOT LIMITED TO (P.T.S) POST TRAUMA STRESS. THUS HASH IS ENTITLED TO AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES FOR INJURIES SUFFERED.

58.

155. Hash is entitled to preminary injunctive relief, including, but not limited to an order requiring (C.D.C.R) officials to continue Hash's present and current single cell status in the same manner as it originally initiated by the (S.V.S.P) I.C.C committee on August 11, 2005. See, Ex. 1-Q, I.C.C chrono for single cell status.

156. Hash is still currently a patient in a (CCCMS) mental health program in which he's being prescribed psychotropic medications to treat his mental disorder(s). After being stabbed approximately (30) times in the close confines of a prison cell Hash is now hyper-vigilant and suffers from severe anxieties and an overwhelming sense of apprehension. As such, it is unsafe for Hash to be housed in a cell with another inmate, both for his own sake and for the sake of a potential cellmate for Hash. There is a very real possibility that Hash may sense imminent parle, whether it's real or imaginary, Hash may attack a cellmate to defend himself under such a belief, due to his mental illness. There is no adequate and quick remedy that would protect Hash in a timely manner should (C.D.C.R) officials remove Hash's present single cell status, and without the equitable relief sought Hash is susceptible to great and irreparable injury. The balance of hardships tips markedly towards Hash in that there would be little or no prejudice or harm to (C.D.C.R) defendants to continue his current single cell status, yet they just informed Hash on July 15, 2008 that they may discontinue Hash's single cell status. See, Ex. 1-S, 128-B notice.

59.

## VIII. SECOND CAUSE OF ACTION

### Violation of Hash's Eighth Amendment
### Right to be Free from Excessive Force

157. Hash realleges and incorporates by reference each of the relevant allegations of paragraphs (1) through (156), inclusively, as if alleged herein.

158. Defendant Fredrico Ramirez, a correctional officer assigned to S.U.S.P facility B-3 violated Hash's Eighth Amendment right to be free from crual and unusual punishment in the form of excessive force by his unnecessary and wanton infliction of pain, including physical injury and psychological and emotional distress, as herein alleged.

159. Specifically, Defendant F. Ramirez knowingly, maliciously and recklessly inflicted physical, emotional, and mental abuse upon Hash by repeatedly striking him in various areas of his body with his PR-24 sidehandle medal baton as Hash and his cellmate inmate Dibble were engaged in a matter of mutual combat on July 17, 2004. See, Ex. C, incident report.

160. Hash is informed and believes, and thereon alleges, that Defendant F. Ramirez struck Hash in the lower lumbar area of his spine with his medal baton, then fraudulently falsified Hash's disciplinary report by claiming that he only struck Hash two times with his medal baton, once in the left bicep, once in the left side of his buttocks.

60.

1  HASH FURTHER ALLEGES THAT HE WAS FULLY INCAPACITATED WITH
2  THE FIRST INITIAL BURST OF PEPPER SPRAY AND DEFENDANT F.
3  RAMIREZ UTILIZED EXCESSIVE FORCE BY EMPTYING HIS
4  ENTIRE CAN OF PEPPER SPRAY ON HASH WHILE STRIKING HIM
5  IN EXCESS OF (4) TIMES WITH HIS SIDE HANDLE MEDAL BATON.
6  HASH CONTENDS THAT AFTER THE FIRST BURST OF PEPPER SPRAY HE
7  IMMEDIATELY TRIED TO SEPARATE HIMSELF FROM INMATE DIDDLE SO
8  THAT HE COULD PRONE OUT ON THE FLOOR, BUT DEFENDANT F. RAMIREZ
9  CONTINUED TO PEPPER SPRAY HIM IN THE EYES AND UP AND DOWN
10 HIS BODY AND REPEATEDLY CLUBBED HIM WITH HIS MEDAL BATON
11 EVEN THOUGH BOTH HE AND INMATE DIBBLE HAD QUIT FIGHTING
12 AND FULLY SUBMITTED TO DEFENDANT F. RAMIREZ'S ORDERS.
13 DEFENDANT RAMIREZ'S INCIDENT REPORT INDICATES HE STRUCK
14 HASH IN THE LEFT BUTTOCK WITH HIS BATON, BUT L.V.N SERRATO,
15 WHOM HAD NO REASON OR MOTIVE TO HIDE THE TRUE FACTS,
16 INSPECTED HASH'S INJURIES SHORTLY AFTER THEY WERE INFLICTED,
17 THEN FILED HER MEDICAL INJURIES REPORT INDICATING HASH SUFFERED
18 A VISABLE INJURY TO HIS lower BACK. SEE, EXS. (C) AND (D),
19 OFFICER RAMIREZ'S REPORT, VERSES L.V.N SERRATO'S REPORT.
20
21 161. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
22 AS "RESPONDEAT SUPERIORS" DEFENDANTS MATTHEW CATE, M.S. EVANS,
23 L.E SCRIBNER, D. TRAVERS, A. HEDGPATH, C. NOLE, J. ALLISON, GUS
24 ZAVALA, P. MANDEVILLE, D.M. MANTEL, M. ROSS, C. BLACKSTONE, G.D.
25 LEWIS, F. WINN, AND A. MELERO WERE GROSSLY NEGLIGENT IN MANAGING
26 DEFENDANT F. RAMIREZ. THE DEFENDANTS HEREIN ALLEGED WERE IN
27 A POSITION OF AUTHORITY SUCH THAT THEY COULD HAVE ORDERED,
28 OR PERSONALLY REVIEWED L.V.N SERRATO'S REPORT, WHICH WAS

61.

1  INCLUDED WITH DEFENDANT RAMIREZ'S REPORT. HAD THEY OF FOLLOWED PROTOCOL
2  THEY COULD HAVE INVESTIGATED HASH'S INJURIES AND WHY
3  DEFENDANT RAMIREZ'S REPORT WAS IN CONFLICT WITH L.V.N
4  SERRATO'S REPORT, BUT THEY EITHER IGNORED OR DISREGARDED
5  THEIR POLICY AND REGULATIONS RELEVANT TO A PROPER REVIEW OF
6  RAMIREZ'S USE OF EXCESSIVE FORCE. IN SO DOING, THE DEFEN-
7  DANT'S ACTIONS REPUDIATED HASH'S CONSTITUTIONAL RIGHTS.
8  UNDER THE DOCTRINE OF SUPERVISORY LIABILITY THE DEFENDANTS
9  HEREIN ALLEGED ARE LIABLE FOR THE INJURIES INFLICTED UPON
10 HASH BY DEFENDANT F. RAMIREZ.

11
12 162. DEFENDANTS, AS ALLEGED HEREIN, SUBJECTED HASH TO PHYSICAL,
13 EMOTIONAL, AND MENTAL ABUSE UNDER CIRCUMSTANCES WHICH DID NOT
14 REQUIRE ANY PHYSICAL FORCE BECAUSE HASH WAS ATTEMPTING TO COMPLY
15 WITH DEFENDANT RAMIREZ'S ORDERS WITHOUT THE USE OF EXCES-
16 SIVE FORCE.

17
18 163. DEFENDANT'S ACTS, AS ALLEGED HEREIN, WERE DESPICABLE,
19 KNOWING, WILLFUL, MALICIOUS AND OR CARRIED OUT WITH RECKLESS
20 DISREGARD FOR HASH'S FEDERALLY PROTECTED RIGHTS.

21
22 164. AS A DIRECT AND PROXIMATE RESULT OF THE DEFENDANT'S ACTIONS
23 HEREIN ALLEGED, HASH SUFFERED, AND CONTINUES TO SUFFER FROM A
24 HERNIATED DISC IN THE LOWER LUMBAR AREA OF HIS BACK, IN SPITE
25 OF SURGICAL PROCEDURES PURSUED, HASH'S PAIN IS PERSISTENT.
26 HASH IS ENTITLED TO AN AWARD OF COMPENSATORY AND PUNITIVE
27 DAMAGES FOR THE INJURIES HE SUFFERED.

28
                              62.

165. As a further direct and proximate result of the defendants actions herein alleged, Hash suffered, and continues to suffer, severe emotional and psychological mental health disorders and distress. Hash is entitled to an award of compensatory and punitive damages for his injuries.

166. Hash realleges and incorporates by reference the relevant allegations of paragraphs 152-thru-156, inclusive, as if alleged herein.

## IX. THIRD CAUSE OF ACTION
### Violation of Hash's Eighth Amend Right to be Free From Deliberate Indifference to Serious Medical Needs

167. Hash realleges and incorporates by reference each relevant allegation of paragraphs 1-thru-166, inclusively, as if alleged herein.

168. Hash's medical condition, as described herein, constitutes a variety of serious medical needs that have resulted in significant injury due to the defendant's acts of deliberate indifference as described herein.

169. Hash is informed and believes, and thereon alleges, that in or about June and July of 2004, while S.V.S.P facility "B" was on lock down defendants Fredrico Ramirez, M. Rosa, T. Stevens

63.

S. THACKER, AND GANT, PERSONALLY OBSERUERED HASH WITH VISABLE INJURIES SUCH AS BLACK EYES, FACIAL CUTS, SCRAPES, REDNESS AND SWELLING. THE DEFENDANT'S ALLEGED HEREIN, IGNORED AND RECKLESSLY DISREGARDED HASH'S REQUEST FOR MEDICAL FORMS AND FOR MEDICAL ASSISTANCE EVEN THOUGH THEY COULD OF ARRANGED IT, OR ORDERED IT TO BE ARRANGED FOR HASH TO RECEIVE MEDICAL ASSISTANCE. SEE, EX. "B", DECLARATION BY John BENGAR.

170. HASH IS INFORMED AND THEREON ALLEGES, THAT AS "RESPONDEAT SUPERIORS" DEFENDANTS MATTHEW CATE, M.S. EVANS, L.E. SCRIBNER, D. TRAVERS, A. HEDGPATH, C. NOLE, J. ALLISON, GUS ZAVALA, P. MANDEVILLE D.M. MANTEL, M. ROSS, C. BLACKSTONE, CHARLES DUDLEY LEE, AND A. MELERO WERE GROSSLY NEGLIGENT IN MANAGING THE DEFENDANTS IN PARAGRAPH (169) ABOVE, WHOM WERE ALLOWED TO IGNORE AND RECKLESSLY DISREGARD ESTABLISHED RULES AND POLICIES. INSODOING, THE DEFENDANTS HEREIN ALLEGED, REPUDIATED HASH'S CONSTITUTIONAL RIGHT TO BE FREE FROM DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AS GUARANTEED BY THE EIGHTH AMENDMENT TO THE CONSTITUTION. THE DEFENDANTS AS ALLEGED HEREIN, ARE LIABLE FOR HASH'S INJURIES UNDER THE DOCTRINE OF RESPONDEAT SUPERIORS.

171. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (96) DR. PISTONE WAS DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS. DR. PISTONE REFUSED TO RUN ANY MEDICAL TEST TO DETERMINE WHY HASH WAS HAVING CEREBRAL HEAD SEIZURES OR WHY HASH HAD BLOOD IN HIS URINE AND STOOLS, AND DENIED HASH'S REQUEST FOR AN (M.R.I.) X-RAY TO TO DETERMINE THE CAUSE OF HIS HEAD, CHEST, AND BACK PAINS.

64.

172. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (127) DR. KUMAR ACKNOWLEDGED SHE FAILED TO REMOVE HASH'S STITCHES IN A TIMELY MANNER. SHE FURTHER FAILED TO REFER HASH TO A ORTHOPEDIC SPECIALIST AND FOR A MRI XRAY EXAMINATION, AND WITHOUT THESE SERIOUS MEDICAL NEEDS HASH'S INJURIES, SPECIFICALLY HIS LEFT WRIST INJURY HEALED IMPROPERLY AND WITHOUT PROPER AND TIMELY OBSERVATION BY A SPECIALIST. AS SUCH, HASH RECEIVED A PERMANENT DISABILITY CAUSING HIM TO LOSE FULL RANGE OF MOTION TO HIS LEFT WRIST.

173. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPHS (110), AND (131) DEFENDANTS DR. ROBERT BOWMAN, N. WALKER, AND J. KROSSA R.N. WERE ALL DELIBERATELY INDIFFERENT TO HASH'S SERIOUS MEDICAL NEEDS. DUE TO THE ACTIONS OF N. WALKER, AND DR. ROBERT BOWMAN, HASH WAS DEPRIVED OF HIS SERIOUS MEDICAL NEEDS, WAIST RESTRAINTS, MEDICAL SHOWER, SWEAT SHIRT OR THERMALS, AND A LOWER TIER CHRONO WERE ALL MEDICALLY DETERMINED NECESSITIES DUE TO, BUT NOT LIMITED TO, HASH'S BACK INJURY, BLOOD CIRCULATION PROBLEM / ROOMITOID DISORDER, AND BARRETTS DISEASE. THE LOSS OF THESE MEDICAL NECESSITIES CAUSED HASH TO UNNECESSARAILY SUFFER PAIN AND MENTAL DISTRESS. HASH WAS FURTHER DEPRIVED OF PROMPT AND ADEQUATE MEDICAL TREATMENT ON AUGUST 29, 2005 WHEN DR. BOWMAN AND J. KROSSA R.N. ALLOWED (62) DAYS TO ELAPSE, MAKING IT UNTIMELY TO ATTEMPT CORRECTIVE SURGERY ON HASH'S LEFT WRIST AND CHEST TUBE INCISION, THUS BOTH INJURIES HEALED IMPROPERLY.

174. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (130) NURSE DEIPS (SIC) WAS DELIBERATELY INDIFFERENT

65.

1  TO HASH'S SERIOUS MEDICAL NEEDS. HASH REPEATEDLY REQUESTED NURSE
2  DEIPS TO ARRANGE FOR A LICENSED DOCTOR TO EXAMINE HIS LEFT WRIST
3  AND CHEST TUBE INCISION BEFORE THE HEALING PROCESS ALLOWED THE
4  SKIN ON HIS WRIST TO IMPROPERLY HEAL ON TO THE TENDONS IN HIS WRIST
5  AND HIS CHEST TUBE INCISION HEALED IN SUCH A MANNER THAT IT WOULD
6  LEAVE AN UNNECESSARALLY LARGER THAN NORMAL SCAR. NURSE DEIPS
7  REFUSED ALL OF HASH'S REQUEST CAUSING HASH TO HAVE AN UNNECESS-
8  ARALLY LARGE SCAR ON HIS UPPER LEFT RIBCAGE AND A LOSS OF
9  FULL RANGE MOTION TO HIS LEFT WRIST DUE TO A LACK OF CORRECTIVE
10 SURGERY WITHIN A TIMELY PERIOD OF TIME. SEE, EX. 1-F, MEDICAL REPORT.
11
12 175. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS
13 STATED IN PARAGRAPHS (100) AND (101) DEFENDANTS L. WASHINGTON,
14 SMITH, WATSON, J. HICKS, AND DIAZ WERE RESPONSIBLE THE LOSS OF
15 HASH'S ARTIFICIAL MEDICAL APPLIANCES (MEDICAL MATTRESS AND PILLOW)
16 AND PRESCRIBED MEDICATIONS. THESE DEFENDANTS ACTED WITH DELIB-
17 ERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS BY CONFISCATING
18 HIS MEDICAL APPLIANCES IN VIOLATION OF ESTABLISHED POLICY AND CCR
19 RULE SECTIONS 3350 (b)(1) AND 3358 (a)(b). HASH SUFFERS FROM BARRETTS
20 GASTRO-ESOPHAGEAL DISEASE AND A BACK INJURY AND WITHOUT THOSE
21 MEDICAL NECESSITIES HE SUFFERED PHYSICAL PAIN AND EMOTIONAL DISTRESS
22
23 176. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
24 AS STATED IN PARAGRAPHS (100) AND (101) DEFENDANTS L. WRIGHT, J.
25 ALLISON, L.E. SCRIBNER, G. BIAGGINI, JACK BATCHELOR, AND N. GRANNIS
26 ALL ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL
27 NEEDS BY DENYING HIS 602 APPEALS, IN WHICH HASH REQUESTED
28 THAT HIS MEDICAL PRESCRIPTION AND APPLIANCES BE RETURNED. SEE, EX. H, APPEAL

66.

177.  HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (114) DEFENDANTS J. IPPOLITO, AND G. BIAGGINI BOTH ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS BY CONFISCATING AND DEPRIVING HASH OF HIS MEDICAL PRESCRIPTIONS AND MEDICAL PILLOW CAUSING HASH TO UNNECESSARAILY SUFFER PHYSICAL PAIN AND EMOTIONAL DISTRESS. SEE, EX. Q ,(MCS) NOTICE.

178.  HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (119) DEFENDANTS T. VARIZ AND S. GOMEZ BOTH ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. THE DEFENDANTS RECKLESSLY DISREGARDED HASH'S CDC 602 APPEAL DATED JULY 22, 2005 IN WHICH HASH MADE IT APPARENT THAT HE POSSESSED A MEDICAL CHRONO REQUIRING HIM TO BE HOUSED IN A BOTTOM TIER CELL, DUE TO HIS BACK INJURY. AS SUCH, HASH REMAINED IN A UPPER TIER CELL WHERE HE WAS STABBED APPROXIMATELY (30) TIMES ON JULY 26, 2005 CAUSING HASH TO SUFFER PHYSICAL PAIN AND EMOTIONAL DISTRESS AND MENTAL HEALTH DISORDERS. SEE, EXS. "S" AND "I-J," 602 APPEAL SCREENED OUT/MENTAL HEALTH PROGRAM.

179.  HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (122) DEFENDANT VINCENT R. HENTZ ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. ON JULY 31, 2005, AFTER DR. HENTZ AGREED AND CONSENTED TO PERFORM A SURGICAL OPERATION ON HASH'S LEFT WRIST, DR. HENTZ ALLOWED HASH'S WRIST SURGERY TO BE PERFORMED BY A DOCTOR AND MEDICAL STUDENTS THAT HASH HAD NEVER MET OR GIVEN HIS CONSENT TO PRIOR TO HIS WRIST OPERATION. HASH'S LEFT WRIST

67.

NEVER HEALED PROPERLY AND TO THIS PRESENT DAY HASH'S WRIST SURGERY IS STILL INFLAMED AND HAS CAUSED HASH TO HAVE A PERMANENT DISABILITY. SEE, EX."X", OPERATION CONSENT AGREEMENT.

180. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPHS (122) AND (123) DEFENDANT AMY LADD ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S MEDICAL NEEDS. AFTER FIRST BEING ASSURED THAT DR. HENTZ WOULD PERFORM HASH'S WRIST SURGERY, HASH AWOKE AFTER THE SURGERY AND DISCOVERED HIS WRIST SURGERY HAD BEEN PERFORMED BY DR. AMY LADD AND DOE DEFENDANT MEDICAL STUDENTS. DR. LADD WAS AWARE THAT HASH WAS SUPPOSED TO BE RETURNED TO THE STANFORD HAND CLINIC WITHIN ONE MONTH, BUT ALLOWED OVER TWO MONTHS TO ELAPSE WITHOUT PURSUING ANY EFFORTS TO HAVE HASH RETURNED TO THE STANFORD HAND CLINIC FOR PHYSICAL THERAPY AND FOLLOW UP TREATMENT ON HIS WRIST. THE DELAY CAUSED HASH'S WRIST TO HEAL WITHOUT NEEDED CORRECTIVE SURGERY AND HASH LOST FULL RANGE MOTION TO HIS LEFT WRIST AND IS NOW LEFT WITH A PERMANENT DISABILITY. HASH SUFFERS, AND WILL CONTINUE TO SUFFER PHYSICAL PAIN AND EMOTIONAL DISTRESS, DUE TO THIS OPERATION THAT WAS PERFORMED WITHOUT HIS CONSENT. SEE, EX."Y", PROCEDURE CHECKLIST AND OPERATION REPORT.

181. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (125) DEFENDANTS D. SELLERS AND S. PLAZA ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. SPECIFICALLY, THEY FORCED HASH TO SLEEP IN A HOLDING CELL FOR A DAY AND A NIGHT ON A FREEZING COLD UNSANITARY CEMENT FLOOR CAUSING HIM TO BECOME SERIOUSLY ILL FOR TWO WEEKS. SEE, EX. I-A.

68.

182. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPHS (128) AND (129) DEFENDANT R.A. KESSLER ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. SPECIFICALLY, DEFENDANT KESSLER RECKLESSLY DISREGARDED HASH'S 602 APPEAL REQUEST TO BE REHOUSED ON A BOTTOM TIER WITH TWO CLEAN MATTRESSES, AS WAS REQUIRED BY HASH'S MEDICAL CHRONO. DESPITE HASH'S SERIOUS MEDICAL NEEDS HE WAS FORCED TO REMAIN HOUSED ON A UPPER TIER ON A SINGLE MATTRESS THAT WAS MISSING IT'S CANVASS COVERING AND WAS SOAKED WITH SOMEONE ELSES BLOOD, HAIR, AND UNKNOWN HAZARDOUS WASTE. HASH SUFFERED PHYSICAL PAIN AND EMOTIONAL DISTRESS. SEE, EX. 1-C, CHRONO/602 APPEAL

183. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (131) DEFENDANTS CHARLES DUDLEY LEE, J.G. ARCEO, AND N. GRANNIS ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. DEFENDANTS AS HEREIN ALLEGED, REFUSED HASH'S REQUEST FOR EMERGENCY APPEAL PROCESSING, DENIED HIM TIMELY FOLLOW-UP MEDICAL CARE AND WRIST THERAPY, REFUSED TO REPLACE HASH'S BROKEN DENTAL VENEERS, AND DENIED HASH'S REQUEST FOR AN EVALUATION FROM AN ORTHOPEDIC SURGEON, AND REFUSED HIS REQUEST FOR AN M.R.I X-RAY EXAMINATION. HASH SUFFERED PHYSICAL PAIN, EMOTIONAL DISTRESS AND WAS LEFT WITH SERIOUS DISABILITES TO HIS BACK AND LEFT WRIST.

184. HASH IS INFORM AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (141) DEFENDANTS ARAYA, SMILOVITZ, AND DOE DEFENDANT HEALTH CARE COMMITTEE MEMBERS ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. DEFENDANTS

69.

ARAYA AND SMILOVITZ DENIED HASH'S REQUEST FOR A (M.R.I) X-RAY EXAMINATION AND FAILED TO PROVIDE TIMELY AND ADEQUATE MEDICAL CARE FOR HASH'S LEFT WRIST AND BACK INJURIES. DOE DEFENDANT HEALTH CARE COMMITTEE MEMBERS FAILED TO PROVIDE HASH WITH SUN SCREEN lOTION, AS DID DEFENDANTS ARAYA AND SMILOVITZ EVEN THOUGH HASH INFORMED THEM THAT IT HAD NOT BE PROVIDED TO HIM AS PRESCRIBED. AS SUCH, HASH SUFFERED SEVERAL SERIOUS SUN BURNS. HASH SUFFERED PHYSICAL PAIN AND EMOTIONAL DISTRESS. SEE, EX. 1-K, APPEAL DATED 10-13-06.

185. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (142) DEFENDANTS DR. FAECHER, DR. PERRY, R. MEYERS, C. HALL, AND N. GRANNIS ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. HASH'S REQUEST FOR A MORE EFFECTIVE PAIN MEDICATION WAS DENIED AND HASH'S REQUEST FOR AN (M.R.I) X-RAY EXAMINATION WAS DENIED, DESPITE THE FACT THAT HASH HAD SERIOUS MEDICAL DEFECTS IN HIS BACK THAT WERE lATER ON DISCOVERED BY WAY OF A (MRI) X-RAY EXAMINATION. SEE, EX. 1-L, APPEAL DATED 4-05-07; EX. 1-O, (MRI) REPORT.

186. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (143) DEFENDANTS DR. GRIFFIN, R. MEYERS, V. O'SHAUGHNESSY, AND N. GRANNIS ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS. THE ABOVE DEFENDANTS DENIED HASH'S REQUEST FOR A (MRI) X-RAY EXAMINATION AND HASH WAS FORCED TO SUFFER PHYSICAL PAIN AND EMOTIONAL DISTRESS WITHOUT AN ADEQUATE MEDICAL EXAMINATION TO DETERMINE THE CAUSE OF HIS PAIN AND SUFFERING. THE FOLLOWING YEAR IT WAS DETERMINED BY WAY OF AN (MRI) THAT HASH HAD SERIOUS PROBLEMS WITH HIS SPINE. EX. 1-M; 1-O.

70.

187. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS "RESPONDEAT SUPERIORS" DEFENDANTS MATTHEW CATE, M.S. EVANS, L.E. SCRIBNER, D. TRAVERS, A. HEDGPATH, C. NOLE, J. ALLISON, AND CHARLES DUDLEY LEE WERE GROSSLY NEGLIGENT IN MANAGING THEIR SUBORDINATE MEDICAL PERSONNEL AT S.V.S.P AS ALLEGED HEREIN THIS COMPLAINT. WITH REGARD TO DEFENDANTS MATTHEW CATE, JOHN MARSCHAL, AND R. MEYERS THEY TOO WERE GROSSLY NEGLIGENT IN MANAGING THEIR SUBORDINATE MEDICAL PERSONNEL AT C.M.C, AS ALLEGED HEREIN THIS COMPLAINT.

188. HASH IS INFORMED AND BELIEVES, THAT THE DEFENDANTS, AS HEREIN ALLEGED, VIOLATED 42 U.S.C SEC. 1983, BECAUSE THEIR CONDUCT CONSTITUTED DELIBERATE INDIFFERENCE TO HASH'S SERIOUS MEDICAL NEEDS IN VIOLATION OF HIS EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUAL AND UNUSUAL PUNISHMENT.

189. AS A PROXIMATE RESULT OF THE DEFENDANTS' CONDUCT, AS HEREIN ALLEGED, HASH HAS SUFFERED AND CONTINUES TO SUFFER GENERAL DAMAGES IN THE FORM OF SEVERE PAIN AND EMOTIONAL DISTRESS. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT HE WILL CONTINUE TO SUFFER SUCH DAMAGES IN THE FUTURE.

190. AS A FURTHER PROXIMATE RESULT OF THE DEFENDANTS' CONDUCT, AS HEREIN ALLEGED, HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT HE WILL SUFFER SPECIAL DAMAGES IN THE FUTURE IN THE FORM OF MEDICAL EXPENSES FOR TREATMENT OF HIS CONDITION, LOSS OF INCOME, AND LOSS OF ABILITY TO PARTICIPATE IN ATHLETIC ACTIVITIES.

71.

A SHOWER. DEFENDANT BURKE ACTED WITH DELIBERATE INDIFFERENCE TO HASH'S RIGHT TO BE FREE FROM RETALIATION BY INTENTIONALLY, AND MALICIOUSLY THREATENING TO ENFORCE DISCIPLINARY MEASURES AGAINST HASH AND BY THREATENING TO HOUSE HASH WITH A KNOWN ENEMY. INSODOING, DEFENDANT BURKE SUBJECTED HASH TO UNNECESSARY AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS. EX. F, REPORT.

196. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (99), DEFENDANTS L. WASHINGTON, SMITH, AND WATSON RETALIATED WHEN HASH THREATENED TO FILE A 602 APPEAL TO PROTEST AND CHALLENGE THE ALLEGATION THAT HE COMMITTED A BATTERY AGAINST DEFENDANT WASHINGTON. INSODOING, THE DEFENDANTS, AS ALLEGED HEREIN, CONDUCTED A PUNITIVE AND RETALITORY CELL SEARCH OUT OF HASH'S VISION AND WHILE HASH WAS HELD IN A ONE MAN CAGE FOR AN UNREASONABLE AMOUNT OF TIME WITHOUT WATER. THE DEFENDANTS ACTED INTENTIONALLY, WILLFULLY, AND MALICIOUSLY BY REMOVING HASH'S BEDDING, PRESCRIBED MEDICATIONS, AND MEDICALLY ISSUED APPLIANCES. THE DEFENDANTS, AS ALLEGED HEREIN, RECKLESSLY SUBJECTED HASH TO UNNECESSARY PHYSICAL PAIN AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS. SEE, EX. G, RVR VIOLATION REPORT.

197. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (102) DEFENDANT D. PEREZ RETALIATED AGAINST HASH FOR FILING A STAFF COMPLAINT (602 APPEAL) RELEVANT TO DEFENDANT PEREZ'S FAMILY MEMBER, AND FOR THE ALLEGED BATTERY THAT HASH COMMITTED AGAINST DEFENDANT WASHINGTON. DEFENDANT PEREZ THREATENED TO HOUSE HASH WITH A KNOWN ENEMY AND WHEN HASH REFUSED TO BE HOUSED WITH AN ENEMY DEFENDANT PEREZ ISSUED HASH A DISCIPLINARY

73.

WRITE UP. IN SO DOING, DEFENDANT PEREZ ACTED INTENTIONALLY, WILFULLY, MALICIOUSLY, AND UNNECESSARIALLY SUBJECTED HASH TO WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS. EX. I, (RVR) REPORT.

198. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (105) DEFENDANT C. SICKELTON RETALIATED AGAINST HASH BECAUSE OF THE ALLEGED BATTERY THAT HASH COMMITTED AGAINST DEFENDANT WASHINGTON. DEFENDANT SICKELTON INTENTIONALLY, WILFULLY, AND MALICIOUSLY ATTEMPTED TO INFLICT PHYSICAL HARM AND INJURY TO HASH AND SUBJECTED HASH TO UNNECESSARY AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS BY HOUSING HIM A POTENTIAL ENEMY.

199. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPHS (106) AND (109) DEFENDANT T. MAYS RETALIATED AGAINST HASH FOR HIS REFUSAL TO ACCEPT A CELLMATE FROM "C" OR "D" YARD. DEFENDANT MAYS INTENTIONALLY, WILFULLY, AND MALICIOUSLY ATTEMPTED TO INFLICT PHYSICAL HARM AND INJURY TO HASH AND SUBJECTED HASH TO UNNECESSARY AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS. DEFENDANT MAYS RETALIATED BY ISSUING HASH A DISCIPLINARY WRITE UP FOR REFUSING TO ACCEPT AN ENEMY CELLMATE. SEE, EX. L, RVR REPORT.

200. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (109) DEFENDANT R.A. KESSLER RETALIATED AGAINST HASH FOR HIS REFUSALS TO ACCEPT A CELLMATE FROM "C" OR "D" YARD. DEFENDANT KESSLER INTENTIONALLY, WILFULLY, AND MALICIOUSLY REHOUSED HASH IN A FACILITY THAT HAD MISERABLE AND

74.

1  MORE HARSH LIVING CONDITIONS THAN HASH'S PRESENT FACILITY
2  HAD. DEFENDANT KESSLER INTENTIONALLY SUBJECTED HASH TO
3  PHYSICAL PAIN AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS.

5  201. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS
6  STATED IN PARAGRAPH (114) DEFENDANTS J. IPPOLITO AND G. BIAGINNI
7  RETALIATED AGAINST HASH BECAUSE OF HIS PRIOR ALLEGATION OF BATTERY
8  AGAINST DEFENDANT L. WASHINGTON, AND FOR HIS REFUSAL TO ACCEPT
9  A CELLMATE FROM "C" OR "D" YARD. DEFENDANTS IPPOLITO AND BIAGINNI
10 INTENTIONALLY, WILFULLY, AND MALICIOUSLY INFLICTED PHYSICAL PAIN ON HASH
11 AND SUBJECTED HIM TO UNNECESSARY AND WANTON PSYCHOLOGICAL
12 AND EMOTIONAL DISTRESS. SEE, EX. Q, (MCS) NOTICE.

14 202. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
15 AS STATED IN PARAGRAPH (116), DEFENDANTS D. TRAVERS, G.D. LEWIS,
16 AND F. WINN RETALIATED AGAINST HASH BECAUSE OF HIS PRIOR
17 ALLEGATION OF BATTERY AGAINST DEFENDANT L. WASHINGTON. THE
18 DEFENDANTS AS HEREIN ALLEGED, INTENTIONALLY, WILFULLY, AND MALICIOUSLY
19 INFLICTED PHYSICAL PAIN AND INJURY TO HASH AND SUBJECTED HIM
20 TO UNNECESSARY AND WANTON PSYCHOLOGICAL AND EMOTIONAL DISTRESS.
21 THE DEFENDANTS DID THIS BY HOUSING HASH WITH A KNOWN ENEMY
22 THAT STABBED HASH APPROXIMATELY (30) SOME TIMES WITH A KNIFE
23 NEARLY KILLING HASH AND LEAVING HIM WITH PERMANENT PHYSICAL
24 AND MENTAL DISABILITIES. SEE, EX. S, AND V-THROUGH -Z.

26 203. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS
27 "RESPONDEAT SUPERIORS" DEFENDANTS MATTHEW CATE, M.S. EVANS, L.E.
28 SCRIBNER, D. TRAVERS, A. HEDGPATH, C. NOLE, G.D. LEWIS, F. WINN, A. TUCKER

75.

J. ALLISON, S. PLAZA, G. BIAGINNI, A. WILLIAMS, N. WALKER, J. HUGHES, B. CASTORENA, R. BURGH, J. IPPOLITO, L. WASHINGTON, L. WRIGHT, J.D. BENNETT, G. PONDERS, AND R.A. KESSLER WERE GROSSLY NEGLIGENT IN MANAGING THEIR SUBORDINATE PERSONNEL, AS ALLEGED HEREIN. INSODOING, THE DEFENDANTS ALLEGED HEREIN, REPUDIATED HASH'S CONSTI-TUTIONAL RIGHT TO BE FREE FROM RETALIATION BY IGNORING AND RECKLESSLY DISREGARDING ESTABLISHED RULES AND POLICIES. AS SUCH, THE DEFENDANTS ALLEGED HEREIN ARE LIABLE FOR DAMAGES UNDER THE DOCTRINE OF "RESPONDEAT SUPERIORS".

204. HASH REALLEGES AND INCORPORATES BY REFERENCE PARAGRAPHS 152-THROUGH-156, INCLUSIVELY, AS IF ALLEGED HEREIN.

## XI. FIFTH CAUSE OF ACTION

### Violation of HASH's First, Fifth, AND Fourteenth Amendment Rights To Have Meaningful Access To The Courts

205. HASH REALLEGES AND INCORPORATES BY REFERENCE EACH RELEVANT ALLEGATION IN PARAGRAPHS (1) THROUGH (204), INCLUSIVELY, AS IF ALLEGED HEREIN.

206. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPHS (99), (100), (101), (104) AND (114) DEFENDANTS T. VARIZ, J. HICKS, JOHN LUMAN III, S. GOMEZ, L. WASHINGTON, SMITH, WATSON, J. IPPOLITO, G. BIAGINNI, K.L. ALLEN, N. GRANNIS, AND A. HEDGPATH VIOLATED HASH'S FIRST, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS TO HAVE MEANINGFUL ACCESS TO THE COURTS, AS ALSO DID DEFENDANT L.E. SCRIBNER.

207. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS

76.

1   STATED IN PARAGRAPHS (99),(100), AND (101) AS A RESULT OF DEFENDANTS

2   L. WASHINGTON, SMITH, AND WATSON HASH'S CELL WAS SUBJECTED TO A

3   PUNITIVE AND RETALITORY CELL SEARCH, INSODOING, THE DEFENDANTS, AS

4   ALLEGED, CONFISCATED HASH'S LEGAL PROPERTY, WHICH INCLUDED CONFIDENTIAL

5   AND PRIVILEGED ATTORNEY/CLINT MATERIALS, AS WELL AS COURT DOCUMENTS,

6   COURT MOTIONS, TRANSCRIPTS, AND PLEADINGS NEEDED TO PURSUE HIS ON GOING

7   PRO-PER HABEAS CORPUS PROCEEDINGS. THE DEFENDANTS, AS ALLEGED,

8   NEVER RETURNED HASH'S LEGAL PROPERTY TO HIM, THUS DEPRIVING HIM

9   OF CRUCIAL LEGAL DOCUMENTS WITH WHICH HASH NEEDED TO CONTINUE

10   HIS PRO-PER HABEAS CORPUS COURT PROCEEDINGS. EX. G, REPORT.

11

12   208. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED

13   IN PARAGRAPH (100) DEFENDANTS J. HICKS, SMITH, DIAZ, YONOUCE, AND

14   MONTANA WERE GROSSLY NEGLIGENT IN THEIR DUTIES TO PROPERLY

15   INVENTORY AND ITEMIZE HASH'S LEGAL PROPERTY ON CDC 1083 FORMS.

16   THEREAFTER, HASH'S LEGAL PROPERTY DISAPPEARED AND WAS NEVER

17   RETURNED TO HASH CAUSING HIM TO BE DEPRIVED OF CRUCIAL

18   LEGAL DOCUMENTS WITH WHICH HASH NEEDED TO CONTINUE HIS

19   PRO-PER HABEAS CORPUS COURT PROCEEDINGS. SEE, EX. H, CDC 1083 FORMS

20

21   209. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS

22   STATED IN PARAGRAPH (101) DEFENDANTS L. WASHINGTON AND G. BIAGGINI

23   WERE RESPONSIBLE FOR DIRECTING THEIR SUBORDINATE PERSONNEL TO

24   CONFISCATE AND REMOVE HASH'S LEGAL DOCUMENTS FROM HIS CELL

25   SO THAT HASH COULD BE PUT ON (C.M.S) CELL MANAGEMENT STATUS.

26   THEREAFTER, BOTH DEFENDANTS REFUSED TO RETURN HASH'S LEGAL

27   DOCUMENTS TO HIM CAUSING HASH TO BE UNABLE TO CONTINUE

28   HIS PRO-PER HABEAS CORPUS COURT PROCEEDINGS.

77.

210. HASH is INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (100) DEFENDANTS L.E. SCRIBNER, J. ALLISON, L. WRIGHT, L. WASHINGTON, JACK BATCHELOR, SALAO, AND N. GRANNIS WERE ALL AWARE OF HASH'S APPEAL REQUEST FOR THE RETURN OF HIS LEGAL DOCUMENTS, BUT THEY EITHER TOOK NO ACTION TO RETURNED THEM TO HASH OR DENIED HIS REQUEST. IN SO DOING, THE DEFENDANTS AS ALLEGED, CAUSED HASH TO BE UNABLE TO CONTINUE HIS PRO-PER HABEAS CORPUS COURT PROCEEDINGS.

211. HASH is INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (104) HASH SUFFERED ACTUAL PROCEDURAL INJURY BECAUSE THE CONFISCATION AND LOSS OF HIS CRUCIAL LEGAL DOCUMENTS COULD NOT BE RECONSTRUCTED OR RETURNED TO HIM CAUSING HIM TO MISS HIS (90) DAY FILING DEADLINE FOR HIS WRIT OF CERTIORARI TO THE U.S. SUPREME COURT. EACH OF THE DEFENDANTS LISTED IN PARAGRAPH (206) ARE LIABLE FOR VIOLATING HASH'S ACCESS TO THE COURTS. SEE, EX. K, SUPREME COURT LETTER.

212. HASH is INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (114) DEFENDANTS J. IPPOLITO AND G. BIAGINNI WERE RESPONSIBLE FOR DIRECTING THEIR SUBORDINATE PERSONNEL TO CONFISCATE AND REMOVE HASH'S LEGAL MAIL AND DOCUMENTS FROM HIS CELL SO THAT HASH COULD BE PUT ON (CMS) CELL MANAGEMENT STATUS. THEREAFTER, BOTH DEFENDANTS REFUSED TO RETURN HASH'S LEGAL MAIL AND LEGAL DOCUMENTS TO HIM CAUSING HASH TO BE UNABLE TO CONTINUE HIS PRO-PER HABEAS CORPUS COURT PROCEEDINGS. SEE, EX. Q, (MSC) NOTICE.

78.

213. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (129) DEFENDANT R.A. KESSLER THREATEN TO RETALIATE AGAINST HASH FOR HIS USE OF THE PRISON APPEAL SYSTEM. SPECIFICALLY, DEFENDANT KESSLER THREATENED TO HAVE HASH MOVED TO S.V.S.P FACILITY (D-9) WHERE LIVING CONDITIONS WERE FAR MORE HARSH THAN HASH'S LIVING CONDITIONS WERE AT THAT TIME, AND WHERE HASH WOULD BE SUBJECTED TO STRICKER RULES. HASH WAS FORCED TO ABANDON HIS 602 APPEAL DATED 8-17-2005 FOR FEAR OF RETALIATION, CAUSING HASH TO BE UNABLE TO EXHAUST HIS APPEAL AND PURSUE IT INTO A COURT OF LAW.

214. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (134) DEFENDANTS A. HEDGPATH, J.W. LUMAN III, T. VARIZ, S. GOMEZ, K.L. ALLEN, AND N. GRANNIS VIOLATED HASH'S RIGHT TO MEANINGFUL ACCESS TO THE COURTS. SPECIFICALLY, T. VARIZ, S. GOMEZ, AND J.W. LUMAN III EITHER SCREENED OUT AND REFUSED TO PROCESS HASH'S 602 APPEALS WITHOUT REASONABLE CAUSE, OR IN MANY INSTANCES THEY EITHER LOST OR DISGARDED HASH'S 602 APPEALS CAUSING HASH TO BE UNABLE TO EXHAUST HIS APPEALS SO THAT HE COULD SUBMIT THEM TO THE COURTS FOR RELIEF. AS TO DEFENDANTS HEDGPATH, ALLEN, AND GRANNIS THEY TOO EITHER SCREEN OUT HASH'S 602 APPEALS OR LOSS THEM AND NEVER RETURNED THEM TO HASH CAUSING HIM TO BE UNABLE TO PURSUE THEM IN THE COURTS.

215. DEFENDANTS AS ALLEGED IN PARAGRAPH (206) ACTED KNOWINGLY, WILFULLY, MALICIOUSLY, OR WITH RECKLESS OR CALLOUS DISREGARD FOR HASH'S FEDERALLY PROTECTED RIGHTS TO HAVE ACCESS TO THE COURTS.

79.

216. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS "RESPONDEAT SUPERIORS," DEFENDANTS MATTHEW CATE, M.S. EVANS, L.E. SCRIBNER, D. TRAVERS, A. HEDGPATH, C. NOLE, J. ALLISON, JOHN W. LUMAN III, T. VARIZ, S. GOMEZ, G. BIAGINNI, G.D. LEWIS, S. PLAZA, J. HUGHES, F. WINN, A. WILLIAMS, N. WALKER, R. BURGH, B. CASTORENA, L. WASHINGTON, L. WRIGHT, J. IPPOLITO, AND R.A. KESSLER WERE GROSSLY NEGLIGENT IN MANAGING THEIR SUBORDINATE PERSONNEL, AS HEREIN ALLEGED. SAID DEFENDANTS WERE IN A POSITION OF AUTHORITY SUCH THAT THEY COULD HAVE PREVENTED THEIR SUBORDINATE PERSONNEL FROM VIOLATING HASH'S RIGHT TO HAVE MEANINGFUL ACCESS TO THE COURTS, BUT RECKLESSLY DISREGARDED THEIR OWN POLICIES AND RULES BY FAILING TO PREVENT THIS HARM. IN SODOING, THE DEFENDANTS, AS ALLEGED, REPUDIATED HASH'S CONSTITUTIONAL RIGHTS. UNDER THE DOCTRINE OF SUPERVISORY LIABILITY THE DEFENDANTS, AS ALLEGED HEREIN, ARE LIABLE TO HASH FOR DAMAGES INCURRED.

217. AS A DIRECT AND PROXIMATE RESULT OF ALL THE DEFENDANTS ACTIONS HEREIN ALLEGED, HASH SUFFERED PROCEDURAL INJURY IN THE COURTS AND HAS NOW BEEN PREVENTED FROM SEEKING CERT-IORARI RELIEF IN THE U.S. SUPREME COURT. DEFENDANTS FURTHER PREVENTED HASH FROM OBTAINING CRUCIAL RECORDS AND DOCUMENTS NEEDED TO STRENGTHEN AND SUPPORT HIS CLAIMS AS ALLEGED IN THIS COMPLAINT. AS SUCH, HASH IS ENTITLED TO AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES FOR HIS PROCEDURAL INJURIES, BECAUSE HE HAS SUFFERED, AND WILL CONTINUE TO SUFFER SEVERE EMOTIONAL AND PSYCHOLOGICAL DISTRESS WITHOUT AN ADEQUATE REMEDY AT LAW TO SEEK RELIEF FROM HIS LIFE SENTENCE.

80.

## XII.  SIXTH CAUSE OF ACTION
Violation of Hash's Fourteenth Amendment
To Have Due Process of Law.

218. Hash realleges and incorporates by reference each relevant allegation of paragraphs (1)-thru-(217), inclusively, as if alleged herein.

219. Hash is informed and believes, and thereon alleges, that as stated in paragraph (97) Defendant P. Mandeville and Doe Defendant I.C.C committee members violated Hash's due process of law rights by failing to provide him with a (72) hour notice of his I.C.C hearing. The defendants further have a consistant custom and policy of including standard boiler plate language in their 128G chrono committee findings. Specifically, like all I.C.C 128G chronos, each of Hash's I.C.C committee chronos FALSELY states that he was given a (72) hour notice of the hearing, that Hash stated he was in good health and was willing to proceed with the hearing, that the committee throughly discussed his classification issues with him, and that Hash was informed of his appeal rights, and that Hash understood and agreed with the committee's actions. The defendants, as alleged herein, further violated Hash's Fourteenth Amendment right to due process of law by denying his request for witnesses and for a "staff assistant," which Hash had a right to because of his low (2.9) educational grade point level.

220. Hash is informed and believes, and thereon alleges, that as stated in paragraph (101) Defendants L. Washington, and G.

81.

1 BIAGINNI EXERCISED DISCIPLINARY MEASURES AGAINST HASH WITHOUT
2 DUE PROCESS OF LAW. SPECIFICALLY, ON OCTOBER 1, 2004 DEFENDANTS
3 L. WASHINGTON AND G. BIAGINNI PUT HASH ON (CMS) CELL MANAGE-
4 MENT STATUS, MEANING HASH'S CELL WAS STRIPPED OF ALL STATE
5 AND PERSONAL PROPERTY, WITH THE EXCEPTION OF (1) SHEET; (1) PAIR OF
6 BOXER SHORTS; (1) TOOTH BRUSH; (1) SPOON; AND (1) DAILY ISSUE OF TOILET PAPER.
7
8 221. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS
9 STATED IN PARAGRAPH (103) DEFENDANTS L.E. SCRIBNER, A. TUCKER,
10 AND A. WILLIAMS VIOLATED HASH'S DUE PROCESS OF LAW RIGHTS BY
11 FAILING TO PROVIDE HIM WITH A (72) HOUR NOTICE OF HIS I.C.C HEARING.
12 THE DEFENDANTS, AS ALLEGED, FURTHER HAVE A CONSISTANT CUSTOM
13 POLICY OF INCLUDING STANDARD BOILER PLATE LANGUAGE IN THEIR 128G
14 CHRONO COMMITTEE FINDINGS. SPECIFICALLY, LIKE ALL I.C.C (128G CHRONOS)
15 EACH OF HASH'S I.C.C COMMITTEE CHRONOS FALSELY STATES THAT HE
16 WAS GIVEN A (72) HOUR NOTICE OF THE HEARING, THAT HASH STATED HE
17 WAS IN GOOD HEALTH AND WAS WILLING TO PROCEED WITH THE
18 HEARING. THAT HE WAS INFORMED OF HIS APPEAL RIGHTS, AND THAT
19 HE UNDERSTOOD AND AGREED WITH THE COMMITTEE'S ACTIONS.
20 THE DEFENDANTS FURTHER VIOLATED HASH'S FOURTEENTH AMENDMENT
21 RIGHTS TO DUE PROCESS OF LAW BY DENYING HIS REQUEST FOR
22 WITNESSES AND FOR A "STAFF ASSISTANT," WHICH HASH HAD A
23 RIGHT TO BASED ON HASH'S EDUCATIONAL GRADE POINT LEVEL OF (2.9). EX. J.
24
25 222. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
26 AS STATED IN PARAGRAPH (105) DEFENDANT C. SICKELTON VIO-
27 LATED HASH'S FOURTEENTH AMENDMENT DUE PROCESS OF LAW RIGHTS
28 BY REFUSING TO PERFORM HIS DUTIES AS HIS "INVESTIGATIVE EMPLOYEE,"

82.

1  Specifically, Defendant Sickelton refused to ask the questions
2  of Hash's witnesses that Hash was requesting answers to. As
3  evidenced by Sickelton's investigative employee report Sickelton
4  simply marked off over 90% of Hash's questions by indicating
5  they were "not relevant concerning the circumstances of the RVR".
6  Insodoing, Defendant Sickelton deprived Hash of a fair defense
7  and because of these fundamental deficiencies, Hash's disciplinary
8  was postoned six times, causing over one year to elapse before
9  Hash's hearing took place. See, Ex. G, Sickelton's investigative report.

10

11  223. Hash is informed and believes, and thereon alleges, that as
12  stated in paragraph (113) defendants N. Walker and J.D.
13  Bennett violated Hash's Fourteenth amendment due process of
14  law rights by depriving Hash of an AD/SEG lock up hearing.
15  Insodoing, Hash was deprived of witnesses, a "staff assistant"
16  and an opportunity to present his position to the ICC committee
17  whom could have released Hash from AD/SEG, or at least put Hash
18  on single cell status. See, Ex. P, Hash's 114-D lock up order.

19

20  224. Hash is informed and believes, and thereon alleges, that
21  as stated in paragraph (114) defendants G. Biaginni and J.
22  Ippolito violated Hash's Fourteenth amendment due process of law
23  rights. Specifically, the defendants, as alleged, exercised dis-
24  ciplinary measures against Hash by puting him on (CMS) cell
25  management status without a due process hearing. As such,
26  Hash's cell was stripped of all state and personal property leaving
27  Hash with (1) sheet, (1) pair of boxer shorts, (1) tooth brush, (1) spoon, and
28  (1) daily issue of toilet paper. See, Ex. Q, (MCS) notice.

83.

225. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS STATED IN PARAGRAPH (116) DEFENDANTS D. TRAVERS, G. D. LEWIS, AND F. WINN VIOLATED HASH'S FOURTEENTH AMENDMENT DUE PROCESS OF LAW RIGHTS BY FAILING TO PROVIDE HIM WITH A (72) NOTICE OF HIS I.C.C HEARING. THE DEFENDANTS, AS ALLEGED, HAVE A CONSISTANT CUSTOM AND POLICY OF INCLUDING STANDARD BOILER PLATE LANGUAGE IN THEIR 128 G CHRONO COMMITTEE FINDINGS. SPECIFICALLY, LIKE ALL I.C.C 128 G CHRONOS, EACH OF HASH'S I.C.C COMMITTEE CHRONOS FALSELY STATE THAT HE WAS GIVEN A (72) HOUR NOTICE OF THE HEARING, THAT HASH STATED HE WAS IN GOOD HEALTH AND WAS WILLING TO PROCEED WITH THE HEARING, THAT THE COMMITTEE THROUGHLY DISCUSSED HIS CLASSIFI-CATION ISSUES WITH HIM, THAT HASH WAS INFORMED OF HIS APPEAL RIGHTS, AND THAT HASH UNDERSTOOD AND AGREED WITH THE COMMITTEE'S ACTIONS. THE DEFENDANTS, AS ALLEGED HEREIN, FURTHER VIOLATED HASH'S DUE PROCESS OF LAW RIGHTS BY DENYING HIS REQUEST FOR WITNESSES AND FOR A "STAFF ASSISTANT," WHICH HASH HAD A RIGHT TO BASED ON HIS LOW EDUCATIONAL GRADE POINT LEVEL OF (2.9). THE COMMIT-TEE REFUSED TO LET HASH THROUGHLY PRESENT HIS POSITION AND WITHOUT A "STAFF ASSISTANT" WHOM COULD HAVE DISCUSSED CONFIDENTIAL MATTERS WITH HASH, THE COMMITTEE TOOK ADVERSE ACTION AGAINST HIM. THE COMMITTEE REFUSED TO CORRECT HASH'S CLASSIFICATION POINT SCORE, IMPROPERLY HOUSED HIM ON A 180 DESIGN YARD INSTEAD OF 270 DESIGN YARD AS HE HAD PREVIOUSLY BEEN HOUSED ON, AND REASSIGNED HIM TO A YARD WITH KNOWN ENEMIES. CONSEQUENTLY, HASH WAS STABBED (30) SOME TIMES. EX. S.

226. HASH IS INFORMED AND BELIEVES. AND THEREON ALLEGES. THAT AS STATED IN PARAGRAPH (119) DEFENDANTS T. VARIZ, S. GOMEZ,

84.

1 AND JOHN W. LUMAN III VIOLATED HASH'S FOURTEENTH AMENDMENT
2 DUE PROCESS OF LAW RIGHTS. SPECIFICALLY, THE DEFENDANTS, AS
3 HEREIN ALLEGED, RECKLESSLY SCREENED OUT HASH'S EMERGENCY
4 APPEAL REQUEST, WHEREIN HE PUT THE DEFENDANTS ON NOTICE
5 THAT HIS LIFE WAS IN DANAGER. INSODOING, THE DEFENDANTS, AS
6 ALLEGED, DENIED HASH HIS DUE PROCESS RIGHT TO FILE AN EMERGENCY
7 APPEAL. CONSEQUENTLY, HASH WAS STABBED (30)SOME TIMES. EX. U, APPEAL.
8
9    227. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS
10 STATED IN PARAGRAPH (125) DEFENDANTS D. SELLERS AND S. PLAZA
11 VIOLATED HASH'S FOURTEENTH AMENDMENT DUE PROCESS OF LAW RIGHTS.
12 SPECIFICALLY, THE DEFENDANTS, AS ALLEGED HEREIN, DEPRIVED HASH OF
13 AN AD/SEG LOCK UP HEARING. INSODOING, HASH WAS DEPRIVED OF WITNESSES,
14 A "STAFF ASSISTANT" AND AN OPPORTUNITY TO PRESENT HIS POSITION
15 TO THE I.C.C COMMITTEE WHOM COULD HAVE APPROVED SINGLE CELL STATUS
16 FOR HASH AND HOUSED HIM IN THE PRISONS' INFIRMARY. CONSEQUENTLY,
17 HASH WAS RETURNED TO "C" FACILITY AND DOUBLE CELL APPROVED,
18 LEAVING HASH WIDE OPEN FOR ANOTHER ATTACK DUE TO HIS ENEMY
19 STATUS ON "C" YARD. SEE. EX. I-A, (114-D LOCK UP ORDER)
20
21    228. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
22 AS STATED IN PARAGRAPH (126) DEFENDANTS D. TRAVERS, G. D.
23 LEWIS, PRATTI, AND R. BURGH VIOLATED HASH'S FOURTEENTH AMEND-
24 MENT DUE PROCESS OF LAW RIGHTS BY FAILING TO PROVIDE HIM WITH
25 A (72) HOUR NOTICE OF HIS I.C.C HEARING. THE DEFENDANTS, AS
26 ALLEGED, HAVE A CONSISTANT CUSTOM AND POLICY OF INCLUDING
27 STANDARD BOILER PLATE LANGUAGE IN THEIR 128G CHRONO COMMITTEE
28 FINDINGS. SPECIFICALLY HASH'S I.C.C 128G CHRONO *FALSELY* STATES

85.

1 THAT HE WAS GIVEN A (72) HOUR NOTICE OF THE HEARING, THAT HASH
2 STATED HE WAS IN GOOD HEALTH AND WAS WILLING TO PROCEED
3 WITH THE HEARING. THAT THE COMMITTEE THROUGHLY DISCUSSED HIS
4 ISSUES WITH HIM, THAT HE WAS INFORMED OF HIS APPEAL RIGHTS,
5 AND THAT HE UNDERSTOOD AND AGREED WITH THE COMMITTEES ACTIONS.
6 DEFENDANT PRATTI FURTHER VIOLATED HASH'S DUE PROCESS OF LAW
7 RIGHTS BY REFUSING TO STATE HASH'S POSITION THAT HIS CLASS-
8 IFICATION POINT SCORE WAS INCORRECT AND IF CORRECTED HASH
9 WOULD BE ENTITLED TO A TRANSFER TO A LOWER CUSTODY LEVEL III
10 PRISON. DEFENDANTS, AS ALLEGED, DENIED HASH'S REQUEST TO
11 CALL WITNESSES IN HIS DEFENSE, AND FAILED TO RETURN HIM TO
12 THE COMMITTEE ON AUGUST 25, 2005 TO REVIEW HIS HOUSING
13 AND PROGRAMING NEEDS, AS WAS AGREED UPON. EX. 1-B, CHRONO.

15 229. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
16 AS STATED IN PARAGRAPH (129) DEFENDANT R.A. KESSLER VIOLATED
17 HASH'S FOURTEENTH AMENDMENT DUE PROCESS OF LAW RIGHTS.
18 SPECIFICALLY, DEFENDANT KESSLER THREATENED TO MOVE HASH TO
19 FACILITY (D-9) WHERE LIVING CONDITIONS WERE WORSE THAN WHERE
20 HASH WAS LIVING AT THAT TIME, BECAUSE OF THE 602 APPEAL THAT
21 HASH FILED. AS A RESULT OF DEFENDANT KESSLER'S THREATS, HASH
22 CHOSE TO ABANDON HIS 602 APPEAL FOR FEAR OF ADVERSE
23 ACTIONS FROM DEFENDANT KESSLER. SEE, EX. 1-C, 602 APPEAL.

25 230. HASH REALLEGES AND INCORPORATES BY REFERENCE THE
26 RELEVANT ALLEGATIONS OF PARAGRAPHS 152-THRU-156 AND 189-
27 -THRU-191, INCLUSIVELY, AS IF ALLEGED HEREIN.
28

86.

XIII. SEVENTH CAUSE OF ACTION
Violation of Hash's Eighth and
Fourteenth Amendment Rights To Be
Free From Malicious Prosecution

231. Hash realleges and incorpates by reference each relevant allegation of paragraphs (1) thru (217), inclusively, as if alleged herein.

232. Hash is informed and believes, and thereon alleges, that as stated in Paragraphs (93, 94, and 95) Hash contends that Defendant Fredrico Ramirez wilfully, maliciously, and intentionally used excessive force by emptying an entire can of O.C. pepper spray on Hash, then struck Hash four or more times with his PR-24 side handle baton, after Hash and his combatant inmate Dibble had stopped fighting and were fully incapacitated. Hash further contends that Defendant Ramirez falsified Hash's disciplinary report by showing Hash as the aggressor of the fight, and therefore giving Defendant Ramirez cause to have utilized his medal baton to strike Hash four or more times. In so doing, Defendant Ramirez violated Hash's Eighth and Fourteenth Amendment rights by falsifying crucial facts in Hash's disciplinary report, thus subjecting Hash to a false and malicious prosecution. Not only did Defendant Ramirez violate Hash's rights to due process of law, he also subjected Hash to a malicious prosecution that caused Hash to be housed in AD/SEG "the Hole" for over a year, which was a form of cruel and unusual punishment. Ex. C, Report

87.

233. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DOE DEFENDANT SUPERIORS FAILED THEIR DUTY TO PERFORM A PROPER AND ADEQUATE REVIEW OF DEFENDANT RAMIREZ's JULY 17, 2004 DISCIPLINARY REPORT RELEVANT TO HASH. HAD THEY OF DONE SO, THEY COULD HAVE DETERMINED THAT THERE WAS INSUFFICIENT EVIDENCE TO PROVE HOW, OR WHO STARTED THE FIGHT. SPECIFICALLY, THE REPORT IDENTIFIES HASH AS THE AGGRESSOR THAT STARTED THE FIGHT IN FRONT OF CELL DOOR B-3-135, WHICH IS THE LOCATION WHERE BOTH HASH AND INMATE DIBBLE FELL TO THE FLOOR AND SUBSEQUENTLY WERE RESTRAINED BY DEFENDANT RAMIREZ. HOWEVER, THE CRIME SCENE PHOTOS CLEARLY SHOWED THAT THERE WAS AN ADDITIONAL LOCATION WHERE HASH AND INMATE DIBBLE WERE ENGAGED IN A FIGHT, AS NOTED IN DEFENDANT RAMIREZ's INCIDENT REPORT " INMATE DIBBLE's BLOOD STAINED THE PLUMING CHASE DOOR AND THE FLOOR BETWEEN CELLS B-3-134 AND B-3-135". AS SUCH, THERE WAS PHYSICAL BLOOD EVIDENCE THAT PROVED THE FIGHT STARTED PRIOR TO WHEN DEFENDANT RAMIREZ OBSERVED HASH AND DIBBLE IN FRONT OF CELL DOOR B-3-135, THEREFORE THE REPORT BY DEFENDANT RAMIREZ WAS INSUFFICIENT EVIDENCE TO PROVE HOW THE FIGHT STARTED OR WHO INITIATED THE FIGHT. ADDITIONALLY, LVN SERRATO's MEDICAL INJURIES REPORT SHOWED HASH SUFFERED MULTIBLE INJURIES THAT COULD NOT BE EXPLAINED BY THE FACTS IN DEFENDANT RAMIREZ's INCIDENT REPORT. CONSIDERING LVN SERRATO's REPORT WAS INCLUDED WITH DEFENDANT RAMIREZ's INCIDENT REPORT DOE DEFENDANT SUPERIORS WERE GROSSLY NEGLIGENT BY FAILING TO DETERMINE THE DEFENDANT RAMIREZ's REPORT DID NOT MATCH LVN SERRATO's REPORT AND THERE WAS INSUFFICIENT EVIDENCE TO PROSECUTE HASH FOR A BATTERY ON INMATE DIBBLE. EXS. C, AND D, REPORTS.

88.

234. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANTS M. ROSS, F. WINN, A. MELERO, G.D. LEWIS, AND L.E. SCRIBNER VIOLATED HASH'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM MALICIOUS PROSECUTION. SPECIFICALLY, DEFENDANT M. ROSS WAS FULLY AWARE THAT THERE WAS INSUFFICIENT EVIDENCE TO PROVE HASH WAS THE AGGRESSOR THAT STARTED THE FIGHT AND WAS GUILTY OF A BATTERY ON INMATE DIBBLE, YET HE KNOWINGLY, WILFULLY, AND RECKLESSLY DISREGARDED FACTUAL EVIDENCE AND PURSUED A MALICIOUS PROSECUTION AGAINST HASH. AS SUCH, EACH OF THE ABOVE DEFENDANTS, AS ALLEGED HEREIN, HAD AN OPPORTUNITY TO REVIEW THE SAME EVIDENCE, BUT KNOWINGLY, WILFULLY, AND RECKLESSLY DISREGARDED THAT EVIDENCE AND AFFIRMED DEFENDANT M. ROSS' FINDING OF GUILTY AGAINST HASH. THEREAFTER, HASH WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT BY BEING HOUSED IN AD/SEG, THE "HOLE," FOR OVER A YEAR, IN VIOLATION OF HIS RIGHTS TO A FAIR HEARING WITH DUE PROCESS OF LAW. SEE, EX. C.

235. HASH IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT AS DISTRICT ATTORNEYS OF THE MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE DEFENDANTS DEAN D. FLIPPO, JUDY BECK, AND MICHAEL BREEDEN VIOLATED HASH'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM MALICIOUS PROSECUTION. HASH CONTENDS THAT EACH OF THE ALLEGED DEFENDANTS MALICIOUSLY, WILFULLY, AND WITH RECKLESS DISREGARD FOR HASH'S RIGHTS, FAILED TO ADEQUATELY AND PROPERLY EVALUATE THE EVIDENCE NEEDED TO FIND HASH GUILTY OF A BATTERY WITH SERIOUS BODILY INJURY ON INMATE DIBBLE. IN SO DOING, THEY VIOLATED HASH'S RIGHT TO DUE PROCESS

89.

1  OF law BY SUBJECTING Him TO A MAliCious AND FAlSE PROSECUTION,
2  CAUSiNG HASH TO SUFFER CRUAl AND UNUSUAl PUNISHMENT BY
3  BEiNG HOUSED iN AD/SEG, THE "HOle", FOR OVER A YEAR. HASH CON-
4  TENDS THAT THE DEFENDANTS, AS Alleged HEREIN, FAiled TO PERFORM
5  ANY MEANiNGFul iNVESTiGATiON OF THE CHARGES THEY FilED AGAiNST
6  HiM, THEN AFTER NiNE MONTHS OF COURT APPEARANCES AND
7  PROCEEDiNGS, ON THE DAY OF HASH's JURY TRiAl THEY DiSMiSSED
8  All CHARGES AGAiNST HiM BASED ON iNSUFFiCiENCY OF EVIDENCE
9  TO SUSTAiN THE CHARGES. THUS, HASH's ENTiRE PERiOD OF TiME SPENT
10 iN AD/SEG WAS BASED ON iNSUFFiCiENT EViDENCE, CAUSiNG
11 HASH TO SUFFER EMOTiONAl AND PSYCHOlOGiCAl DiSTRESS, AS
12 Well AS, PHYSiCAl PAiN AND SUFFERiNG.
13
14 236. HASH is iNFORMED AND BEliEVES. AND THEREON. AllEGES,
15 THAT WiTH THE EXCEPTiON OF THE THREE DiSTRiCT ATTORNEY DE-
16 FENDANTS. AS "RESPONDEATE SUPERiORS", DEFENDANTS MATTHEW CATE,
17 M.S. EVANS, L.E. SCRiBNER, D. TRAVERS, A. HEDGPATH, J. AlliSON,
18 C. NOlE. GUS ZAVAlA. P. MANDEViLLE, D.M. MANTEl. M. ROSS, A. MElERO,
19 C. BlACKSTONE, A. TUCKER. G.D. LEWiS. AND A. WilliAMS WERE
20 GROSSlY NEGliGENT iN MANAGiNG THEiR SUBORDiNATE PERSONNEl
21 WHOM WERE AllOWED TO RECKlESSlY DiSREGARD AND ViOlATE THEiR
22 OWN RUlES AND POliCiES RElEVANT TO HASH's PROSECUTiON.
23
24 237. HASH REAllEGES AND iNCORPORATES EACH RElEVANT AllEGATiON
25 OF PARAGRAPHS 152-THRU-156 AND-189-THRU-191, iNCLUSiVElY,
26 AS iF AllEGED HEREiN. AS SUCH. HASH HAS NO PlAiN, ADEQUATE OR
27 COMPlETE REMEDY AT lAW TO REDRESS THE WRONGS DESCRiBED HEREiN.
28 IT iS CRUCiAl THAT THE COURT GRANTS THE DECiARATORY AND iNJUNCTiVE RElief SOUGHT

90.

# IX. PRAYER FOR RELIEF

WHEREFORE, HASH RESPECTFULLY PRAYS FOR THE FOLLOWING RELIEF:

238. A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED HASH'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE U.S.

239. A PRELIMINARY AND PERMANENT INJUNCTION ORDERING (C.D.C.R) THE DEFENDANTS TO RETAIN HASH'S CURRENT AND PRESENT SINGLE CELL STATUS;

240. COMPENSATORY DAMAGES ACCORDING TO PROOF;

241. PUNITIVE DAMAGES ACCORDING TO PROOF;

242. REASONABLE ATTORNEY'S FEES PURSUANT TO 42 U.S.C SEC. 1988;

243. COST OF SUIT; AND,

244. ANY ADDITIONAL RELIEF THIS COURT DEEMS. JUST, PROPER, AND EQUITABLE.

## DEMAND FOR JURY TRIAL

PLAINTIFF LAWRENCE GEORGE HASH HEREBY DEMANDS A TRIAL BY JURY.

DATED: 4-23-2008

_Lawrence George Hash_
LAWRENCE GEORGE HASH
PLAINTIFF, IN PRO-PER

91.

1
2
## DECLARATION OF SERVICE BY MAIL

3
4
CASE NAME: LAWRENCE GEORGE HASH —V— MATTHEW CATE. et. al

5
CASE NO: _____

6
7
    I, LAWRENCE GEORGE HASH _____, declare that I am over the age of eighteen (18)

8
years: (I am) / am not a party to the attached action; I served the attached action; I served the

9
attached document(s) entitled: COMPLAINT FOR DECLARATORY AND PRELIMINARY

10
INJUNCTION RELIEF. AND FOR DAMAGES. DEMAND FOR JURY TRIAL.

11

12
on the persons / parties specified below by placing a true copy of said document into a sealed

13
envelope(s) to the staff of the Correctional Training Facility here in Soledad, CA. who are

14
entrusted with the logging and mailing of inmate legal mail addressed as follows:

15
UNITED STATES DISTRICT COURT, NORTHERN DISTRICT

16
ATTN: CLERK OF THE COURT /CIVIL COMPLAINT DEPT.

17
    450 GOLDEN GATE AVE. 16 TH FLOOR

18
    SAN FRANCISCO, CALIFORNIA  94102

19

20
    There is First Class mail delivery service by the United States Post Office between the

21
place of mailing and the address(es) indicated above. I declare under the penalty of perjury under

22
the laws of the United States and the State of California that the foregoing is true and correct, and

23
that I executed this service this 24 day of July _____, 20 08, in

24
Soledad, CA.

25
26
            Lawrence George Hash
27
                 Declarent
28

92.

LARRY HASH CDC # P-00376
CORRECTIONAL TRAINING FACILITY/NORTH
P.O.BOX 705/CEll # RB-235L
SOLEDAD, CAl 93960-0705

CLERK OF THE COURT/CIVIL DEPT                    MMC
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT                    E-filing
450 GOLDEN GATE AVE, 16TH FlOOR
SAN FRANCISCO, CA 94102

DEAR CLERK OF THE COURT:    CV 08    3729
                                            (PR)

     PLEASE FIND ENClOSED (1) ORIGINAl COPY — AND ONE
ADDITIONAL COPY OF MY CIViL RIGHTS COMPLAINT. PLEASE
STAMP MY COVER PAGE AS BEING FiLED AND MAIl
ME A COPY OF iT IN MY SELF ADDRESSED STAMPED
ENVElOPE.

                              THANK YOU
P.S.
MY EXHIBITS ARE SEPARATELY        Larry H. Hash
BOUND. PLEASE MAKE SURE
THEY STAY WITH MY COMPLAINT.



LAURENCE GEORGE HIGH CDC # T-00376

CORRECTIONAL TRAINING FACILITY / NORTH

705 / Cell # RB-235L

SOLEDAD, CALIF 93960-0705

RECEIVED

CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF CALIF.

UNITED STATES DISTRICT

NORTHERN DISTRICT

...N. CLERK OF THE

UNITED STATES POSTAGE
$ 07.600
MAILED FROM ZIP CODE 93960
000422965





CONFIDENTIAL

STATE PRISON
GENERATED-MAIL

LARRY HASH
Cell: RB-235L
DC P-00376

P. Box 705
SOLEDAD, CALIF
93960-0705

United States District Court House
Northern District
ATTN: Clerk of the Court of Civil Cases
450 Golden Gate Ave
San Francisco, California



7-24-08    c/o

FROM: LAWRENCE GEORGE HASH   CDC # P-00376
CORRECTIONAL TRAINING FACILITY / NORTH
P.O.BOX 705 / CELL # RB-235L
SOLEDAD, CALIF 93960-0705

UNITED STATES DISTRICT COURTHOUSE
NORTHERN DISTRICT
ATTN: CLERK OF THE COURT / CIVIL COMPLAINT L

450 GOLDEN GATE AVE, 16 TH FLOO

SAN FRANCISCO, CALIFORN,

7-24-08