United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAWRENCE GEORGE HASH,                    )    No. C 08-3729 MMC (PR)
                                         )
                    Plaintiff,           )    **ORDER GRANTING DEFENDANTS'**
                                         )    **MOTION FOR SUMMARY**
        v.                               )    **JUDGMENT**
                                         )
CHARLES LEE, et al.,                     )    **(Docket No. 154)**
                                         )
                    Defendants.          )
_____          )

        On August 4, 2008, plaintiff, a California prisoner then incarcerated at the

Correctional Training Facility at Soledad[1] and proceeding pro se, initiated the above-titled

civil rights action by filing a 299-page complaint naming seventy-eight defendants.   The

Court thereafter granted plaintiff leave to proceed in forma pauperis and dismissed the

complaint with leave to amend.

        Plaintiff filed a first amended complaint ("FAC") on June 29, 2009, after which the

Court found plaintiff had stated cognizable claims against thirty-one defendants for:

(1) deliberate indifference to plaintiff's safety, in violation of the Eighth Amendment;

(2) deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth

Amendment; (3) excessive force, in violation of the Eighth Amendment; (4) retaliation, in

_____

        [1]Plaintiff currently is incarcerated at San Quentin State Prison.

United States District Court
For the Northern District of California

violation of the First Amendment; and (5) denial of plaintiff's access to courts, in violation of the Fourteenth Amendment.  According to the FAC, the events giving rise to said claims occurred during the time plaintiff was incarcerated at Salinas Valley State Prison ("SVSP") in 2004 and 2005.

As of July 8, 2011, plaintiff had not effectuated or facilitated service on thirteen of the thirty-one defendants.  Of those thirteen defendants, eight were later served and five were dismissed by orders filed, respectively, on September 15, 2011 and January 10, 2012.  The only claims pertaining to the twenty-six remaining defendants are First Amendment retaliation claims and Eighth Amendment claims for deliberate indifference to safety and to medical needs.

Now before the Court is defendants' motion for summary judgment, filed September 23, 2013.  On May 1, 2014, following several extensions, plaintiff filed his opposition, and, on May 14, 2014, defendants filed a reply.[2]  For the reasons discussed below, the motion will be granted.

**DISCUSSION**

I.   Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

_____

[2]  On June 30, 2014, plaintiff, without leave of court, submitted an "Answer to Reply," which filing is not in accordance with the Civil Local Rules of this district.  See Civil L.R. 7-3(d) (providing, with limited exception not applicable here, "[o]nce a reply is filed, no additional memoranda . . . may be filed without prior Court approval").  Nevertheless, the Court has reviewed the filing and the Court's analysis as set forth herein remains unchanged.

United States District Court
For the Northern District of California

that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

In ruling on a motion for summary judgment, a district court may only consider admissible evidence.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  Here, plaintiff has verified his FAC and his opposition to defendants' motion for summary judgment by signing both documents under penalty of perjury, and, for purposes of the instant order, the Court construes those documents as affidavits in opposition to defendants' motion.  See Schroeder v. McDonald, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding complaint signed under penalty of perjury constituted admissible evidence).

II.     Exhaustion of Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42

**United States District Court**
For the Northern District of California

U.S.C. § 1997e(a).  Although previously within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Moreover, those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Id.; Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion is a prerequisite to all inmate lawsuits pertaining to prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

The exhaustion requirement of the PLRA is intended to serve a number of purposes, including providing an opportunity for corrections officials to address complaints internally, deterring frivolous lawsuits, and creating an administrative record allowing courts to evaluate the relative merits of claims.  See Porter, 534 U.S. at 525.  "The primary purpose of a grievance," however, "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

In Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), the Ninth Circuit held that a failure to exhaust under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion."  Here, in accordance with Wyatt, defendants filed a joint motion for summary judgment and motion to dismiss under the non-enumerated portion of Rule 12(b). Thereafter, however, in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), the Ninth Circuit overruled Wyatt in part and held that a motion for summary judgment is the appropriate procedural device for pretrial determination as to exhaustion.  Albino, at 1169.  Following the decision in Albino, a defendant may raise the issue of exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment.  Id.  As set forth in Albino, "an unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial

United States District Court
For the Northern District of California

1 | determination of whether administrative remedies have been exhausted." Id. at 1168.[3]  The

2 | Court next turns to the administrative remedies available to California inmates.

3 |      The California Department of Corrections and Rehabilitation ("CDCR") provides its

4 | inmates and parolees the right to appeal administratively "any departmental decision, action,

5 | condition, or policy which they can demonstrate as having an adverse effect upon their

6 | welfare." 15 C.C.R. § 3084.1(a).[4]  It also provides its inmates the right to file administrative

7 | appeals alleging misconduct by correctional officers.  See id. § 3084.1(e).  In order to

8 | exhaust available administrative remedies within said system, a prisoner must submit his

9 | complaint on CDCR Form 602 and proceed through several levels of appeal: (1) informal

10 | level grievance filed directly with any correctional staff member, (2) first formal level appeal

11 | filed with one of the institution's appeal coordinators, (3) second formal level appeal filed

12 | with the institution head or designee, and (4) third formal level appeal filed with the CDCR

13 | director or designee.  Id. § 3084.5; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009);

14 | Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  The initial grievance must be

15 | filed within 15 working days of the action or event being protested, and inmates must seek

16 | review at each successive level within 15 working days of receiving an adverse decision at a

17 | lower level.  15 C.C.R. § 3084.6.  Compliance with the above-described procedure satisfies

18 | the exhaustion requirement under § 1997e(a).  Barry, 985 F. Supp. at 1237-38.

19 | III.   Plaintiff's Claims

20 |      Plaintiff asserts the following claims:  (1) defendants Lt. Blackstone and Capt. Mantel

21 | acted with deliberate indifference to plaintiff's safety when they double-celled him with

---

[3]  In light of Albino, the Court, on April 9, 2014, issued an order advising the parties that the Court would treat defendants' unenumerated Rule 12(b) motion to dismiss as a motion for summary judgment pursuant to Rule 56.  The Court repeated the Rand notice that had already been provided to plaintiff, instructing him on what he must do to oppose a motion for summary judgment, and further advised plaintiff that the Rand notice applied to defendants' arguments regarding failure to exhaust as well as to the other issues in defendants' motion.  As noted, plaintiff thereafter filed his opposition on May 1, 2014.

[4]  The regulations pertaining to the inmate appeals process were amended December 17, 2010.  The regulations cited here are those that were in effect at the time plaintiff submitted his inmate appeals.

United States District Court
For the Northern District of California

inmate Chris Dibble ("Dibble") in mid-2004 (FAC ¶¶105-106, 254-256) ; (2) defendants Officers Gantt, Rosa, Stevens, and Thacker acted with deliberate indifference to plaintiff's safety when they refused his request to have Dibble removed from his cell (FAC ¶¶ 109, 254-256) and acted with deliberate indifference to plaintiff's serious medical needs when they refused to treat injuries plaintiff sustained during a July 14, 2004 altercation with Dibble (FAC ¶¶ 109, 261); (3) defendant Dr. Pistone acted with deliberate indifference to plaintiff's serious medical needs when he refused plaintiff's request for an MRI to ascertain the cause of plaintiff's purported head and back pain (FAC ¶121); (4) defendant Officer Burke issued a rules violation report ("RVR") against plaintiff in retaliation for plaintiff's threats to file a grievance against Officer Burke (FAC ¶ 124); (5) defendant Sgt. Washington moved plaintiff to a "different" Administrative-Segregation ("Ad-Seg") building in retaliation for plaintiff's filing a grievance against him, and, on a different occasion, moved plaintiff to "an outside holding cage" for several hours in retaliation for plaintiff's threatening to file a complaint for harassment (FAC ¶¶ 141, 186-187); (6) defendant Officer Perez issued an RVR against plaintiff in retaliation for plaintiff's filing staff complaints against Officer Perez's family members who happened to also work at SVSP (FAC ¶¶ 141-144); (7) defendant Officer Mays issued an RVR against plaintiff in retaliation for plaintiff's refusal to be housed with a white inmate from C or D yard (FAC ¶¶159-160); (8) defendants Dr. Bowman and Lt. Walker were deliberately indifferent to plaintiff's serious medical needs on May 31, 2005 when, allegedly at Lt. Walker's behest, Dr. Bowman discontinued a medical authorization (also known as a "medical chrono") plaintiff previously had obtained for waist restraints, medical showers (more frequent than the normal shower every two days), thermal clothing (an extra sweat shirt), and a bunk on a lower tier (FAC ¶ ¶166-167); (9) defendant Sgt. Kessler threatened to write plaintiff up and to move plaintiff in retaliation for plaintiff's refusal to accept a cellmate from C or D yard and in retaliation for plaintiff's filing a grievance regarding living conditions (FAC ¶¶ 165, 215-216); (10) defendant Sgt. Kessler was deliberately indifferent to plaintiff's serious medical needs when he disregarded plaintiff's medical chronos allegedly entitling him to a lower bunk in a lower tier, an extra

United States District Court
For the Northern District of California

mattress, and an extra pillow (FAC ¶¶215-216); (11) defendant Institutional Classification Committee ("ICC") members Lewis, Winn, and Torrez were deliberately indifferent to plaintiff's safety by reassigning him from B to C yard in July 2005, knowing enmity existed between white inmates on B yard and white inmates on C yard, which enmity caused plaintiff's cellmate ("Sidley") to assault plaintiff later in July 2005 (FAC ¶¶180-195); (12) defendants Variz and Gomez were deliberately indifferent to plaintiff's safety when they screened out an appeal in which plaintiff claimed his life was in danger due to the C yard placement (FAC ¶¶191-192); and (13) defendants Arceo, Bowman, Delfs, Grannis, Kates, Krossa, Lee, and Wall were deliberately indifferent to plaintiff's serious medical needs when they failed to timely coordinate post-hospitalization follow-up care after plaintiff's July 2005 surgery (FAC ¶¶220-229).

A. <u>Failure to Exhaust</u>

Defendants argue they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies with respect to any of his claims. The Court addresses the claims in turn.

1. <u>Mantel, Blackstone, Stevens, Rosa, Thacker, and Gantt</u>

Defendants contend plaintiff failed to properly exhaust the claims against Mantel, Blackstone, Stevens, Rosa, Thacker, and Gantt as required by the PLRA. In support of their motion, defendants submit the declaration of Eloy Medina ("Medina"), the appeals coordinator at SVSP, who states he conducted a search for all grievances filed by plaintiff at SVSP. (Medina Decl. ¶¶1, 7.) Medina states that a search of plaintiff's grievance record shows no record of a properly submitted appeal regarding plaintiff's claims against Mantel, Blackstone, Stevens, Rosa, Thacker, and Gantt. (<u>See</u> <u>id.</u> ¶¶ 9-11, Ex. 1.) Plaintiff does not dispute that he failed to submit a grievance on said claims as required to exhaust administrative remedies, but, rather, makes three arguments asserting he was not required to do so.

a. <u>Constructive Notice Argument</u>

First, plaintiff argues he submitted an "Inmate Request for Interview Form GA-22" on

United States District Court
For the Northern District of California

July 10, 2004, which form, plaintiff contends, "constructively" put defendants "on notice

prior to the assaults committed by plaintiff's cellmate on 7/14/04 and again on 7/17/04."

(Pl.'s Opp'n. to Mot. Summ. J., Dkt. 171, ("Pl.'s Opp'n.") at 2, 4.)  The Court is not

persuaded.  As noted above, exhaustion must be proper, i.e., an inmate must comply with

prison administrative rules.  See Woodford, 548 U.S. at 90-91 (holding "[p]roper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules").  The

PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

procedurally defective administrative grievance or appeal."   Woodford, 548 U.S. at 83.  It is

the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).  As discussed above, the CDCR rules

require inmates to properly exhaust by first submitting a CDCR Form 602.  15 C.C.R.

§§ 3084.2(a), 3084.7.  It is undisputed that plaintiff did not submit the necessary 602 form.

Consequently, plaintiff's filing of a request for interview does not satisfy the exhaustion

requirement.

> b.  Access Argument

Plaintiff next argues that no remedies were "available" because he "did not have

access to the necessary appeal forms during the pendency of the appeal-time limits (7/14/04

thru 7/29/04), i.e., 15 days."  (Pl.'s Opp'n. at 2, 4.)[5]  Plaintiff's second argument likewise is

unavailing, for several reasons.  First, plaintiff provides no evidentiary support for his

conclusory assertion that he lacked access to appeal forms.  Indeed, such assertion is

contradicted by the following testimony given by plaintiff at his deposition in this action:

> Q: What are all the methods by which you can obtain a 602 appeal, or should I
> say obtain an appeal at SVSP during the time period 2004 to 2005?
>
> A: The most common method is to ask for one from the floor officer.
>
> Q: What are all the ways?

---

[5] Although plaintiff uses fifteen calendar days to calculate the period for filing a
grievance, the regulations in effect in 2004 required that the initial grievance be filed within
"15 working days."  15 C.C.R. § 3084.6 (2004); (Medina Decl ¶3).

1

A: The methods of obtaining a 602 appeal while you're on lockdown are limited, because you only come in contact with your floor officer or whoever other Officer happens to pass by.

2

3

Q: Are there other ways, other than just asking from the floor officer?

4

A: Yes.

5

Q: What are they?

6

A: I believe you can obtain an appeal from the law library.

7

(Pl.'s Dep. at 202:4-19, Grigg Decl. Ex. B.)

8

Plaintiff offers no evidence that a floor officer refused his request for a 602 form or

9

that he was unable to obtain one from the prison law library.  Further, the evidence submitted

10

by defendants shows appeal forms were readily available to plaintiff during the relevant time

11

period.  (See e.g., Medina Decl. ¶24 ("[A]n inmate who wanted to obtain a 602 form would

12

have no problem doing so"); Williamson Decl. ¶¶2-3 ("During 2004-2005, all inmates at

13

SVSP, regardless of their classification or housing status, were entitled to obtain law library

14

materials, by going to the prison law library and obtaining such materials themselves or by

15

requesting such materials through a library paging process.  [¶] The library materials to

16

which inmates have had access include inmate appeal forms (also known as 'grievance' or

17

'602' forms)"); Kessler Decl.,¶14 ("Grievance forms were passed out to ASU inmates on a

18

weekly basis…."); Mantel Decl. ¶9 ("[602] forms were readily available to [plaintiff]");

19

Lewis Decl. ¶9 ("ASU inmates can request [602 forms] from housing officers, medical or

20

mental health staff; [a]dditionally, the forms are included in a package of supplies delivered

21

on a weekly basis to ASU inmates . . . ."); see also Thacker Decl. ¶9; Mays Decl. ¶11; Perez

22

Decl. ¶14; Torrez Decl. ¶7.)  Plaintiff fails to come forward with any evidence to dispute

23

defendants' showing.

24

Further, even if plaintiff had been denied access to the administrative grievance

25

system during the fifteen working days following his July 14, 2004 altercation with Dibble,

26

such circumstance does not excuse his failure to exhaust his administrative remedies

27

thereafter.  Indeed, CDCR regulations explicitly include an exception to the timely filing

28

requirement if an inmate does not have the opportunity to file a grievance during the fifteen-

United States District Court
For the Northern District of California

day filing period.  See Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (remanding to district court to consider whether plaintiff had opportunity to file grievance within fifteen days after assault, where his injuries and subsequent segregation rendered grievance form inaccessible).  The appeals coordinator is only permitted to reject an untimely appeal if "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." Id. (quoting Cal. Code Regs. tit. 15, §§ 3084.6(c) and 3084.3(c)(6) (emphasis in original)).  Here, even if plaintiff had shown administrative remedies were not available during the fifteen-day period, plaintiff has not shown that further administrative remedies were not available to him at any time after fifteen working days had passed.  Indeed, plaintiff never states he made any attempt to exhaust his administrative remedies.

In sum, although plaintiff is not required to allege he resorted to extraordinary measures in order to exhaust his administrative remedies, conclusory allegations that the administrative remedies process is inadequate are insufficient to defeat summary judgment for failure to exhaust, see White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997), where, as here, the undisputed factual record demonstrates the inmate had the ability to properly exhaust, but failed to do so.

c.  Mootness Argument

Lastly, plaintiff argues that subsequent to the altercations between plaintiff and Dibble, "both inmates were placed in Administrative Segregation . . . . and separately housed making the issue moot."  (Pl.'s Opp'n. at 2, 4.)  Plaintiff submits no evidence, however, showing his grievance would have been rejected as moot; he only speculates.  Further, even assuming, arguendo, that the grievance would have been screened out as moot, such circumstance does not obviate the need to exhaust.  See Booth, 532 U.S. at 341 n.6 (noting PLR "is at odds with traditional doctrines of administrative exhaustion, under which a litigant need not apply to an agency that has no power to decree relief, or need not exhaust when doing so would otherwise be futile") (internal quotation, citation, and alteration omitted); see also 15 C.C.R. § 3084.1(b) ("[A] cancellation or rejection decision does not exhaust

10

administrative remedies"); 15 C.C.R. § 3084.6(a)(3) ("[A] cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

Moreover, plaintiff clearly does not deem the issue moot, as he has proceeded to pursue the claim in this court.  As noted, the fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner, such as money damages, does not excuse exhaustion, as some form of relief or responsive action may be provided.  See Booth, 532 U.S. at 737, 741.  Consequently, plaintiff's third argument likewise fails.

d.  Conclusion: Mantel, Blackstone, Stevens, Rosa, Thacker, and Gantt

For the reasons set forth above, defendants Mantel, Blackstone, Stevens, Rosa, Thacker, and Gantt are entitled to summary judgment.

2.  Dr. Pistone

Defendants have offered evidence that plaintiff never submitted a grievance relating to his claim that Dr. Pistone refused his request for an MRI.  (Medina Decl. ¶13.)  Plaintiff does not dispute that he never submitted an appeal relating to his claim against Dr. Pistone, but, rather, argues he was examined by Dr. Pistone on July 26, 2004 and "was unable to procure the necessary appeal form within the 15-day deadline for filing an inmate grievance."  (Pl.'s Opp'n. at 5.)  Plaintiff's argument fails for the reasons discussed in connection with the above-referenced six defendants.  Specifically, plaintiff's conclusory allegation that he lacked access to appeals forms does not suffice to rebut defendants' abundant evidence that such forms were readily obtainable and indeed were distributed to Ad-Seg inmates weekly. Moreover, in this instance, plaintiff's allegation is directly contradicted by additional evidence in the record.  The copy of plaintiff's appeal history log submitted by defendants shows plaintiff submitted a 602 form on another issue on August 12, 2004, i.e., within fifteen working days of July 26, 2004, the date on which plaintiff alleges the incident involving Dr. Pistone occurred.  (See Medina Decl. Ex. 1 at 8.)[6]

_____

[6]  As noted above, the regulations in effect in 2004 required the filing of an initial grievance within "15 working days" not 15 calendar days.  15 C.C.R. § 3084.6 (2004); (Medina Decl ¶3.)

1   Accordingly, defendant Dr. Pistone is entitled to summary judgment.

2        3.   <u>Officer Burke</u>

3   Defendants have offered both a declaration and documentary evidence showing

4   plaintiff never submitted a grievance relating to his claim that Officer Burke retaliated

5   against him.  (<u>See</u> Medina Decl. ¶13, Ex. 1.)  Plaintiff argues he properly exhausted his claim

6   because, according to plaintiff: (1) he timely submitted a grievance; (2) an appeals

7   coordinator failed to process it for several weeks and then "erroneously" screened it out for

8   lack of supporting documentation; and (3) when plaintiff resubmitted the appeal, it was

9   screened out again.  (Pl.'s Opp'n. at 5-6.)

10   Plaintiff has not, however, submitted any evidence in support of said assertions.

11   Plaintiff has not submitted, for example, any appeals record or, for that matter, any other

12   exhibits, with his opposition to the instant motion.  Although plaintiff provided copies of

13   several of his 602 forms as exhibits to his FAC, none of those documents pertain to his

14   retaliation claim against Officer Burke.  Further, even accepting as true plaintiff's

15   unsupported assertion that he submitted a 602 form relating to said claim, plaintiff, by failing

16   to submit a copy of the 602 form itself or other evidence showing its content, fails to show

17   any such grievance included information sufficient to "alert[] the prison to the nature of the

18   wrong for which redress [was] sought."  <u>See</u> <u>Griffin</u>, 557 F.3d at 1120 (internal quotation and

19   citation omitted).  Moreover, even if such appeal were filed and screened out, plaintiff, in the

20   absence of the 602 form, fails to show the appeal was screened out improperly.  <u>Cf.</u> <u>Sapp v.</u>

21   <u>Kimbrell</u>, 623 F.3d 813, 823-24 (9th Cir. 2010) (holding remedies deemed unavailable only

22   if officials declined to reach grievance's merits "for reasons inconsistent with or unsupported

23   by applicable regulations").  In sum, as to his claim against Officer Burke, plaintiff, in

24   response to defendants' evidence, has failed to come forward with evidence sufficient to raise

25   a triable issue as to exhaustion of administrative remedies.

26   Accordingly, defendant Officer Burke is entitled to summary judgment.

27        4.   <u>Sgt. Washington</u>

28   Defendants have offered evidence that plaintiff never submitted a grievance pertaining

United States District Court
For the Northern District of California

to his claim that Sgt. Washington retaliated against him.  (See Medina Decl. ¶15, Ex. 1.)

Plaintiff argues he properly exhausted and refers the Court to Appeal No. SVSP-05-00042, attached as Exhibit N to his FAC.  (Pl.'s Opp'n. at 6.)  Defendants argue said grievance did not put defendants on notice of plaintiff's claim.

### a. Allegations against Sgt. Washington

In his FAC, plaintiff appears to assert three theories of retaliation against Sgt. Washington.

First, plaintiff alleges that on September 27, 2004, Sgt. Washington received a letter smeared with human feces (FAC ¶¶132, 134), that plaintiff's cell number was noted on the back of the letter (id.), and that plaintiff was removed from his cell and questioned about the letter (id.).  Plaintiff alleges he told Sgt. Washington he was going to file a grievance for being falsely accused of sending the letter (id.), and that this threat caused Sgt. Washington to retaliate by detaining plaintiff in a holding cell and ordering a search of his cell (id. ¶¶134-135).

Second, plaintiff alleges that after he filed a grievance against Sgt. Washington, Sgt. Washington, on October 10, 2004, retaliated by directing another officer to move plaintiff to a different Ad-Seg building.  (FAC ¶141.)

Third, plaintiff alleges that on July 21, 2005, Sgt. Washington moved plaintiff to an outside holding cell in retaliation for plaintiff's threat to file a staff complaint against him. (FAC ¶¶186-187.)

### b. Analysis

"Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  See Woodford, 548 U.S. at 89 (internal quotation and citation omitted).  The grievance need not include every fact necessary to prove each element of an eventual legal claim.  Griffin, 557 F.3d at 1120.  Nevertheless, as the purpose of a grievance is to alert the prison to a problem and facilitate its resolution, the grievance should include sufficient information "to allow prison officials to take appropriate responsive

measures." Id. (finding no exhaustion where, unlike complaint filed in court, grievance complaining of upper bunk assignment did not allege prison officials had disregarded nurse's order for lower bunk assignment).

Here, in Appeal No. SVSP-05-00042, submitted by plaintiff on September 30, 2004, plaintiff described his grievance as follows:

> Based on an order from Sgt. Washington on 9/27/04 at aprox 9:45 p.m. C/O Smith awakened me and removed me from my assigned cell (D-1/129L). Pursuant to CCR 3287(a)(3) C/O Smith and C/O Watson then conducted a "special search" for items of my handwriting suspected of being in my cell. During the search I was confined in a temporary holding cage where I was not allowed to observe the "special search" of my cell, in violation of CCR 3287(a)(3). As a result of the search (2) pages of blue paper containing my hand written legal work were confiscated and removed from my cell so that they could be read and examined during the investigation of a crime.

(FAC Ex. N.)

In the "Action Requested" portion of the form, plaintiff stated:

> I request the immediate return of the (2) pages of blue paper containing my privileged and confidential legal communications, as well as the following items of my personal property. All legal materials, documents, case records, court motions, and pleadings associated with my writ of habeas corpus challenging criminal conviction.

(Id.)

At the outset, the Court notes that the appeal, which was submitted by plaintiff for initial review on September 30, 2004, could not have addressed plaintiff's complaints about Sgt. Washington's second and third alleged acts of retaliation, as those events are not alleged to have taken place until October 2004 and July 2005, respectively. Defendants assert the appeal likewise did not exhaust plaintiff's claim of retaliation allegedly occurring on September 27, 2004, because the appeal contained no allegation that any retaliation had occurred, but, rather, concerned only plaintiff's assertion that documents had been confiscated during a search of his cell, and plaintiff's sole request was that those documents be returned.

Having considered the arguments and evidence submitted by the parties, the Court agrees with defendants that Appeal No. SVSP-05-00042 did not provide SVSP prison officials with sufficient information to put them on notice that plaintiff was asserting a

United States District Court
For the Northern District of California

retaliation claim against Sgt. Washington.  Because plaintiff's appeal did not submit for review the question of whether plaintiff had been subjected to retaliation, the appeal did not "allow prison officials to take appropriate responsive measures."  See Griffin, 557 F.3d at 1121.

Consequently, the Court concludes that plaintiff's claim against Sgt. Washington was not exhausted by way of Appeal No. SVSP-05-00042, and, accordingly, defendant Sgt. Washington is entitled to summary judgment.

5.  Officer Perez and Officer Mays

Defendants have offered evidence that plaintiff never submitted a grievance pertaining to his claims that Officer Perez and Officer Mays retaliated against him.  (See Medina Decl. ¶¶14, 16 & Ex. 1.)  Plaintiff does not dispute that he never submitted a grievance relating to his claims against Officer Perez and Officer Mays.  He instead argues he "had no access to an appeal form" and "correctional staff refused to get [him] any."  (Pl.'s Opp'n. at 7.)

Plaintiff's argument fails for the reasons discussed above.  Specifically, plaintiff's conclusory assertion that he lacked access to appeal forms does not suffice to rebut defendants' evidence that such forms were readily obtainable and were handed out to Ad-Seg inmates weekly.  Further, even assuming appeal forms were unavailable during the 15 working days following the events giving rise to the claims, plaintiff does not show he made any effort to exhaust administrative remedies thereafter.

Plaintiff argues in the alternative that Officers Perez and Mays threatened him. Specifically, with regard to Officer Perez, plaintiff states:

> C/O Perez threatened and intimidated plaintiff by stating, viz. if you 602 me I'll house you with an enemy [White] inmate from C or D yard; and further threatened disciplinary action.  That is, he'd give me a RVR.

(Pl.'s Opp'n. at 7.)

With regard to Officer Mays, plaintiff states:

> C/O Mays also threatened and intimidated plaintiff, by stating, viz., if I 602 him he'd house me with an enemy [White] inmate from "C" or "D" Yard; further threatening disciplinary action as well.

(Id.)

**United States District Court**
For the Northern District of California

1     While the Ninth Circuit has not addressed the question of whether threats of
2  retaliation may render administrative remedies unavailable, <u>see</u> <u>Sapp</u>, 623 F.3d at 823, other
3  courts have held that the threat must be "sufficiently serious" and must objectively rise to the
4  level "that would deter a reasonable inmate of ordinary firmness and fortitude" from pursuing
5  the grievance process.  <u>See</u> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1085 (11th Cir. 2008); <u>Kaba</u>
6  <u>v. Stepp</u>, 458 F.3d 678, 684-85 (7th Cir. 2006).

7     Here, the only evidence submitted by plaintiff consists of his above two statements
8  that Officers Perez and Mays made threats.  Plaintiff provides no details regarding how the
9  alleged threats were conveyed, i.e., directly or indirectly, what, precisely, each officer said,
10  and, of particular importance, when the alleged threats were made.  Significantly, plaintiff
11  does not assert the alleged threats actually stopped him from pursuing a grievance.  Indeed, if
12  plaintiff were to take such a position, it would be directly contradicted by his statements that
13  he attempted to obtain appeals forms from correctional staff within the required time period
14  but that correctional staff refused to provide the forms.  Under such circumstances, plaintiff
15  fails to come forward with sufficient probative evidence upon which a jury could find either
16  Officer Perez or Officer Mays made "sufficiently serious" threats of a nature likely to "deter
17  a reasonable inmate" from pursuing a grievance.

18     In sum, plaintiff, in response to defendants' evidence, fails to raise a triable issue as to
19  his claim that he lacked access to appeal forms or was otherwise precluded from filing an
20  appeal.  Consequently, his claims against Officers Perez and Mays fail for lack of exhaustion.

21     Accordingly, defendants Officer Perez and Officer Mays are entitled to summary
22  judgment.

23         6.  <u>Dr. Bowman and Lt. Walker</u>

24     Defendants have offered evidence that plaintiff never submitted a grievance pertaining
25  to his claim that Dr. Bowman and Lt. Walker were deliberately indifferent to his serious
26  medical needs when they discontinued his medical chrono on May 31, 2005.  (<u>See</u> Medina
27  Decl. ¶17, Ex. 1.)  Plaintiff argues that "on or about 6/2/05"  he "submitted an Informal
28  Request for Interview-Form GA-22, requesting to [be] examined by another doctor."  (Pl.'s

**United States District Court**
For the Northern District of California

Opp'n. at 8.)  Plaintiff also argues that "on or about 6/14/05" he "submitted a 602 challenging Dr. Bowman's conclusions," which appeal was screened out, and that he did not resubmit it because it would have been screened out again.  (Id.)

As discussed above, submitting a request for interview is not proper exhaustion; submission of a 602 form is required.  15 C.C.R. §§ 3084.2(a), 3084.7.  Plaintiff's argument that he did submit a 602 subsequent to the request for interview is unavailing.  As discussed above, plaintiff has not provided copies of his appeals as exhibits to his opposition to defendant's summary judgment motion.  Further, the Court has reviewed the 602 forms attached as exhibits to the FAC, and none relate to his claims against Dr. Bowman and Lt. Walker.  Even accepting as true plaintiff's assertion that he submitted a 602 relating to his claim, an assertion unsupported by a copy of the 602 form itself or other evidence disclosing its content, plaintiff again fails to show any such grievance included information sufficient to "alert[] the prison to the nature of the wrong for which redress [was] sought."  See Griffin, 557 F.3d at 1120 (internal quotation and citation omitted).  Further, lacking any record of the alleged appeal, the record is devoid of any evidence even suggesting the appeal was screened out improperly.  In sum, plaintiff has failed to come forward with evidence from which a reasonable trier of fact could find he properly exhausted administrative remedies as to his claims against Dr. Bowman and Lt. Walker.

Accordingly, defendants Dr. Bowman and Lt. Walker are entitled to summary judgment.

### 7.  Sgt. Kessler

In his FAC, plaintiff asserts both retaliation and deliberate indifference claims against Sgt. Kessler.  Specifically, plaintiff alleges that on May 31, 2005, after plaintiff refused to accept a cellmate from C or D Facility, Sgt. Kessler retaliated by informing plaintiff that he would be receiving more disciplinary write-ups.  (FAC ¶165.)

Plaintiff further alleges that on August 17, 2005, he submitted a 602 form requesting that he be housed on a lower tier in a lower bunk with a clean mattress (FAC ¶215), and that, after more than forty-five days had passed without a response to his appeal, he complained to

United States District Court

For the Northern District of California

Sgt. Kessler (id.), who, plaintiff alleges, retaliated by threatening to move plaintiff back to Facility D-9 (id.).

Lastly, plaintiff alleges, Sgt. Kessler "finally did responsd" to the 602 and partially granted the grievance by indicating that plaintiff would be moved to a lower tier (FAC ¶216, Ex. 1-L), but that he was never moved and instead remained in Facility D-8 on the same upper tier, which according to plaintiff, evidenced Sgt. Kessler's deliberate indifference to plaintiff's serious medical needs (FAC ¶¶216, 468-473).

Defendants have submitted evidence that plaintiff did not properly exhaust the administrative review process for his claims against Sgt. Kessler. (See Medina Decl. ¶¶16, 19 & Ex. 1.) Plaintiff argues he did file appeals.

Regarding the retaliation claim alleged to have arisen from the May 31, 2005 incident, plaintiff argues that "he filed an appeal on or about 5/31/05 concerning Sgt. Kessler's averments" and that the appeal was "screened out." (Pl.'s Opp'n. at 9.) Once again, however, plaintiff provides no copy of the alleged appeal, and, consequently, even assuming such an appeal was filed, plaintiff fails to offer sufficient evidence to show he properly exhausted his claim and that it was screened out improperly.

As to Sgt. Kessler's alleged handling of plaintiff's August 17, 2005 grievance, plaintiff, to demonstrate exhaustion, points to the grievance itself. (See Pl.'s Opp'n. at 9; FAC Ex. 1-L.) As noted, plaintiff claims that Sgt. Kessler (1) retaliated against him for filing the August 17, 2005 grievance; and (2) showed deliberate indifference in his handling of the grievance. Plaintiff cannot, however, claim he was retaliated against for filing a grievance and use the same grievance for the purpose of exhausting a retaliation claim. Given the sequence of events, nothing in such grievance, which necessarily would have been filed before any retaliation based thereon allegedly occurred, could have served to "alert[] the prison to the nature of [that] wrong." See Griffin, 557 F.3d at 1120 (internal quotation and citation omitted).

Whether plaintiff was required to separately exhaust a deliberate indifference claim against Sgt. Kessler is a more complex issue. On August 17, 2005, plaintiff described his

18

grievance in a form 602 as follows:

> Once again, I have improperly been housed on a upper tier with a single mattress. The mattress is missing the outer canvass covering and is soaked with someone else's blood, hair, and unknown forms of hazardous waste. I immediately informed the regular floor officers as to the mattress problem and also as to the fact that I have a valid medical chrono to be housed on a lower tier/lower bunk with double mattress. The officers said they advised their sergeant as to all of the above but nothing was being done about correcting any of these above problems.

(FAC, Ex. 1-L.)

> In the "Action Requested" portion of the form, plaintiff stated:

> I request that I immediately be rehoused on a low tier/lower bunk with (2) clean and sanitary mattresses due to having valid medical chronos. The doctor just approved a chrono for a special pressure mattress so that type of medical mattress is what I'm requesting.

(Id.)

Sgt. Kessler reviewed plaintiff's appeal and partially granted it at the informal level of review, stating:

> Partially Granted – 1) You are being moved from D8-2071 to D9 where there are no upper tier cells. Your Psyc is clear as of 9-1-05 (ICC). 2) Your request for a special pressure mattress needs to go to the D9 Sgt so he/she can fax it to ex 5510 to get your mattress.

(Id.)

As noted above, plaintiff, in his FAC, alleges he thereafter remained in Facility D-8 on the same upper tier and that Sgt. Kessler showed deliberate indifference by never actually moving him to a lower tier. (FAC ¶¶216, 468-473.)

It is undisputed that plaintiff did not appeal Sgt. Kessler's decision to the first level of review. It also is undisputed that plaintiff did not file a separate 602 against Sgt. Kessler based on his alleged failure to enforce his own decision to grant plaintiff a move to a lower tier. On the record before the Court, however, plaintiff was not required to do so. "An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010). In Harvey, the prisoner plaintiff filed a grievance, requesting a timely hearing on a disciplinary charge, and received a decision granting him relief. See id. at 684-85. Five

months later, having still received no hearing, the prisoner filed an appeal at the second level of review, which was rejected as untimely.  See id. at 685.  The Ninth Circuit concluded the prisoner had exhausted his claim, reasoning, "Once the prison officials purported to grant relief with which [the prisoner] was satisfied, his exhaustion obligation ended.  His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision."  Id.

Here, as in Harvey, plaintiff was granted at least partial relief, as he was informed that he would be moved to a lower tier, and, under Harvey, plaintiff was not required to appeal from that decision in order to exhaust his administrative remedies.  See id. at 685.  Nor was plaintiff required to file against Sgt. Kessler a separate grievance requesting that Sgt. Kessler enforce his own order.  See id.  ("Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised.")  Consequently, as to plaintiff's deliberate indifference claim against Sgt. Kessler, defendants have failed to carry their burden of demonstrating plaintiff failed to exhaust his administrative remedies.

Accordingly, as to plaintiff's retaliation claims, defendant Sgt. Kessler is entitled to summary judgment based on a failure to exhaust, and plaintiff's deliberate indifference claim against Sgt. Kessler will be reviewed on the merits as set forth in a subsequent section of this order.

### 8. Lewis, Winn, Torrez, Variz, and Gomez

Plaintiff alleges defendant ICC members Lewis, Winn, and Torrez were deliberately indifferent to plaintiff's safety by reassigning him from B to C yard in July 2005, knowing enmity existed between white inmates on B yard and white inmates on C yard, as a result of which enmity, plaintiff alleges, he was assaulted by his cellmate later in July 2005 (FAC ¶¶180-195).  Plaintiff alleges defendants Variz and Gomez were deliberately indifferent to his safety when they screened out an appeal in which he claimed his life was in danger due to the C-yard placement (FAC ¶¶191-192).

Defendants have submitted evidence that plaintiff did not properly exhaust the administrative review process for his claims against defendants Lewis, Winn, Torrez, Variz,

United States District Court
For the Northern District of California

and Gomez.  (<u>See</u> Medina Decl. ¶18.)  In particular, defendants have submitted a declaration stating plaintiff submitted a grievance partially relating to plaintiff's reassignment to C yard but that the grievance was "appropriately screened out and returned to [plaintiff]" on the ground that it addressed more than one issue (<u>id.</u>), and that plaintiff did not timely resubmit a grievance in proper form (<u>id.</u>).

Plaintiff does not dispute that his grievance was screened out and returned to him.  Nor does he assert that the grievance was screened out for improper reasons.  Rather, plaintiff argues that by the time the grievance was returned to him, he "was re-housed without a cellmate on a lower-tier, and advised that he would soon be transferred to a level III facility," thereby rendering the issue moot.  (Pl.'s Opp'n. at 10, 11.)  Plaintiff also argues that at the time the grievance was returned to him, his writing arm was in a cast, "making it impossible to write by himself." (<u>Id.</u>)

Neither argument is availing.  Plaintiff, once again, submits no evidence showing his grievance was in fact moot and would have been rejected as such; instead, he only speculates.  As discussed above, speculation that a grievance would have been rejected as moot does not constitute an exception to the exhaustion requirement.

Regarding plaintiff's statement that he was unable to use his writing hand, such evidence, standing alone, is insufficient to support a finding that plaintiff was unable to resubmit his grievance.  Even assuming plaintiff was unable to use his writing hand, he provides no evidence that he could not have used his other hand to fill out the relatively straightforward grievance form, or that he was unable to re-submit a grievance by other means, such as with the assistance of an officer, nurse, librarian, or another inmate, all of which accommodations are contemplated by the applicable regulations.  <u>See</u> 15 C.C.R. § 3084.1(c) ("Department staff shall ensure that inmates and parolees, including those who have difficulties communicating, are provided equal access to the appeals process and the timely assistance necessary to participate throughout the appeal process."); § 3084.2(f) ("An inmate or parolee or other person may assist another inmate or parolee with preparation of an appeal . . . ."); § 3084.5(b)(1) ("When an appeal indicates the inmate or parolee has difficulty

1  describing the problem in writing or has a primary language other than English, the appeals

2  coordinator shall ensure that the inmate or parolee receives assistance in completing and/or

3  clarifying the appeal.").  Therefore, plaintiff fails to show he lacked the ability to properly

4  exhaust.

5      Accordingly, defendants Lewis, Winn, Torrez, Variz, and Gomez are entitled to

6  summary judgment.

7          9.  Arceo, Bowman, Delfs, Grannis, Kates, Krossa, Lee, and Wall

8      According to the FAC, plaintiff's cellmate, on July 26, 2005, attacked plaintiff and

9  stabbed him approximately thirty times with a prison-made knife (FAC ¶195), after which

10  plaintiff was rushed to the prison infirmary and then air-lifted by helicopter to the Trauma

11  Center at Stanford Hospital.  (Id. ¶196.)  Plaintiff alleges that most of his stab wounds were

12  treated and sutured at the Trauma Center, but that he had to undergo laparotomy surgery at

13  Stanford Hospital to determine the extent of his intestinal injuries (id. ¶197) and, a few days

14  later, received a second surgery, also at Stanford Hospital, to repair hand and wrist injuries

15  sustained during the stabbing (id. ¶¶198-201).

16      Plaintiff alleges he returned to SVSP on August 2, 2005 (id. ¶204) and that he

17  thereafter had an urgent need to promptly return to Stanford Hospital for purposes of

18  treatment for (1) an unsutured chest-tube incision site, and (2) a second surgery to restore

19  wrist range of motion (id. ¶¶217-218).  Plaintiff alleges that in late August 2005, he

20  requested to be returned to Stanford Hospital (id. ¶¶217, 220) but was not returned to

21  Stanford Hospital until October 3, 2005 (id. ¶225).  Plaintiff claims defendants Arceo,

22  Bowman, Delfs, Grannis, Kates, Krossa, Lee, and Wall were deliberately indifferent to his

23  serious medical needs by failing to timely coordinate a return to Stanford Hospital.  (Id.

24  ¶¶220-229.)

25      Defendants argue plaintiff did not properly exhaust the administrative review process

26  for his deliberate indifference claims against defendants Arceo, Bowman, Delfs, Grannis,

27  Kates, Krossa, Lee, and Wall.  Defendants concede plaintiff did pursue "an appeal

28  concerning similar complaints" and that "he pursued [that appeal] through the Director's

United States District Court
For the Northern District of California

Level of Review." (Medina Decl. ¶ 22.) Defendants contend, however, that plaintiff did not therein properly exhaust as to "each claim against the eight defendants implicated in his theory that his post-hospitalization care was inadequate." (Defs.' Mot. Summ. J. at 30-31; Medina Decl. ¶¶20-23.)

Defendants have not provided a copy of the subject appeal, and plaintiff, as proof of exhaustion, has directed the court's attention to Exhibit 1-X to the FAC, which is not the appeal itself, No. SVSP-D-05-3346, but, rather, the Director's Level Decision thereon. The Court notes, however, that Exhibit 1-M to the FAC, not referenced by defendants or plaintiff, is a copy of the initial 602 submitted as to said grievance, and Exhibits 1-P and 1-W, likewise not referenced, are, respectively, the First and Second Level Review Decisions.

The Court has reviewed the record of plaintiff's Appeal No. SVSP-D-05-3346. The appeal clearly grieved plaintiff's complaints relating to his post-surgery treatment at SVSP and his request to be immediately returned to Stanford Hospital. The Court agrees with defendants, however, that such grievance did not put defendants on notice with respect to each deliberate indifference claim now asserted against each of the eight defendants. Most notably, the only defendant mentioned in plaintiff's 602 is Delfs. Under CDCR's appeal process, in order to properly appeal an issue against one or more individual staff members, an inmate must name "all staff member(s) involved" and "describe their involvement in the issue." See 15 C.C.R. § 3084.2 (a)(3); see also Jones v. Bock, 549 U.S. 199, 218 (2007) (holding where prison regulations require inmate to provide detailed information in grievance, including names of all staff involved, inmate, in order to properly exhaust available administrative remedies, must comply and provide such information).

Here, plaintiff did not comply with prison grievance procedures in connection with his claim against defendants Arceo, Bowman, Grannis, Kates, Krossa, Lee, and Wall and thus failed to properly exhaust available administrative remedies as to his claims against said defendants. Because it does appear, however, that plaintiff exhausted his claim as to defendant Delfs, the Court will proceed to review the merits of that claim as set forth below, and will do so as to the other seven defendants as well.

United States District Court
For the Northern District of California

1

B. <u>Remaining Claims</u>

2

The Court now turns to the merits of plaintiff's claims for deliberate indifference to

3

serious medical needs as asserted against defendants Arceo, Bowman, Delfs, Grannis, Kates,

4

Krossa, Lee, Wall, and Kessler.

5

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

6

Amendment's proscription against cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>,

7

429 U.S. 97, 104 (1976). "A determination of 'deliberate indifference' involves an

8

examination of two elements: the seriousness of the prisoner's medical need and the nature of

9

the defendant's response to that need." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir.

10

1992), <u>overruled on other grounds by</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133,

11

1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a

12

prisoner's condition could result in further significant injury or the "unnecessary and wanton

13

infliction of pain." <u>Id.</u> (citing <u>Estelle v. Gamble</u>, 429 U.S. at 104). A prison official is

14

deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and

15

disregards that risk by failing to take reasonable steps to abate it. <u>Farmer v. Brennan</u>, 511

16

U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the

17

inference could be drawn that a substantial risk of serious harm exists," but "must also draw

18

the inference." <u>Id.</u> Consequently, in order for deliberate indifference to be established, there

19

must exist both a purposeful act or failure to act on the part of the defendant and harm

20

resulting therefrom. <u>See</u> <u>McGuckin</u>, 974 F.2d at 1060.

21

A claim of medical malpractice or negligence is insufficient to make out a violation of

22

the Eighth Amendment. <u>Id.</u> at 1059. Nor does "a difference of opinion between a prisoner-

23

patient and prison medical authorities regarding treatment" amount to deliberate indifference.

24

<u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981). Consequently, a plaintiff's opinion

25

that medical treatment was unduly delayed does not, without more, state a claim of deliberate

26

indifference. <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir.

27

1985). Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must

28

show the course of treatment the doctors chose was "medically unacceptable under the

24

United States District Court
For the Northern District of California

circumstances" and that such treatment was chosen "in conscious disregard of an excessive risk to plaintiff's health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### 1. Factual Background

Unless otherwise noted, the following facts are undisputed:

On July 26, 2005, plaintiff's cellmate attacked him and stabbed him approximately thirty times with a prison-made knife. (FAC ¶195.) Plaintiff was airlifted to Stanford Hospital where he underwent laparotomy surgery to determine the extent of his intestinal injuries. (Id. ¶¶196, 197.) He received a second surgery a few days later, also at Stanford Hospital, to repair injuries to his left hand and wrist sustained during the stabbing. (Id. ¶¶198-201.) He returned to SVSP on August 2, 2005. (Id. ¶204.)

In late August 2005, plaintiff was examined by SVSP defendant Registered Nurse Delfs ("RN Delfs") for follow-up medical treatment related to the healing of plaintiff's left wrist and an unsutured chest incision where a chest tube had been inserted during plaintiff's first surgery at Stanford Hospital. (FAC ¶217.) Plaintiff informed RN Delfs that he did not think his wrist was healing properly and asked RN Delfs to order his return to Stanford Hospital. (Id.) Plaintiff informed RN Delfs that the discharge instructions from Stanford Hospital recommended that plaintiff return to Stanford Hospital two weeks after discharge. (Id.) RN Delfs refused the request. (Id.) Plaintiff was, however, transported to a local Salinas hand specialist who removed his wrist splint. (Id. ¶219.)

On August 29, 2005, plaintiff submitted a 602 appeal requesting to be immediately returned to Stanford Hospital. (FAC ¶220, Ex. 1-M.) Defendant Dr. Bowman and defendant Registered Nurse Krossa examined plaintiff on September 22, 2005 in response to the 602. (FAC Ex. 1-P; Bowman Decl. ¶13; Krossa Decl. ¶6.) Dr. Bowman is a medical doctor and board-certified orthopedic surgeon. (Bowman Decl. ¶1.)

According to Dr. Bowman, when a chest tube is removed, it is standard practice to leave a small opening in the chest to allow the wound to drain, which helps prevent infection. (Id. ¶14.) The wound site thereafter heals on its own, leaving a scar. (Id.) By the time Dr. Bowman examined plaintiff on September 22, 2005, plaintiff's incision site was drained and

had healed appropriately.  (Bowman Decl. ¶14, Ex. 1.)  There was no evidence of infection or other concern.  (Id.)

Also, by the time of Dr. Bowman's September 22, 2005 examination, plaintiff's wrist suture lines had healed well.  (Bowman Decl. ¶15, Ex. 1.)  Plaintiff exhibited some minor limitation in his left wrist's range of motion, but the wrist had minimal to no functional limitation.  (Id.)  No evidence suggested that the very minor limitation in plaintiff's wrist was due to any putative delay in his return to Stanford Hospital.  (Bowman Decl. ¶16.)

Dr. Bowman agreed that a return visit to Stanford Hospital for wrist follow-up was appropriate because "[h]aving performed the wrist surgery, the Stanford surgeon would have been well-situated to assess whether any further care was medically indicated."  (Bowman Decl. ¶18.)  Dr. Bowman reviewed plaintiff's medical records and saw that, on September 14, 2005, arrangements had already been made for a return visit.  (Id.)

Plaintiff returned to Stanford Hospital on October 3, 2005.  (Id.; FAC ¶225.)  Stanford records from that visit make no reference to infection, increased pain, delayed healing or need for medication.  (Bowman Decl. ¶20, Ex. 2.)  No recommendation for treatment was made other than for physical therapy.  (Id.)

On October 11, 2005, defendant SVSP Medical Appeals Coordinator Carolina Kates and defendant SVSP Correctional Health Services Administrator Kathleen Wall reviewed plaintiff's 602 at the First Level of Appeal.  (FAC Ex. 1-P.)  The decision noted that plaintiff had already received his follow-up visit to Stanford Hospital.  (Id.)  The decision granted plaintiff's request for a dental appointment.  (Id.)

On February 7, 2006, defendant SVSP Health Care Manager Dr. Dudley Lee issued a Second Level of Review decision.  (FAC Ex. 1-W.)  The decision again noted that plaintiff had already received his follow-up visit to Stanford Hospital.  (Id.)  The decision granted plaintiff's request for a referral to an orthopedic specialist.  (Id.)

Defendant CDCR Appeals Examiner Jocelyn Arceo ("Arceo") investigated plaintiff's grievance at the Third Level of Review.  (Arceo Decl. ¶¶1, 3.)  She reviewed plaintiff's medical records, interviewed Dr. Bowman and Dr. Lee, and reviewed the First and Second

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   Level Review decisions.  (Id. ¶¶4-6.)  As a result of her investigation, Arceo determined that

2   the issues raised by plaintiff in his August 29, 2005 appeal had been satisfactorily resolved.

3   (Id. ¶4.)

4         On May 26, 2006, defendant CDCR Chief of Inmate Appeals N. Grannis denied

5   plaintiff's appeal at the third and final level of review.  (FAC Ex. 1-X.)  The appeal was

6   denied on the grounds that (1) plaintiff had already received his requested follow-up visit to

7   Stanford Hospital and referral for dental treatment, and (2) the other referrals he sought were

8   not medically indicated.  (Id.)

9         2.  <u>Defendants Arceo, Bowman, Delfs, Grannis, Kates, Krossa, Lee, and Wall</u>

10        The record amply demonstrates defendants provided plaintiff adequate care following

11  his surgeries in late July 2005.  The evidence shows defendants monitored and assessed

12  plaintiff throughout August and September 2005.  As discussed above, Dr. Bowman's

13  examination of plaintiff on September 22, 2005, showed plaintiff's incision site and wrist

14  suture lines had healed.  Although plaintiff alleges he should have been returned to Stanford

15  Hospital two weeks after discharge, his examinations did not indicate a need for immediate

16  follow-up.  Nonetheless, a follow-up was arranged for October 3, 2005.  Plaintiff submits no

17  evidence showing he suffered any injury due to the putative delay in his return to Stanford

18  Hospital.

19        In his declaration, Dr. Bowman states his professional opinion that plaintiff received

20  appropriate medical attention for the injuries sustained during the stabbing.  (Bowman Decl.

21  ¶16.)  Dr. Bowman's declaration also states his opinion that it is highly likely that a minor

22  decrease in the wrist's range of motion would occur as a matter of course from the type of

23  stabbing injury plaintiff sustained.  (Id.)  Plaintiff has failed to come forward with specific

24  facts to support a finding to the contrary, let alone a finding of deliberate indifference to his

25  medical needs.

26        Considering the evidence in the light most favorable to plaintiff, the Court finds

27  plaintiff fails to raise a triable issue of material fact as to his claim that SVSP medical staff

28  defendants were deliberately indifferent to his serious medical needs.  Accordingly,

United States District Court
For the Northern District of California

1  defendants Delfs, Bowman, and Krossa are entitled to summary judgment.

2       Likewise, plaintiff cannot establish an Eighth Amendment claim against defendants

3  Kates, Wall, Lee, Arceo, and Grannis based on the handling of his administrative appeals.

4  Plaintiff's complaint alleges no wrongdoing by said defendants directly related to the medical

5  care he received.  Rather, said defendants are named in the complaint solely because they

6  reviewed and/or denied, or partially denied, plaintiff's inmate appeals.  Because the

7  deliberate indifference claims underlying those appeals do not pass muster, persons engaged

8  in the adjudication of those appeals cannot be held liable for the denial of those appeals.

9  Moreover, there is no constitutional right to a prison administrative appeal or grievance

10  system.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Consequently, an incorrect

11  decision on an administrative appeal or a failure to handle an administrative appeal it in a

12  particular way does not constitute a violation of plaintiff's constitutional rights.  See id.

13       Accordingly, defendants Kates, Wall, Lee, Arceo, and Grannis are entitled to

14  summary judgment.

15            3.  Defendant Kessler

16       Finally, as discussed above, plaintiff alleges defendant Kessler was deliberately

17  indifferent to plaintiff's serious medical needs in his handling of plaintiff's August 17, 2005

18  appeal requesting a move to a lower tier following surgery.  As discussed above, plaintiff

19  alleges that although Sgt. Kessler granted plaintiff's request for a move, he never actually

20  moved plaintiff to a lower tier, and that plaintiff remained in Facility D-8 on the same upper

21  tier.  (FAC ¶¶216, 468-473.)

22       As a preliminary matter, the Court notes that no party has addressed the subject of

23  what individual(s) at SVSP held ultimate responsibility for transferring plaintiff following

24  the issuance of Sgt. Kessler's decision.  Plaintiff appears to assume it was Sgt. Kessler's duty

25  to personally ensure plaintiff was moved, and defendants at most suggest, but do not directly

26  state, that Sgt. Kessler did not have final authority in the matter.  (See Kessler Decl. ¶ 13) ("I

27  had recommended a transfer for Inmate Hash to D-9 on August 30th, such that he was to be

28  moved to a lower tier in D-9 on September 7th after approval by the lieutenant").)

United States District Court
For the Northern District of California

1    Nevertheless, even assuming it was Sgt. Kessler's duty to oversee the transfer, and

2  accepting as true plaintiff's allegation that he was never transferred to a lower tier,

3  defendants have submitted  evidence sufficient to show Sgt. Kessler was not aware of any

4  "substantial risk of serious harm."  See Farmer, 511 U.S. at 837.  Specifically, Sgt. Kessler

5  states:

6          I did not perceive any serious medical need.  Prior to receiving the appeal, I
        would not have been aware of a serious medical need.  None were known or
7        apparent to me, and custody staff does not have access to an inmate's medical
        file due to medical privacy rights.  When an inmate is issued a medical chrono
8        to accommodate a medical need, the only way custody staff would be aware of
        it is if the inmate presented the chrono to us or we looked it up in his central
9        file.  Besides listing the medical accommodation required by the inmate, the
        chronos themselves do not state the reason for the accommodation.  Because
10       lower tier/bunk is preferred by most of the population, inmates often claim that
        they have a lower tier/bunk chrono in hopes that custody staff will house them
11       in the preferred lower tier/bunk. . . .  Thus, I would not have been aware as to
        the condition requiring the chrono and could not have known that Inmate Hash
12       had a serious medical need based on my review of his appeal.

13  (Kessler Decl. ¶11.)  Plaintiff offers no evidence to the contrary.

14    As the officer reviewing plaintiff's August 17, 2005 grievance, Sgt. Kessler was

15  required to, and did, issue a decision and sign the appeal, which decision indeed was in

16  plaintiff's favor.  The fact that Sgt. Kessler decided the appeal, however, does not necessarily

17  mean he knew about plaintiff's medical condition.  As noted, to be liable, "the official must

18  both be aware of facts from which the inference could be drawn that a substantial risk of

19  serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  Even if

20  a prison official should have been aware of the risk, if he "was not, then [he] has not violated

21  the Eighth Amendment, no matter how severe the risk."  Gibson v. Cnty. of Washoe, 290

22  F.3d 1175, 1188 (9th Cir. 2002).  Here, plaintiff has not shown that Sgt. Kessler should have

23  been aware of any risk to plaintiff's health, let alone that Sgt. Kessler actually was aware of

24  any such risk.

25    Accordingly, defendant Sgt. Kessler is entitled to summary judgment.

26    C.  Defendants' Alternative Arguments

27    In light of the above findings, the Court does not address herein defendants'

28  alternative arguments that (1) defendants are entitled to qualified immunity, and

1   (2) plaintiff's claims are barred by the statute of limitations.

2                      **CONCLUSION**

3       For the foregoing reasons, the Court orders as follows:

4       1.  Defendants' motion for summary judgment is hereby GRANTED.

5       2.  The Clerk is hereby directed (1) to correct the spelling of defendant B. Gant's last

6  name to read Gantt; (2) to correct the spelling of defendant S. Torres's last name to read

7  Torrez; and (3) to correct the spelling of defendant Kathleen Wallman's last name to read

8  Wall.

9       3.  The Clerk is further directed to enter judgment in favor of all defendants and close

10  the file.

11       This order terminates Docket No. 154.

12       IT IS SO ORDERED.

13  DATED: July 2, 2014

14                           MAXINE M. CHESNEY

15                           United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California